## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: SOCIETY INSURANCE | ) | MDL No. 2964 |
| COMPANY COVID-19 BUSINESS | ) | |
| INTERRUPTION PROTECTION | ) | Master Docket No. 20 C 5965 |
| INSURANCE LITIGATION | ) | |
| | ) | Judge Edmond E. Chang |
| This Document Relates to Case | ) | |
| No. 1:20-cv- 03959 | ) | Magistrate Judge Jeffrey I. Cummings |

### PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S
### LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs submit the follow responses and objections to Defendant Society

Insurances Local Rule 56.1 Statement of Undisputed Material Facts.

### Response to Description Of The Parties

Undisputed.

### Response to Jurisdiction and Venue

Undisputed.

### Response to Undisputed Material Facts

CDC Guidance Regarding COVID-19

1.   Attached as Exhibit 1 is a copy of the CDC's Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes, ("the CDC Guidance"), available at https://www.cdc.gov/coronavirus/2019-ncov/community/ clean-disinfect/index.html (last visited August 25, 2020).

**RESPONSE**: Undisputed. However, Plaintiffs object to Exhibit 1 because it is not

material. Issued on April 28, 2020, it provides dated guidance and less specific guidance

as regards Plaintiffs' operations than the FDA's Best Practices for Retail Food Stores,

Restaurants, and Food Pick-Up/Delivery Services, to which Exhibit 1 links, and which is

available at https://www.fda.gov/food/food-safety-during-emergencies/best-practices-

retail-food-stores-restaurants-and-food-pick-updelivery-services-during-covid-19.

<u>Governor Pritzker's Social Distancing Orders</u>

2.   On March 16, 2020, Illinois Governor issued Executive Order 2020-07 ("the March 16 Order.)" A copy the March 16 Executive Order is attached as Exhibit 2.

**<u>RESPONSE</u>**: Undisputed.

3.   The March 16 Order states that "COVID-19 is a novel and severe acute respiratory illness that can spread among people through respiratory transmission." (Ex. 2 at 1.)

**<u>RESPONSE</u>**: Undisputed.

4.   The March 16 Order further states that "social distancing, which consists of maintain [sic] at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19." It goes on to say, "[T]he number of suspected COVID-19 cases in Illinois is increasing exponentially . . . indicating that drastic social distancing measures are needed." (*Id*. at 1-2.)

**<u>RESPONSE</u>**: Undisputed.

5.   The March 16 Order provides that, beginning March 16, 2020 at 9 p.m., restaurant and bars "must suspend service for and may not permit on-premises consumption. Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry out."  (*Id*.)

**RESPONSE**: Undisputed. However, Plaintiffs object to the second sentence of paragraph 5 because the portion of the March 16 order permitting restaurants and bars were permitted to provide in-house delivery, third-party delivery, drive-through, and curbside pickup is immaterial to the insurance coverage question in this case. Under Society's policies, coverage does not turn on whether the Governor closed only on-premises food and beverages service or all food and beverage service.

6.   The reason for the prohibition of on-premises consumption of food at restaurants, as set forth in the March 16 Order, is because such public dining "usually involves prolonged close social contact contrary to recommended practice for social distancing." (*Id.* at 1.)

**RESPONSE**: Disputed. Defendant has selectively quoted a portion of the March 16 order and ascribed a misleadingly narrow purpose to it ("*the* reason for the prohibition … is because"), which is inconsistent with other portions of the March 16 order, including, for example, the very next sentence of the order, which provides an additional reason for the prohibition on in-premises food and beverage service, stating that, "frequently used surfaces in public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure …." The March 16 order does not support the statement in paragraph 6 that "the reason" for the prohibition of on-premises service or consumption was the danger of "social contact." Likewise, paragraph 6 also does not support Defendant's statements in its brief that the Governor's orders were "social distancing" orders, that their "purpose" was to enforce

social distancing, or that "the reason for prohibition of on-premises consumption of food" was to enforce social distancing. The March 6 Order explicitly references surface transmission of the virus, including at bars and restaurants, as a further concern.

7.    On March 20, 2020 Governor Pritzker issued executive order 2020-10 ("March 20 Order.") A copy of the March 20 Order is attached as Exhibit 3.

