# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

IN RE: SOCIETY INSURANCE COMPANY  )
COVID-19 BUSINESS INTERRUPTION   )  MDL No. 2964
PROTECTION INSURANCE LITIGATION  )
_____ )  Master Docket No. 1:20-cv-05965
This document relates to:       )
                )  Hon. Edmond Chang
Big Onion Tavern Group, LLC v. Society  )
Insurance, No. 1:20-CV-02005     )
_____ )


## SOCIETY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

<u>**T**ABLE **O**F **C**ONTENTS</u>

**Table of Authorities**……………………………………………………………………….. **i-ii**

**I.** <u>**Plaintiffs Have Failed to Allege a Direct Physical Loss of or Damage to Covered Property**</u> ....................................................................................................... **1**

    **A.** **Plaintiffs Have Not Suffered a Direct Physical Loss of Property As They Have Not Been Physically Dispossessed of Their Property**.................................................. **4**

    **B.** **Plaintiffs Have Failed to Establish A Direct Physical Damage to Property Because the Coronavirus Does Not Physically Alter Property**............................................. **9**

    **C.** **Other Provisions in the Policy Support Society's Position that an Alteration in the Physical Characteristics of the Property is Required**....................................... **12**

    **D.** **The Society Policy is Not an "All-Risk" Policy**................................................ **14**

**II.** <u>**Plaintiffs Have Failed to Establish a Claim Under Civil Authority**</u>.............................. **15**

    **A.** **Access To Plaintiffs' Premises Was Not Prohibited**...................................... **15**

    **B.** **Access to the Area Immediately Surrounding the Alleged Damaged Property and Plaintiffs' Premises Was Not Prohibited.** ............................................................. **17**

    **C.** **The Executive Orders Were Not Issued Because of Dangerous Conditions Resulting From Damage Caused By a Covered Cause of Loss to Property Other than Property at the Described Premises.** .................................................................. **18**

**III.** <u>**Plaintiffs Have Failed to Establish a Claim under Contamination**</u>............................ **18**

**IV.** <u>**The Ordinance or Law Exclusion Bars Coverage**</u> ....................................................... **19**

**CONCLUSION** ................................................................................................................ **20**

**Cases**

*Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 292 Ill. App. 3d 14, 684 N.E.2d 978 (Ill. App. Ct. 1997)................................................................................ 14

*Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 308 Ill. App. 3d 597 (1st Dist. 1999) ....................................................................................... 11, 12

*Bd. of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428 (1989) ...................................................... 10, 11, 12

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) ............................... 18

*Diesel Barbershop LLC, v. State Farm Lloyds*, 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Texas Aug. 13, 2020)................................................................................... 4, 10

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham Couty, MI, July 1, 2020) .................................................................................................... 4

*Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001) ...................... 7

*Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 352 (8th Cir. 1986).................... 7

*It's Nice, Inc. v. State Farm Fire and Casualty Co.*, Case No. 20-L-547 (DuPage County, IL, September 29, 2020) ................................................................................. 2, 3, 14

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. 09-6057, 2010 WL 40263753 (E.D. La. Oct. 12, 2010) ................................................... 18

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)................................. 17

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.*, --- F. Supp. 3d ---, No. 4:19-cv-00693, 2020 WL886120 (D. S.C. Feb. 24, 2020) ............................................ 18

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, 20-cv-04423, 2020 WL 5938689 (C.D. Ca. Oct. 2, 2020)..................................................... 3, 9

*Mehl v. The Travelers Home & Marine Ins. Co.*, No. 16-cv-1325-CDP (E.D. Mo. May 2, 2018) 7

*Nautilus Grp. Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, (W.D. Wa. Mar. 8, 2012)........................................................................................... 5

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014) ................................................................................................... 2, 13

*Northeast Georgia Heart Center, P.C. v. Phoenix Ins Co*, No. 2:12-cv-00245-WCO, 2014 WL 12380022........................................................................................... 6, 8

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, Case No. 15-cv-01932, 2016 WL 3267247 (D. Or. June 7, 2016). ........................................................... 14

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90 (1992) ...................................... 15

*Pentair v. Am. Guarantee and Liab. Ins.*, 400 F.3d 613 (8th Cir. 2005) ...................................... 4

*Plan Check Downtown III v. AmGuard Ins. Co., et al.*, No. CV 20-6954-GW-SKx, 2020 WL 5742712, (C.D. Cal. Sep. 10, 2020).................................................... 3, 6, 15

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ................................................................................................... 7

*Prudential Prop. & Cas. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. June 18, 2002)............................................................................ 7

*Rose's 1, LLC v. Erie Ins. Exch.*, Case No. 2020 CA 002424B (D.C. Sup. Ct. Aug. 6, 2020) ...... 4

*Roundabout Theatre, Co. v. Cont'l Cas.*, 302 A.D.2d 1 (N.Y. App. Div. 2002)................... 13, 14

*Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) .............................................................................. 2, 3, 10

*Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ............................................................................................................ 6, 7, 8, 16

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908AB (KSx), 2018 WL 3829767 (C. D. Cal. July 11, 2018) .......................................................... 5

*Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 757 N.E.2d 481 (2001) .................. 2, 6, 7, 8