**RESPONSE**: Undisputed.

8.    The March 20 Order required on-premises business operations in the state to cease, with the exception of "Essential Businesses" and "Minimum Basic Operations," and it prohibited gatherings of more than ten people. (Ex. 3, at 2, ¶¶ 2-3.)

**RESPONSE:** Disputed, to the extent that the March 20 order refers to gatherings of more than ten people that are "exempted by this Executive Order."

9.    The March 20 Order states that it was entered into "for the preservation of public health and safety throughout the entire State of Illinois and to ensure that our healthcare delivery system is capable of serving those who are sick . . . [and] to slow and stop the spread of COVID- 19." (Ex. 3 at 1.)

**RESPONSE:** Undisputed.

10. Essential Businesses under the March 20 Order include "[r]estaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive through, curbside pick-up, and carry-out." (*Id*. at 6-7, ¶12(l).)

**RESPONSE:** Undisputed. However, Plaintiffs object to the second sentence of paragraph 10 because the portion of the March 20 order permitting restaurants and bars were permitted to provide in-house delivery, third-party delivery, drive-through, and curbside pickup is immaterial to the insurance coverage question in this case. Under

4

Society's policies, coverage does not turn on whether the Governor closed only on-premises food and beverages service or all food and beverage service.

11. Essential Businesses were encouraged to remain open. (*Id*. at 2, ¶ 2.)

**RESPONSE:** Disputed. Paragraph 11 is both misleading and immaterial. Plaintiffs were *prohibited* from opening their premises to customers for on-site consumption of food and beverages. And it is immaterial to the question of coverage under Society's policies that Plaintiffs were permitted to prepare and serve food for consumption off premises.

12. The March 20 Order requires Essential Businesses that remain open, to the greatest extent feasible, to "comply with Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times." (*Id*. at p. 2, ¶ 2.)

**RESPONSE:** Undisputed. However, Plaintiffs object to paragraph 12 because it is immaterial to the insurance coverage question in this case. Under Society's policies, coverage does not turn on whether the Governor closed only on-premises food and beverages service or all food and beverage service.

13. Individuals were allowed to leave their homes for "Essential Activities" and obtaining and delivering food are "Essential Activities" under the March 20 Order. (*Id*. at 3, ¶ 5(b).)

**RESPONSE:** Undisputed. However, Plaintiffs object to paragraph 13 because it is immaterial to the insurance coverage question in this case. Under Society's policies, coverage does not turn on whether the Governor closed only on-premises food and

beverages service or all food and beverage service.

14. Under the March 20 Order, Non-Essential Businesses are allowed to perform Minimum Basic Operations on their premises, which include "[t]he minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions." (*Id*. at p. 2, ¶ 2, p. 8, ¶ 13.)

**RESPONSE:** Undisputed. However, Plaintiffs object to paragraph 14 because it is immaterial to the insurance coverage question in this case. Under Society's policies, coverage does not turn on whether the Governor closed only on-premises food and beverages service at Plaintiffs' premises or access to their premises.

15. Under the March 20 Order, "Outdoor Activity," including running, walking, hiking, or biking is an Essential Activity, as is shopping for "necessary supplies and services," including household consumer products. (*Id*. at 3, ¶ 5(b-c).)

**RESPONSE:** Undisputed. However, Plaintiffs object to paragraph 15 because it is immaterial to the insurance coverage question in this case.

16. On April 1, Governor Pritzker executed Executive Order 2020-18, a copy of which is attached as Exhibit 4.

**RESPONSE:** Undisputed.

17. Attached as Exhibit 5 is a copy of Executive Order 2020-33, which was issued by Governor Pritzker on April 30, 2020.

**RESPONSE:** Undisputed.

18. Attached as Exhibit 6 is a copy of Executive Order 2020-32, which was issued by Governor Pritzker on April 30, 2020.

**RESPONSE:** Undisputed.

19. Executive Orders 2020-18 and 2020-33 extended the requirements of the March 16, 2020 order that pertained to restaurants and bars through May 29, 2020.

**RESPONSE:** Undisputed.

20. Executive Order 2020-32 renewed the requirements of the March 20 Order including the classification of restaurants and establishments engaged in the retail sale of alcohol as Essential Businesses.