*U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64 (1990) ............................. 10, 11, 12

*United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128 (2d Cir. 2006); ................. 18

*Windridge of Naperville Condominium Ass'n v. Phil. Indem. Ins. Co.*, 932 F.3d 1035 (7th Cir. 2019) ......................................................................................................................... 9

| | | |
|---|---|---|
| IN RE: SOCIETY INSURANCE COMPANY | ) | |
| COVID-19 BUSINESS INTERRUPTION | ) | MDL No. 2964 |
| PROTECTION INSURANCE LITIGATION | ) | |
| _____ | ) | Master Docket No. 1:20-cv-05965 |
| This document relates to: | ) | |
| | ) | Hon. Edmond Chang |
| Big Onion Tavern Group, LLC v. Society | ) | |
| Insurance, No. 1:20-CV-02005 | ) | |
| _____ | ) | |

## DEFENDANT SOCIETY INSURANCE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The Court should grant Society's motion to dismiss, or alternatively, grant summary judgment in Society's favor, because Plaintiffs have failed to establish the terms and conditions of coverage are met under the Business Income, Extra Expense, Civil Authority, and Contamination additional coverages. Plaintiffs' diminished income due to being temporarily "unable to operate normally" resulting from Governor Pritzker's Executive Orders and the COVID-19 pandemic does not constitute a "direct physical loss of or damage to property." The Amended Complaint also fails to allege the necessary elements for coverage under the Civil Authority and Contamination additional coverage parts, including that access to Plaintiffs' premises was prohibited. Since there is no coverage under the Society Policy, and a bona fide dispute exists regarding coverage, Plaintiffs fail to state a claim for bad faith. Plaintiffs' Amended Complaint therefore should be dismissed in its entirety with prejudice accordingly, or in the alternative, summary judgment should be granted in Society's favor on all counts.

## I. Plaintiffs Have Failed to Allege a Direct Physical Loss of or Damage to Covered Property

Plaintiffs have failed to allege their loss of business income was directly caused by a distinct, demonstrable alteration of the physical characteristics of property covered by the Society Policies. Instead, Plaintiffs allege only intangible, financial loss due to limitations on their business operations as a result of the "spread of the novel coronavirus" and "ensuing [Executive] Orders." (Dkt. No. 29 at ¶¶ 4, 6.) Plaintiffs admit many of them <u>chose</u> to fully close their restaurants, despite the Executive Orders allowing them to remain open for delivery and carry-out, because it was uneconomical to remain open due to "the loss of alcohol and beverage sales that accompany sit-in service." (*Id*. at ¶ 6.) This is not a "direct physical loss of or damage to" property within any reasonable meaning of those words.

Here, there has been no "direct physical loss of or damage to" covered property. As discussed in Society's memorandum, the phrase "direct physical" modifies "loss of or damage to" and "loss." *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 301 (2001); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) [1]; *It's Nice, Inc. v. State Farm Fire & Cas. Co.*, Case No. 20-L-547 (DuPage County, IL, September 29, 2020) (Hr'g Tr. pp. 27-31);[2] *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014). A property sustains a "physical" injury when it "is altered in appearance, shape, color or in other material dimension," while intangible damage, such as diminution in value, is not a "physical" injury to property. *Eljer Mfg.,* 197 Ill. 2d at 301-02; *Sandy Point*, 2020 WL 5630465, *2; *Its Nice Inc.*, 2020 L 000547, Ex. I at p. 27. Or, put differently, the word "physical" "preclude[s] any claim against the property insurer when the insured merely

---

[1] A copy of the opinion in *Sandy Point Dental, PC v. The Cincinnati Insurance Company* was attached as Exhibit B to Defendant's Second Notice of Supplemental Authority filed in case number 20-CV-02005 on September 25, 2020 (Dkt. 133, 133-2).

[2] A copy of the transcript of the hearing in *Its Nice Inc. v. State Fm. Fire and Cas. Co.* was attached as Exhibit C to Society's Notice of Supplemental Authority filed in case number 20-cv-05965 on October 19, 2020 (Dkt. No. 22.)

suffers a detrimental economic impact unaccompanied by a <u>distinct, demonstrable, physical alteration of the property</u>." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) (emph. added).

A recent decision from this District involving a claim like Plaintiffs' likewise found that the policy term "'direct physical loss" requires a physical alteration to the property to trigger coverage. *Sandy Point Dental,* 2020 WL 5630465. In finding there was no coverage for an insured's business interruption claim after its office was "effectively forced to shut down" as a result of Governor Pritzker's orders related to COVID-19, the *Sandy Point* court rejected the insured's argument that "direct physical loss" did not require a tangible, physical alteration to the property. Instead, the court found the words "direct" and "physical" modify the word "loss" and "connote actual, demonstrable harm of some form to the premises itself, rather than a forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Id.* at p. 4. Noting that the insured had not pled any facts showing a physical alteration or structural degradation of its property, the court held:

> In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss-a prerequisite for coverage.