**RESPONSE:** Undisputed.

21. Attached as Exhibit 7 is a copy of a document entitled Illinois Liquor Control Commission March 31 COVID-19: Compliance Directive.

**RESPONSE:** Undisputed.

22. The Illinois Liquor Control Commission interpreted Governor Pritzker's orders as allowing bars and taverns to receive the delivery of beer, wine, and liquor from wholesalers, and, if allowed by local ordinance, to sell and deliver alcohol for off-premises consumption as long as they follow the appropriate social-distancing guidelines. (Ex. 7)

**RESPONSE:** Disputed: the cited document (Exhibit 7) does not, without more, establish how the Liquor Control Commission "interpreted" the Governor's orders. Plaintiffs also object that paragraph 27 is not material to any issue in this case.

23. Attached as Exhibit 8 is a document issued by the Chicago Department of Business Affairs and Consumer Protection ("BACP").

**RESPONSE:** Undisputed.

24. The BACP guidance provided that holders of a license for consumption on premises-incidental activity as well as holders of a tavern liquor license can sell and deliver incidental packaged goods liquor. (Ex. 8)

**RESPONSE:** Undisputed. However, Plaintiffs object to paragraph 24 because it is

immaterial to the insurance coverage question in this case. Under Society's policies, coverage does not turn on whether Plaintiffs were allowed to sell and deliver incidental packaged goods liquor.

25. Attached as Exhibit 9 is a copy of the document "Restore Illinois: A Public Health Approach to Safely Reopen Our State," issued by the Office of Governor JB Pritzker on May 5, 2020.

**RESPONSE:** Undisputed.

26. The State of Illinois's timetable for fully reopening businesses is tied to the percentage of positive COVID-19 cases, the rate of hospital admissions for COVID-19 like illnesses, and the available capacity of ICU beds and ventilators. (Ex. 9.)

**RESPONSE:** Disputed Exhibit 9 does not support the statement in paragraph 26 insofar as the Exhibit characterizes itself not as a "timetable" but, rather, as "an initial framework that will likely be updated as research and science develop." In addition, Plaintiffs object that paragraph 26 is immaterial to the insurance coverage question in this case.

The Society Policies

27. Society and Counter-Defendants entered into the following Businessowners insurance contracts:
   a.   The Whistler, LLC: Policy Number TRM 587236, policy period November 15, 2019 to November 15, 2020 (Compl. at ¶ 12, Ex. 2.)
   b.   Sleeping Village Inc.: Policy Number BP 17026033, policy period January 2, 2020 to January 2, 2021 (Compl. at ¶ 13, Ex. 3.)

**RESPONSE:** Undisputed.

28. The insurance contracts entered into between Society and Plaintiffs contain the Businessowners Special Property Coverage Form TBP2 (05-15) ("the Special Property Coverage Form"). (*Id.* at ¶ 23, Exs.2, 3.)

**RESPONSE:** Undisputed.

29. A copy of the Special Property Coverage Form is attached hereto as Exhibit 10.

**RESPONSE:** Undisputed.

30. Plaintiffs claim they are entitled to coverage under the Business Income, Civil Authority and Contamination, additional coverage parts in the Special Property Coverage Form of the Society Policy. (Compl. at ¶¶ 29-41.)

**RESPONSE:** Undisputed

31. Part A of the Special Property Coverage Form is the section that provides and defines the coverage available.

Part A provides, in part:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. . . .

   **a. Buildings**, meaning the buildings and structures at the premises described in the Declarations . . .

   **b**. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of described premises, including….

(Ex. 12 at p.1, ¶ A.1)

**RESPONSE:** Undisputed

32. The term Covered Cause of Loss is defined in Section 3 of Part A and states:

**3. Covered Causes Of Loss**

Direct Physical Loss unless the loss is excluded or limited under this

coverage form.

(*Id.* at p.2, ¶ A.3.)

**RESPONSE:** Undisputed.

33. The Business Income additional coverage of the Special Property Coverage Form provides, in part:

**5. Additional Coverages**

    **f.  Business Income**

**(1)** Business Income

    **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by a direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

    **(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

    **(c)** * * * *

(*Id.* at p. 5, ¶ A.5.g.)