*Id.* at 5. *See also*, *It's Nice,* (Hr'g Tr. pp. 27-31) (holding in COVID-19 related business interruption case, "direct physical loss" requires actual physical damage to trigger coverage). This is consistent with cases throughout the country, including cases finding no coverage for COVID-19 related business interruption. *See*, *Plan Check Downtown III v. AmGuard Ins. Co., et al.*, No. CV 20-6954-GW-SKx, 2020 WL 5742712, *4-6 (C.D. Cal. Sep. 10, 2020) (finding no coverage for COVID-19 business interruption, holding loss of use does not constitute "physical loss of" covered property); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, 20-cv-04423, 2020 WL 5938689, at * 4-5 (C.D. Ca. Oct. 2, 2020) (same); *Pappy's Barber Shops,*

*Inc. v. Farmers Group, Inc.,* 20-cv-907-CAB-BLM, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (finding no coverage for COVID-19 business interruption and holding that loss of use does not constitute a direct physical loss in the absence of a distinct, demonstrable physical alteration to the property)[3]; *Rose's 1, LLC v. Erie Ins. Exch.,* 2020 CA 002424B, 2020 WL 4589206 at \*5, (D.C. Super. Aug. 6, 2020) (same); *Diesel Barbershop LLC, v. State Farm Lloyds*, 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Texas Aug. 13, 2020) (same)[4]; *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, Ingham County, MI, July 1, 2020 Hr'g Tr. at 35:1-11 (loss of business due to COVID-19 related executive orders prohibiting on-premises dining was not a "direct physical loss of or damage to" property).

Plaintiffs' property has not had any "alteration in any appearance, shape, color or in other material dimension," as required in Illinois. Rather, Plaintiffs have incurred an intangible economic loss. Plaintiffs, therefore, have "failed to plead a direct physical loss."

### A. Plaintiffs Have Not Suffered a Direct Physical Loss of Property As They Have Not Been Physically Dispossessed of Their Property

Society does not contend that a *structural* alteration, one type of physical alteration, is required but that a <u>distinct, demonstrable, physical alteration of the property is a prerequisite for coverage</u>. Nor is Society suggesting that "loss" and "damage" are the same thing, but the distinction Plaintiffs draw between the two does not help their position, as they fail to establish either. Plaintiffs refer to the Merriam-Webster's definition of "loss" as "losing possession" or

---

[3] A copy of the opinion in *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, was attached as Exhibit A to Defendant's Second Notice of Supplemental Authority in Further Support of its Motion to Dismiss or in the Alternative Summary Judgment filed in case number 20-CV-02005 on September 25, 2020 (Dkt. No. 133).

[4] Copies of the transcript in *Gavrilides Management Company v. Michigan Insurance Company* and written opinions in *Roses's 1 LLC v. Erie Insurance Exchange*, and *Diesel Barbershop LLC, et. al. v. State Farm Lloyds*, were attached as Exhibits A, B and D to Defendant's Notice of Supplemental Authority in Further Support of its Motion to Dismiss filed in case number 20-CV-02005 on August 21, 2020 (Dkt. No. 120).

"deprivation."  (Dkt. No. 124-1 at p. 12.)  Plaintiffs conveniently omit, however, the definition of "deprivation" that Merriam-Webster equates with "loss": "an act or instance of withholding or taking something away from someone or something: an act or instance of depriving: loss."[5]  In other words, loss of possession.  There is no question that Plaintiffs physically retain possession of the covered property and there has been no dispossession.  Plaintiffs continue to occupy and control their insured premises, including the real and personal property therein.  All such property remains in Plaintiffs' possession and is capable of being used for other purposes. Plaintiffs' property has not been stolen, destroyed, or suddenly disappeared, but remains in Plaintiffs' possession and is physically functional and capable of being used.  Thus, Plaintiffs fail to establish a direct physical loss of property even under their own definition.

The cases cited by Plaintiffs provide them with no support.  For example, *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908AB (KSx), 2018 WL 3829767 (C. D. Cal. July 11, 2018), involved the permanent dispossession of personal property, and illustrates that Plaintiffs here have incurred no such loss.  In *Total Intermodal*, the court found coverage under a policy which covered "risks of direct physical loss of or damage to" property where printer equipment was mistakenly shipped back to China rather than delivered to the intended customer.  *Id.* at *1.  The court found that "the phrase 'loss of' includes the permanent dispossession of something."  *Id.* at *4.  Unlike this case, the plaintiff in *Total Intermodal* lost physical possession and control of the printer equipment, which was in China, while Plaintiffs here retain physical possession and control of their premises and personal property.  *See also*, *Nautilus Grp. Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, (W.D. Wa. Mar. 8, 2012) (theft of personal property held to be a direct physical loss.)