**RESPONSE:** Undisputed

34. "Period of Restoration" refers to the period of time that:

    a. Begins immediately after the time of direct physical loss or damage for Business Income or Extra Expense coverage caused by or resulting from any covered Cause of Loss at the described premises; and

    b. Ends on the earlier of:

        (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2)    The date when business is resumed at a new permanent location.

(*Id.* at p. 31, ¶ H.12.)

**RESPONSE:** Undisputed.

35. The Civil Authority additional coverage provides, in part:

**k. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within the area; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id*. at p. 7, ¶ A.5.k.)

**RESPONSE:** Undisputed.

36. The Contamination additional coverage provides, in part:

If your "operations" are suspended due to "contamination":
* * *

**(2)** We will also pay for the actual loss of Business Income and Extra Expense you sustain caused by:

    **(a)** "Contamination" that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product.

    **(b)** "Contamination threat"

    **(c)** "Publicity" resulting from the discovery or suspicion of contamination.
* * *

**(4)** Additional Definitions:

    **(a)** "Contamination" means a defect, deficiency, inadequacy or

11

dangerous conditions in your products, merchandise, or premises.

**(b)** "Contamination threat" means a threat made by a third party against you to commit a "malicious contamination" unless the third party's demand for money or other consideration is met.

**(c)** "Malicious contamination" means an intentional, malicious and illegal altercation or adulteration of your products

**(d)** "Publicity" means a publication or broadcast by the media, of the discovery or suspicion of "contamination" at a described premise.

(*Id*. at p. 8, ¶ A.5.m.)

**RESPONSE:** Undisputed.

Plaintiffs' Businesses

37. Attached as Exhibit 11 is a true and accurate image a of post made by the Facebook account for The Whistler on March 25, 2020.

**RESPONSE:** Undisputed. However, Plaintiffs object that Exhibit 11 is not material

to the insurance coverage question in this case.

38. The Whistler fulfilled orders for curbside pickup during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 11.)

**RESPONSE:** Undisputed. However, Plaintiffs object that the facts in paragraph 38

are not material to the insurance coverage question in this case.

39. Attached as Exhibit 12 is a true and accurate image of a post made by the Facebook account for The Sleeping Village on March 24, 2020. (Ex. 12.)

**RESPONSE:** Undisputed. However, Plaintiffs object that Exhibit 11 is not material

to the insurance coverage question in this case

40. The Sleeping Village fulfilled orders for curbside pickup during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 12.)

**RESPONSE:** Undisputed. However, Plaintiffs object that the facts in paragraph 40

are not material to the insurance coverage question in this case.

Date: October 19, 2020

Respectfully submitted,

/s/  Joshua Karsh

Gary M. Klinger
gklinger@masonllp.com
MASON LIETZ & KLINGER LLP
227 West Monroe St., Ste. 2100
Chicago, IL 60606
Tel.: 312-283-3814

Gary E. Mason
gmason@masonllp.com
Danielle L. Perry
dperry@masonllp.com
MASON LIETZ & KLINGER LLP
5101 Wisconsin Ave., NW Ste. 305
Washington, DC 20016
Tel.: 202-429-2290
Fax.: 202-429-2294

Jay Angoff
jangoff@findjustice.com
Cyrus Mehri
cmehri@findjustice.com
Joshua Karsh
jkarsh@findjustice.com
Ezra Bronstein
ebronstein@findjustice.com
MEHRI & SKALET, LLC
1250 Connecticut Ave NW, Suite 300
Washington, DC 20036
Tel.: (202) 822-5100
Fax: (202) 822-4997

Jonathan Shub
jshub@shublawyers.com
Kevin Laukaitis, Esq.
Klaukaitis@shublawyers.com
SHUB LAW FIRM LLC
134 Kings Hwy. E.
2nd Floor
Haddonfield, New Jersey 08033
Tel.: 856-772-7200

Joel R. Rhine
jrr@rhinelawfirm.com
Martin A. Ramey
mjr@rhinelawfirm.com
Rhine Law Firm, P.C.
1612 Military Cutoff Road, Suite 300
Wilmington, North Carolina 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

**CERTIFICATE OF SERVICE**

I certify that, on October 19, 2020, I filed and caused to be served on all counsel of record the foregoing PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL through the Northern District of Illinois' CM/ECF system.

By: */s/ Joshua Karsh*