---

[5] https://www.merriam-webster.com/dictionary/deprivation

Plaintiffs have not sustained a physical loss of property; rather, the pandemic and Executive Orders merely temporarily limit how Plaintiffs may use their property. The court in *Northeast Georgia Heart Center, P.C. v. Phoenix Ins. Co.* discussed this "critical" distinction "between a loss of physical possession and a loss of use," when it found that no coverage was available when the insured could not use its covered property as intended. No. 2:12-cv-00245-WCO, 2014 WL 12480022, at *1 (N.D. Ga. May 23, 2014). In that case, the manufacturer of a generator initiated a voluntary recall and sent the plaintiff a letter warning it to immediately stop using the generator, which the plaintiff did. *Id.* at *2. The court found the plaintiff was not entitled to business interruption coverage, holding that its loss of business income was not the result of a "direct physical loss of or damage to" covered property, but was instead caused by compliance with the manufacturer's letter, which was merely an "ethereal loss." *Id.* at *5. The court observed that "[w]hat remains entirely absent from plaintiff's loss is some kind of physical effect on the covered property," as the generator was physically functional, and the letter had been issued as a precaution. *Id.* As a result, the "plaintiff did not suffer a direct physical loss because no physical alteration or spatial change in the property's location" caused the loss of business income. *Id.* at *4. *See also*, *Plan Check Downtown III,* 2020 WL 5742713, *5-6 (in COVID-19 business interruption claim, rejecting insured's citation to *Total Intermodal* and finding that temporary change in what business activities can be performed in premises is not covered.) *Accord Eljer Mfg.,* 197 Ill.2d at 301 ("tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension").

The case from the Western District of Missouri cited by Plaintiffs, *Studio 417, Inc. v. Cincinnati Insurance Co.*, applying Missouri law, denied the insurer's motion to dismiss based on cases also decided under Missouri law that involved different policy language and are contrary to

Illinois law. No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). The facts and policy language in *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co*. are different than those in this case; moreover, the court held that a loss of value in inventory was covered, a holding directly contrary to *Eljer*'s holding that the modifier "physical" excludes intangible damage, such as diminution in value. 787 F.2d 349, 352 (8th Cir. 1986); *Eljer Mfg*, 197 Ill. 2d at 301. The second, *Mehl v. The Travelers Home & Marine Ins. Co*., No. 16-cv-1325-CDP (E.D. Mo. May 2, 2018)[6], involved a policy that expressly covered "loss of use" of property, and Society's Policy contains no such language. *Studio 417* also relied on the assumption that the virus has a physical aspect to it. *Studio 417*, 2020 WL 4692385 at *4. However, under the plain language of the Policy and Illinois law, it is the alleged loss or damage itself, not the damage-causing agent, that must be physical.

The *Studio 417* court also cites three cases for the proposition that a physical loss may occur when property is rendered uninhabitable or unusable even in the absence of a physical alteration. However, the cases cited all involve a physical alteration to property. *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 236 (3d Cir. 2002) (affirming that "unless asbestos in a building was of such quantity and condition as to make the structure unusable, the expense of correcting the situation was not within the scope of a first party insurance policy covering 'physical loss or damage'"); *Prudential Prop. & Cas. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *8 (D. Or. June 18, 2002) (holding that water damage and resulting mold that could not be removed physically altered the property); *Gen. Mills, Inc. v. Gold Medal Ins. Co.,* 622 N.W.2d 147, 150–52 (Minn. Ct. App. 2001) (holding unapproved pesticide that permeated oats and could not be removed constituted physical damage). Additionally, the

---

[6] Unpublished, slip copy attached hereto as Exhibit A.

*General Mills* court also held that an impairment in economic value is sufficient to support a finding of physical damage and is thus contrary to Illinois law. *Eljer*, 197 Ill. 2d at 301-02.

Finally, *Studio 417*'s denial of the insurer's motion to dismiss is an outlier among the growing body of decisions holding that there is no coverage for Plaintiffs' claim of intangible economic loss, all of which are consistent with Defendant's position, and Illinois law, that Plaintiffs must demonstrate some demonstrable, physical alteration of their property to trigger coverage. *See*, list of cases *supra* at pp. 3-4.

In sum, Plaintiffs' diminished business income is the result of limitations on use of the insured premises caused by the Executive Orders and pandemic, a resulting reduction in consumer demand, and is not the result of any physical alteration or dispossession of its property. Plaintiffs' property remains under their physical possession, use, and control, and has incurred no "physical alteration or spatial change" in its location. *Northeast Georgia Heart Center,* 2014 WL 12480022, at *4. Moreover, Plaintiffs' argument that their premises are unsafe and unfit for use is contradicted by the fact that, like grocery stores, hardware stores, and scores of other businesses, approximately 40 of their establishments have continued to operate on their premises for purposes of fulfilling food orders for delivery and carry-out, and many of those who chose to fully close their restaurants did so because they found it uneconomical to operate without "alcohol and beverage sales that accompany sit-in service." (*See* Dkt. No. 29 at ¶ 6, Dkt Nos. 114-11 through 114-43[7].) Plaintiffs have not suffered a "direct physical loss of or damage to covered property," and their claims are not covered under the Society Policies.

---

[7] The Court may take judicial notice of exhibits 11 through 43 to Society's SOF as they consist of posts made by Plaintiffs to their own publicly available Facebook pages. *See, e.g.*, *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 431 n. 3 (N.D. Ill. Aug. 14, 2020) (holding courts may consider undisputed material hosted on a party's public website). Additionally, Plaintiffs' responses to Paragraphs 39-78 of Society's Statement of Undisputed Material Facts (Dkt. No. 125) fail to dispute the statement that the particular Plaintiff identified in each paragraph fulfilled orders for delivery and carry-out. As such, Plaintiffs should be deemed to have

**B. Plaintiffs Have Failed to Establish A Direct Physical Damage to Property Because the Coronavirus Does Not Physically Alter Property.**

Plaintiffs have also failed to establish their losses were caused by a direct physical damage to property, as they have failed to establish a distinct, demonstrable alteration of covered property. Plaintiffs' response identifies the "COVID-19" pandemic as the purported Covered Cause of Loss, but does not even attempt to argue that the pandemic has physically altered their property. (Dkt. No. 124-1 at p. 15.) As explained in Society's memorandum in support of its motion, Plaintiffs' economic losses were not caused by the virus, but instead the result of the Executive Orders issued by the Governor in response to the pandemic, which has resulted in a temporary inability of the Plaintiffs to use their premises as desired. (*See*, Dkt. No. 113 at pgs. 10-11.) The Policy requires Plaintiffs' to have suffered a *direct* physical loss of or damage to property, and the direct cause of Plaintiffs' economic losses are the Executive Orders, not the coronavirus. *See, e.g.*, *Windridge of Naperville Condominium Ass'n v. Phil. Indem. Ins. Co.*, 932 F.3d 1035, 1040 (7th Cir. 2019) ("the term 'direct' is meant to exclude situations in which an intervening force plays some role in the damage); *Mark's Engine*, 2020 WL 5938689, at * 4 (holding that economic losses caused by presence of coronavirus on other property is not a "direct" loss).

Instead, like the court in *Studio 417*, Plaintiffs' argue they have alleged that the virus is a physical substance that lives on physical surfaces. This argument conflates the type of *damage* that must have occurred with the cause of the damage and type of property purportedly damaged and is inconsistent with Illinois law and the plain terms of the Policy. As in *Eljer*, the mere fact the virus and Plaintiffs' property are "physical" in nature does not render Plaintiff's loss "physical." In *Eljer*, defective plumbing systems were installed in homes, and while in most

---

admitted that the Plaintiffs identified in Paragraphs 39 – 78 were open and fulfilled orders for carry-out or delivery pursuant to Local Rule 56.1(b)(3)(C).

instances the systems did not leak or cause any physical damage, the mere presence of such a system in a home would cause that home to lose value. The insured in *Eljer* sought coverage for those homes that incurred only a diminution in value, alleging that it constituted "physical" injury. The Illinois Supreme Court rejected that argument. Examining the word "physical," which Webster's Dictionary defines as "of or relating to natural or materials things as opposed to things mental, moral, spiritual, or imaginary," the court found it connotes an "alteration in appearance, shape, color or in other material dimension." *Eljer*, 197 Ill. 2d at 301. As a result, the court held that the diminution in value of homes caused by the installation of defective plumbing systems did not constitute a "physical injury" to property. *Id.* at 312. Both the damage causing agent—the faulty plumbing system—and the insured property—the homes—were tangible and physical in nature; however, the *damage* was not.

Similarly, here, even assuming the coronavirus was on the premises, that substance has not resulted in a *physical* loss. At most, the Plaintiffs' have incurred intangible, nonphysical economic damage resulting from the temporary limitations on the ability to use their premises as they would like. The failure to show a physical alteration to their property is a hurdle Plaintiffs cannot overcome, as courts have acknowledged that the coronavirus does not cause a physical alteration to property. *Sandy Point Dental*, 2020 WL 5630465, at *2-3 ("[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of property."); *Diesel Barbershop*, 2020 WL 4724305 at *5 (coronavirus does not cause a distinct, demonstrable alteration of property).

Plaintiffs rely on several cases involving asbestos containing materials incorporated into buildings that are factually inapposite: *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co*., 144 Ill.2d 64 (1990); *Bd. of Educ. v. A, C & S, Inc*., 131 Ill.2d 428 (1989); and *Bd. of Educ. of Twp. High*

*Sch. Dist. No. 211 v. Int'l Ins. Co.*, 308 Ill. App. 3d 597 (1st Dist. 1999). As the *Eljer* Court explained, its decision in *Wilkin* was based on the unique nature of asbestos products, "which disseminate toxic fibers *upon installation* and continuously contaminate a structure and its contents subsequent to installation." *Eljer*, 197 Ill.2d at 306 (emphasis added). Thus, in those cases, the premises themselves are the source of the toxic substance, are inherently dangerous, and thus the court believed were physically injured.

The asbestos cases are in sharp contrast to the situation here, where the *premises* are not the source of a dangerous substance, people carrying the virus are. There is nothing inherently dangerous about the physical characteristics of Plaintiffs' property, which is why, like scores of other businesses throughout the state, 40 of the plaintiffs continued to operate on their premises, albeit with restrictions in place to enforce social distancing. This, of course, is the relevance of the fact that Plaintiffs were able to remain open, as it establishes that the premises and covered property were not unsafe. Moreover, asbestos cannot be remediated through frequent cleaning with disinfectants (which Plaintiffs' businesses were required to do even in the pre-COVID-19 era), nor can the continuous release of asbestos fibers be reduced by limiting the number of people allowed in the structure. *Sandy Point Dental*, 2020 WL 5630465, at *2 (distinguishing *Sch. Dist. No. 211*, 308 Ill. App. 3d 597 because the "plaintiff was required to conduct repairs and remove asbestos-causing materials from the premises.")

Further distinguishing those cases from the present case, the court emphasized the presence of asbestos containing materials in buildings is a condition "***which by law must be corrected***." *Wilkin*, 144 Ill.2d at 75-76 (quoting *A, C & S, Inc.*, 131 Ill.2d at 446). The insureds in these cases sought recovery from their insurers for the costs associated with inspection, removal, or replacement of asbestos products from their buildings due to federal and state regulations requiring

the removal or containment of asbestos products in certain. *Id*. at 71. Illinois state law at the relevant time periods in *A, C & S*, *Wilkin*, and *School District No. 211*, prohibited school personnel and students from occupying buildings that contained friable asbestos material that had not been remediated. In contrast, here the Executive Orders not only permitted persons to go into Plaintiffs' restaurants to get food for take-out, they *encouraged* restaurants, like Plaintiffs', to continue to offer those services, and many of Plaintiffs' restaurants did, in fact, continue to operate.

Plaintiffs have failed to establish that their business income losses were caused by an alteration in their property's "appearance, shape, color or in other material dimension." *Eljer Mfg.*, 197 Ill.2d at 301-02. Instead, they allege an intangible limitation on their business operations imposed by conditions external to the property: the COVID-19 pandemic and the Executive Orders. This is insufficient to establish a direct physical loss of or damage to property and, consequently, insufficient to establish coverage under the Society Policies.

### C. The Period of Restoration Clause Support Society's Position that an Alteration in the Physical Characteristics of the Property is Required

Plaintiffs' argument regarding the period of restoration clause, including that the Society Policies define the period of restoration "to include the time needed to resume normal operations," is simply wrong. Instead, the period of restoration runs from "immediately after the time of direct physical loss or damage," and ends on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Dkt. No. 125 at ¶ 35, emphasis added.) The definition of "period of restoration" does not make any reference to a resumption of normal operations. Rather, it is expressly linked to remedying any physical alteration of the property or, if that is not possible, when business is resumed at a new permanent location.

Plaintiffs' attempt to distinguish *Newman Myers* and *Roundabout* on the basis that they involved policies that contained different policy language is also wrong, as the language is not different in any way that assists Plaintiffs. In *Newman Myers*, the period of restoration stated that it "'will continue <u>until your operations are restored</u>, ... including the time required to,' *inter alia*, 'repair or replace property.'" *Newman Myers*, 17 F. Supp. 3d at 332 (emphasis added). Thus, *Newman Myers* contains arguably broader language relating the period of restoration to the time needed to restore operations, while the Society Policies contains no such language, contrary to Plaintiffs' false assertion. Nonetheless, the court still found that the words "replace" and "repair" contemplated "physical damage to the insured premises as opposed to loss of use of it." *Id.* In *Roundabout*, the measure of recovery was limited to the time required "to *rebuild, repair, or replace such part of the property herein described as has been lost, damaged or destroyed*," language that is substantively the same as that here. *Roundabout Theatre, Co. v. Cont'l Cas.*, 302 A.D.2d 1, 8 (N.Y. App. Div. 2002) (emph. in original).

Plaintiffs' expansive reading of the period of restoration as ending "when the spread of the COVID-19 virus is reduced to levels that permit Plaintiffs to fully and safely use their premises" finds no support in the Policy language or any case law. Moreover, it underscores the fatal flaw with their claim: it does not relate to any physical change of the property and is instead based on conditions external to and independent of the premises. *See, e.g.*, *Newman Myers*, 17 F. Supp. 3d at 331 (finding the words "direct" and "physical" require "actual, demonstrable harm of some form to the premises itself, <u>rather than forced closure of the premises for reasons exogenous to the premises themselves</u>") (emphasis added). Even the solitary case cited by Plaintiffs, *Oregon Shakespeare Festival*, which was subsequently vacated, did not go as far as Plaintiffs urge. There, the court held that the period of restoration encompassed the time required to change air filters and

allow smoke from wildfires to dissipate in the building. *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, Case No. 15-cv-01932, 2016 WL 3267247, at *6 (D.Or. June 7, 2016). Importantly, even under this uniquely expansive reading of the period of restoration clause, the time period was still tied to a change in the conditions of the building, not the world at large.

### D. The Society Policy is Not an "All-Risk" Policy

Plaintiffs' Response attempts to reduce what they must establish from a "direct physical loss or damage to" property to merely suffering a "fortuitous loss" by incorrectly labeling the Society Policy as an "all-risk" policy. (*Id.* at 7-8.) The Society Policy does not use the phrase "all-risk" and is not an "all risk" policy because it only provides coverage for direct physical losses, not all losses or even all fortuitous losses. *See*, *Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 292 Ill. App. 3d 14, 17, 684 N.E.2d 978 (Ill. App. Ct. 1997) (describing an "all risk" policy as one that provides coverage for all fortuitous losses not resulting from misconduct or fraud unless expressly excluded); 10A Couch on Ins. 3d § 148:50 (rev. 2019) (defining an "all-risk" policy as one where "recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision"). Moreover, Plaintiffs are seeking coverage under additional coverage parts, Business Income, Civil Authority, and Contamination, which provide their own limited coverage separate from the main insuring agreement with specific terms and conditions that must be met.

Further, even if the Society Policies were "all-risk" policies, which they are not, "labeling the policy as all-risk does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre*, 751 N.Y.S.2d at 7 ; *see also*, *Pentair*, 400 F.3d at 615-16 (holding the insured did not meet its initial burden to establish coverage where loss did not constitute "direct physical loss or damage"); *It's Nice*, (Hr'g Tr. pp. 29-31) (holding "all risk policy" did not cover COVID-19 business interruption because there was no "direct

14

physical loss"); *Plan Check Downtown III*, 2020 WL 5742712, at * 3, 6 (same).  Plaintiffs cannot avoid the requirement of establishing a direct physical loss of or damage to their covered property by unilaterally labelling the Society Policies "all-risk."

## II.    Plaintiffs Have Failed to Establish a Claim Under Civil Authority

For the same reasons Plaintiffs have failed to allege or establish a direct physical loss of or damage to their own properties, they have failed to allege or establish damage to property other than the described premises caused by a direct physical loss.  The remaining three conditions for coverage under Civil Authority are an action by a "civil authority that prohibits access to the described premises," "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within the area," and the "action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Dkt. No. 25-1 at ¶ 36.)  Plaintiffs have not and cannot establish these elements.

### A.  Access To Plaintiffs' Premises Was Not Prohibited.

Plaintiffs allege that the relevant action by a civil authority is the Executive Orders; however, the Executive Orders do not prohibit access to Plaintiffs' premises. Undefined terms in insurance policies are given their plain, ordinary, and popular meaning as understood by the average, ordinary, normal lay person.  *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, at 108, 115 (1992).  (using Webster's dictionary definition of term in policy).   The Merriam-Webster dictionary defines "prohibit" as "to forbid by authority" or "to prevent from doing something."[8] It defines "access" as "permission, liberty, or ability to enter, approach, or pass to

---

[8] https://www.merriam-webster.com/dictionary/prohibit

and from a place or to approach or communicate with a person or thing."[9]  Thus, the average lay person would understand the policy language to mean an action that forbids entrance to the premises.  The Executive Orders indisputably did not prevent or forbid Plaintiffs from entering their premises; instead, they only limited the types of activities allowed on the premises.  Not only did approximately 40 of the plaintiffs operate on their premises for purposes of fulfilling orders for carry-out and delivery, but customers were explicitly allowed to "enter the premises to purchase food or beverages for carry-out."  (Dkt. Nos. 114-11 through 114-43, 114-2 at p.2, § 1.)  Further, employees of Non-Essential Businesses were allowed to perform "Minimum Basic Operations" on their premises, including processing payroll and employee benefits, ensuring security and preserving the condition of the premises, and maintaining inventory.  (Dkt. No. 125 at ¶ 16.)  The Executive Orders limited the types of activities allowed on premises, such as consuming food or beverages on site, but did not prohibit Plaintiffs from accessing their premises.  *Sandy Point Dental*, 2020 WL 5630465, at *2-3 (holding that "while the coronavirus orders have limited plaintiff's operations, no order issued in Illinois prohibits access to plaintiff's premises.")

Given the common definitions of "prohibit" and "access," Plaintiffs' argument that the Civil Authority coverage does not require the action of civil authority to prohibit all access to the premises fails.  Such a statement would be redundant and unnecessary given that "prohibit access" means to forbid—not limit or restrict—entrance.  Plaintiffs again cite the *Studio 417* decision, but the *Studio 417* court ignored the plain meaning of the words "prohibit access," and concluded, without explanation, that allegations of coronavirus orders that allowed restaurants to remain open for food preparation, take-out and delivery, alleged a prohibition of access.  *Studio 417*, 2020 WL 4692385, at *7.  It did not attempt to define the phrase "prohibit access," and did not cite a single

---

[9] https://www.merriam-webster.com/dictionary/access

case to support its holding, which is inconsistent with the plain meaning of the policy language and the decisions of other courts across the country that have considered this issue. *See, e.g., Sandy Point Dental,* at * 3 (holding that coronavirus orders limited plaintiff's business operations, but did not prohibit access to premises); *Pappy's Barber Shops,* 2020 WL 5500221, at *6 (same); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman LLC v. Nat'l Fire Ins. Co. of Hartford,* No. 06-770-C, 2007 WL 2489711, at * 4 (M.D. La. Aug. 29, 2007) (discussing and collecting cases regarding the construction of "prohibit access" in civil authority provisions).

### B. Access to the Area Immediately Surrounding the Alleged Damaged Property and Plaintiffs' Premises Was Not Prohibited.

For the same reason, Plaintiff has failed to allege or raise a genuine issue of material fact that the Executive Orders prohibited "[a]ccess to the area immediately surrounding the damaged property. . . and the described premises are within the area." Access, i.e. entrance, to the area surrounding Plaintiffs' premises were not forbidden. If it had been, the approximately 40 Plaintiffs who fulfilled orders for carry-out or delivery from their premises during the relevant time periods would not have been able to do so because they would have been unable to access the premises. (*See* Dkt Nos. 114-11 through 114-43.) Further, it is a matter of general knowledge in Illinois that the Executive Orders did not prohibit individuals from walking on public sidewalks or driving on public streets, including those in the areas around Plaintiffs' premises. Thus, because people were allowed to enter the area surrounding Plaintiffs' premises, access was not prohibited. Plaintiffs' argument that this element is satisfied due to the Executive Orders' limitation on the operations of neighboring businesses is without merit and again ignores the common meaning of the terms "prohibit," "access," and "area." The provision requires that Plaintiffs' described premises be within the area to which access has been prohibited. Even if the Executive Order had prohibited

access to a nearby business (which they did not) such as a bowling alley, Plaintiffs' premises would have to be located within the bowling alley to satisfy this requirement.

## C. The Executive Orders Were Not Issued Because of Dangerous Conditions Resulting From Damage Caused By a Covered Cause of Loss to Property Other than Property at the Described Premises.

Finally, the requirement that the action of civil authority be taken in response to dangerous conditions caused by damage to property other than the described premises cannot be met and Plaintiffs' Response does not argue that it has. Even if the presence of the coronavirus constitutes property damage caused by a direct physical loss, which it does not, the Executive Orders were not issued due to dangerous conditions resulting from any presence of the coronavirus on property at the time the Orders were entered. Rather, it was entered to reduce the risk of *future* transmission of COVID-19. As explained in Society's Motion, orders entered to address a risk of future harm do not trigger coverage under Civil Authority. *See, e.g., United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 129 (2d Cir. 2006); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, (5th Cir. 2011); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.,* No. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.,* 440 F. Supp.3d 520, 531(D. S.C. 2020).

## III.    Plaintiffs Have Failed to Establish a Claim under Contamination

Similarly, Plaintiffs' contention they are entitled to coverage under the Contamination provision, which defines contamination as "a defect, deficiency, inadequacy or dangerous conditions in your products, merchandise, or premises," fails. (Dkt. No. 125 at ¶ 38 (emphasis added).) This provision provides coverage for losses caused by "[c]ontamination that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product." (*Id*.) Thus, for there to be coverage, Plaintiffs would need to establish that (1) their products, merchandise, or premises was contaminated, (2) this

contamination caused the issuance of the Executive Orders, and (3) the Executive Orders prohibited access to Plaintiffs' premises. The Contamination provision does not provide coverage to losses tangentially related to contamination anywhere in the world, it must be a contamination of the insured's products, merchandise, or premises. The only "action of governmental authority" alleged or otherwise identified by Plaintiffs is the Executive Orders. As discussed above, the Executive Orders did not prohibit access to Plaintiffs' premises, so Plaintiffs' claim is defeated on this ground alone. It also fails because the Executive Orders were not entered due to any contamination of <u>Plaintiffs'</u> premises, products, or merchandise. Accordingly, Plaintiffs have failed to establish their losses fall within the scope of the Contamination provision.

## IV. <u>The Ordinance or Law Exclusion Bars Coverage</u>

Plaintiffs' argument that the Ordinance or Law exclusion only applies where the cause of the alleged loss is the law or ordinance itself does not support Plaintiffs' position, as that is exactly the case here. The direct cause of the reduction in Plaintiffs' business income was Plaintiffs' compliance with the Executive Orders that limited their business operations, not the virus. The virus did not prohibit Plaintiffs from using indoor dining or bar areas. Various types of businesses that serve large numbers of the public and were equally likely to have the presence of the virus on the premises, such as grocery stores, hardware stores, and pharmacies, were operational. The categories of businesses that were allowed to operate without restrictions were determined by the Executive Orders, not the virus. Further, there are states throughout the country that are allowing businesses to reopen without restrictions despite high positivity rates and increasing numbers of new cases. Once again, the different business conditions are a result of different states' executive orders, not the virus. Similarly, the Executive Orders are the cause of the limitations on Plaintiffs' business operations, not the coronavirus.

Plaintiffs' once again deliberately conflate the separate and distinct concepts of "access" and "use" to try to argue that the Civil Authority or Contamination additional coverages would be rendered illusory if the Ordinance or Law exclusion is applied. As explained above, the Civil Authority and Contamination additional coverages only apply when the insured is prohibited access to the insured premises. A limitation or regulation on the use of property is not the same as a prohibition of access and does not trigger coverage under Civil Authority or Contamination. Conversely, a prohibition of access due to damage to other property as required for Civil Authority coverage is not the same as a regulation of construction, use, or repair of the insured premises and does not fall within the scope of the Ordinance or Law Exclusion. For this reason, Plaintiffs' claims are not covered under Civil Authority or Contamination. However, even if the Court were to deem the Executive Orders' regulation of the use of Plaintiffs' premises to fall within the scope of either coverage, Plaintiffs' claims would be barred by the Ordinance or Law exclusion.

## CONCLUSION

WHEREFORE, Defendant, Society Insurance, respectfully requests this Honorable Court enter an order either dismissing Plaintiffs' Amended Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, granting summary judgment in favor of Society on the Plaintiffs' Amended Complaint in its entirety; declaring there is no coverage for Plaintiffs' claims under the Society Policies; and granting Society such other and further relief as this Court deems just.

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
(312) 427-3944 (facsimile)
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

Respectfully submitted,

Society Insurance

By:     /s/ Thomas B. Underwood  
        Counsel for Defendant