**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: SOCIETY INSURANCE COMPANY ) | |
| COVID-19 BUSINESS INTERRUPTION ) | MDL No. 2964 |
| PROTECTION INSURANCE LITIGATION ) | |
| _____ ) | Master Docket No. 1:20-cv-05965 |
| This document relates to: ) | |
| ) | Hon. Edmond Chang |
| 351 Kingsbury Corner, LLC v. Society Insurance, ) | |
| No. 1:20-CV-02589 ) | |
| _____ ) | |

### SOCIETY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

**T<span>ABLE</span> <span>OF</span> C<span>ONTENTS</span>**

**Table of Authorities** ………………………………………………………………… **i-ii**

**I.     The Court May Take Judicial Notice of the Documents Attached to Society's Statement of Facts** ............................................................................................... **1**

**II.     Plaintiff's Claim Was Not the Result of Direct Physical Loss or Damage** ................... **3**

     **A.     The Executive Orders Caused the Suspension of Plaintiff's Operations** ............. **5**

     **B.     Coronavirus Does Not Physically Alter Property** ................................... **7**

**III.     Plaintiff Has Failed to Establish Coverage Under Civil Authority** ............................. **13**

**IV.     Plaintiff Has Failed to Establish Coverage Under Contamination** ............................. **15**

**V.     The Ordinance or Law Exclusion Bars Coverage For Plaintiff's Claim** .................. **16**

**VI.     The Policy is Unambiguous and Plaintiffs' Interpretation is Not Reasonable** .......... **16**

**CONCLUSION** .................................................................................................. **19**

## Cases

*Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, (7th Cir. 2010) ............................ 17

*Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 308 Ill. App. 3d 597 (1st Dist. 1999) ......................................................................................................... 9, 10

*Bd. of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428 (1989) ............................................. 9, 10

*Bodnar v. Lake County Jail, et al.*, 2:20-CV-157-PPS-APR, 2020 WL 1940742 (N.D. Ind. Apr. 22, 2020) ............................................................................................................ 2

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98–434–HU, 1999 WL 619100 (D.Or. Aug.4, 1999) ........................................................................................................ 11

*Cont'l Cas. Co. v. Howard Hoffman and Associates*, 2011 IL App (1st) 100957, 955 N.E.2d 151 (Ill.App. 2011) .......................................................................................................... 17

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) ............................... 15

*Diesel Barbershop LLC, v. State Farm Lloyds*, 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Texas Aug. 13, 2020) ........................................................................................ 5, 8, 9

*Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 930 N.E.2d 999 (Ill. 2010) ................................... 17

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham County, MI, July 1, 2020) ...................................................................................................... 5, 7

*Geller v. Cuomo*, 2020 WL 4463207 (S.D.N.Y. 2020) .......................................................... 2

*Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994) .................................................... 1

*Its Nice Inc. v. State Fm. Fire and Cas. Co.*, 2020 L 000547 (DuPage County, IL Sept. 29, 2020) .................................................................................................................... passim

*Landmark American Ins. Co. v. NIP Grp., Inc.*, 2011 IL App (1st) 101155, 962 N.E.2d 562 ..... 19

*Mama Jo's, Inc. v. Sparta Ins. Co.*, Case No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fl. June 11, 2018) ..................................................................................................... 12

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, 20-cv-04423, 2020 WL 5938689 (C.D. Ca. Oct. 2, 2020) ................................................................ 5, 7

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130 (Ohio Ct. App. 2008) ...................................................................................................... 12

*Nicor, Inc. v. Assoc. Electric & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 860 N.E.2d 280 (Ill. 2006). .................................................................................................................... 17

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 20-cv-907-CAB-BLM, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ................................................................................... 5, 7

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 20-cv-907, 2020 WL 5847570 (S.D. Cal. Oct. 1, 2020) ..................................................................................................... 6, 8, 9

*Rose's 1, LLC v. Erie Ins. Exch.*, Case No. 2020 CA 002424B (D.C. Sup. Ct. Aug. 6, 2020) .. 5, 7

*Roundabout Theatre Co. Inc. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4 (N.Y. App. Div. 2002) .......... 18

*Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ............................................................................................... passim

*Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481 (2001) .................... 3, 8, 18

*U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64 (1990) ...................................... 9, 10

*United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128 (2d Cir. 2006); ................... 15

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569 (6th Cir. 2012) ................... 12

*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 431 (N.D. Ill. Aug. 14, 2020 ........................................................................................... 3

i

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993)............................ 2

*Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844 (Cal. Ct. App. 2003)
.................................................................................................................................................... 3

*Whitt v. St. Farm Fire & Cas. Co.*, 315 Ill.App.3d 658, 734 N.E.2d 911  (Ill.App. 2000) .......... 17

*Wolfford v. Baten ISF/Jordan Unit*, 20-cv-094-Z-BR, 2020 WL 3493548 N.D. Tx. June 1, 2020)
.................................................................................................................................................... 2

**Statutes**

Fed. R. Evid. 201 ....................................................................................................................... 5

**Secondary Sources**

10A *Couch On Insurance* § 148.46 (3d Ed. 2019) ...................................................................... 7

| | | |
|---|---|---|
| IN RE: SOCIETY INSURANCE COMPANY | ) | |
| COVID-19 BUSINESS INTERRUPTION | ) | MDL No. 2964 |
| PROTECTION INSURANCE LITIGATION | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | Master Docket No. 1:20-cv-05965 |
| This document relates to: | ) | |
| | ) | Hon. Edmond Chang |
| 351 Kingsbury Corner, LLC v. Society Insurance, | ) | |
| No. 1:20-CV-02589 | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## SOCIETY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiff has failed to establish the terms and conditions of coverage are met under the Business Income, Extra Expense, and Civil Authority additional coverages. Plaintiff's diminished income due to temporary limitations on its business operations was caused by Governor Pritzker's Executive Orders and not a "direct physical loss of or damage to property." Plaintiff also fails to establish the necessary elements for coverage under the Civil Authority and Contamination coverages, including that access to Plaintiff's premises has been prohibited. Plaintiff's Amended Complaint therefore should be dismissed with prejudice accordingly, or in the alternative, summary judgment should be granted in Society's favor.

## I. THE COURT MAY TAKE JUDICIAL NOTICE OF THE DOCUMENTS ATTACHED TO SOCIETY'S STATEMENT OF FACTS

This Court can consider the documents attached to Society's Statement of Facts—which consist of public records, the policy at issue, and copies of Plaintiffs' websites—whether the Court chooses to consider Society's motion as one for dismissal or for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of public records without converting motion to dismiss to motion for summary judgment); *Venture Assoc.*

*Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (documents attached to a motion to dismiss are considered part of the pleadings if referred to in the plaintiff's complaint and central to its claim); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (holding court may take judicial notice of information at government agency's website). *See also*, Fed. R. Evid. 201. Exhibits 1-6 are Governor Pritzker's COVID-19 related executive orders, which are not only central to Plaintiffs' claim, but are public records available on an Illinois government website,[1] and the guidance for cleaning and disinfecting public spaces published by the CDC on its website.[2] Similarly, the Court should take judicial notice of Exhibits 7-9 as matters in the public record that were published by governmental entities on official government websites[3]. Exhibit 10 is the relevant portion of the Society Policy, which is referred to in Plaintiff's Amended Complaint and also central to its claims. Finally, Exhibits 11-12 consists of posts made by Plaintiff's businesses', The Hampton Social and The Bassment, Facebook accounts to their own publicly available Facebook pages.[4] *See, e.g.*, *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*,

---

[1] At https://coronavirus.illinois.gov/s/resources-for-executive-orders (last visited September October 13, 2020).

[2] At https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/Reopening_America_Guidance.pdf (last visited October 13, 2020). Also, courts around the country have taken judicial notice of statements made by the CDC regarding the virus. *See, e.g., Bodnar v. Lake County Jail, et al.*, 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *2 (N.D. Ind. Apr. 22, 2020); *Geller v. Cuomo*, 2020 WL 4463207, fn. 1 (S.D.N.Y. 2020). .

[3] Although Ex. 7 is no longer available on the ILLC website, a guidance remains available at https://www2.illinois.gov/ilcc/News/SiteAssets/Pages/COVID/March%20Updates/COVID%20On%20Premise%20%28March%2031%20update%29.pdf (last visited October 13, 2020). Ex. 8 is also no longer available on the City's webpage, however, an archive of the Guidance on the City's webpage as it appeared on March 24, 2020 is available through Wayback Machine at https://web.archive.org/web/20200324163715/https://www.chicago.gov/content/dam/city/depts/bacp/general/2020coronavirusbacpnoticeclosureofrestaurantsandbars.pdf. The press release for the issuance of the Guidance is still available on the City's website at https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2020/march/GuidanceDiningCOVID19.html. Exhibit 9 is available at https://coronavirus.illinois.gov/s/restore-illinois-introduction (last visited October 13, 2020).

[4] At https://www.facebook.com/thepigchicago/ (last visited September 1, 2020).

402 F. Supp. 3d 427, 431 n. 3 (N.D. Ill. Aug. 14, 2020) (courts may consider undisputed material hosted on a party's public website).

## II.   PLAINTIFF'S CLAIM WAS NOT THE RESULT OF DIRECT PHYSICAL LOSS OR DAMAGE

In order for Plaintiff to recover Business Income and Extra Expense coverage, the suspension of Plaintiff's operations "<u>must be caused by a direct physical loss of or damage to covered property</u>," and "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." (Dkt. No. 42 at ¶ 42 (emphasis added).) Plaintiff, therefore, must establish not only that it incurred a direct physical loss of or damage to covered property, but that the direct physical loss or damage <u>caused</u> the suspension of its operations. Plaintiff cannot establish either.

Here, there has been no "direct physical loss of or damage to" covered property. As discussed in Society's memorandum, the phrase "direct physical" modifies "loss of or damage to" and "loss." *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 301 (2001); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 20 CV 2160, 2020 WL 5630465, *2 (N.D. Ill. Sept. 21, 2020)[5]. *Its Nice Inc. v. State Fm. Fire & Cas. Co.*, 2020 L 000547, p. 27 (DuPage County, IL Sept. 29, 2020).[6] *See also, Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 489 (Cal. Ct. App. 2003) (word "physical" modifies both loss and damage because "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears"). A property sustains a "physical" injury when it "is altered in appearance, shape, color or in other material dimension," while intangible damage, such as diminution in value, is not a "physical" injury to property. *Eljer Mfg., Inc.*, 197 Ill. 2d at

---

[5] A copy of the opinion in *Sandy Point Dental, PC v. The Cincinnati Insurance Company* was attached as Exhibit B to Defendant's Second Notice of Supplemental Authority filed in case number 20-CV-02589 on September 25, 2020 (Dkt. No. 40.)

[6] A copy of the transcript of the hearing in *Its Nice Inc. v. State Fm. Fire and Cas. Co.* was attached as Exhibit C to Society's Notice of Supplemental Authority filed in case number 20-cv-05965 on October 19, 2020 (Dkt. No. 22.)

301-02; *Sandy Point*, 2020 WL 5630465 *2; *Its Nice Inc.*, 2020 L 000547, Ex. I at p. 27. Or, put differently, the word "physical" "preclude[s] any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a <u>distinct, demonstrable, physical alteration of the property</u>." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) (emph. added).

Courts in Illinois and throughout the country have found there is no coverage for business-interruption claims resulting from COVID-19 related orders, like Plaintiff's here, because the suspension of business operations has not been the result of a "direct physical loss" of covered property. In finding there was no coverage for an insured's business interruption claim after its office was "effectively forced to shut down" as a result of the Executive Orders, the *Sandy Point* court rejected the insured's argument that "direct physical loss" did not require a tangible, physical alteration to the property. Instead, the court found the words "direct" and "physical" modify the word "loss" and "connote actual, demonstrable harm of some form to the premises itself, rather than a forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Sandy Point Dental,* 2020 WL 5630465, at *4. Noting that the insured had not pled any facts showing a physical alteration or structural degradation of its property, the court held:

> In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss-a prerequisite for coverage.

*Id*. at 5. *See also*, *It's Nice,* (Hr'g Tr. pp. 27-31) (finding in relation to COVID-19 related business interruption claim, "direct physical loss" unambiguously requires actual physical damage to trigger coverage). *See also*, *Plan Check Downtown III v. AmGuard Ins. Co., et al.*, No. CV 20-6954-GW-SKx, 2020 WL 5742712, *4-6 (C.D. Cal. Sep. 10, 2020), (finding no coverage for

COVID-19 business interruption, holding loss of use does not constitute "physical loss of" covered property); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, 20-cv-04423, 2020 WL 5938689, at * 4-5 (C.D. Ca. Oct. 2, 2020) (same); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.,* 20-cv-907-CAB-BLM, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (in a case finding no coverage for COVID-19 business interruption, holding that loss of use caused by COVID-19 related orders does not constitute a direct physical loss); *Rose's 1, LLC v. Erie Ins. Exch.,* 2020 CA 002424B, at *5, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020) (same); *Diesel Barbershop LLC, v. State Farm Lloyds*, 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Texas Aug. 13, 2020) (same); *Gavrilides Mgmt. Co. v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Ingham County, MI, July 1, 2020) Hr'g Tr. at 35:1-11.[7] (finding that loss of business due to executive orders shutting down restaurants for dining in response to COVID-19 pandemic did not establish "direct physical loss of or damage to" the property).

Plaintiff's property has not had any "alteration in any appearance, shape, color or in other material dimension," as required in Illinois. Rather, Plaintiff has incurred an intangible loss of economic value. Plaintiff, therefore, has "failed to plead a direct physical loss," which is a "prerequisite for coverage."

### A. The Executive Orders Caused the Suspension of Plaintiff's Operations

Plaintiff spends most of its response claiming the speculative presence of the novel coronavirus constitutes a direct physical loss of or damage to covered property. Even if this were true, which it is not, this argument is of no assistance to Plaintiff, because Plaintiff concedes it was the Executive Orders, *not* the presence of the coronavirus on its premises that caused Plaintiff to

---

[7] A copy of the transcript in *Gavrilides Management Company v. Michigan Insurance Company* was attached as Exhibit A to Society Memorandum of Law in support of its Motion to Dismiss or in the Alternative for Summary Judgment. (Dkt. No. 30-1. in case number 20-CV-02589.)

limit its business operations.  In his affidavit, Steven Firoentino, the president of Plaintiff, states "[i]n compliance with various Executive Orders entered by Governor Pritzker, including Executive Order 2020-07, The Hampton Social was forced to suspend all dine-in services beginning on March 16, 2020," the date Executive Order 2020-07, which disallowed on-premises dining, went into effect.  (Dkt. No. 42 at p. 15, ¶ 9(D) (emphasis added.)  He also states that since July 10, 2020, The Hampton Social has restricted its dining room capacity to 25% in compliance with the Executive Orders and "City of Chicago mandates," and The Bassment has been forced to completely close since March 15, 2020 in compliance with the same.  (*Id*. at ¶ 9 (E, F) (emphasis added.)  The Amended Complaint similarly alleges that the Executive Orders, *not* the virus, caused Plaintiff's reduction in operations and income. (Dkt. No. 27 at ¶¶ 1, 4, 40-41.)

That the cause of Plaintiff's reduced operations was the Executive Orders and not the virus is further evident from the fact that scores of businesses equally susceptible to the potential presence of the novel coronavirus, including hospitals, grocery stores, gas stations, and hardware stores, were operational. The reason these businesses were operational, while the operations of restaurants were limited, was the restrictions set by the Executive Orders for specific categories of businesses, not the potential presence of the coronavirus.  Regardless of whether the virus was actually present on Plaintiff's premises and whether the virus can cause a direct physical loss of or damage to property (it cannot), its speculative presence was not the cause of Plaintiff's suspension of operations.  Rather, the Executive Orders were the cause of the Plaintiff's reduced operations and they are not, and cannot cause, "direct physical loss." *See, e.g., Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 20-cv-907, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("*Pappy's Barber Shops II*") (holding that proposed amended complaint including speculative allegations that COVID-19 virus, or individuals infected by virus, likely had entered plaintiffs' premises was

futile because cause of business income losses were governors' orders restricting plaintiff's operations, not presence of virus on property).

Plaintiff does not argue that the Executive Orders constituted a direct physical loss of or damage to its premises, apparently conceding that they did not. Society's Motion explained that the Executive Orders did not cause a direct physical loss of or damage to Plaintiff's property. (Dkt. No. 17 at pp. 14-16.) Since Society filed its Motion, a growing body of case law in Illinois and across the country has confirmed that business interruption losses stemming from state and local orders that restrict on-premises dining and other on-premises business operations do not arise from a direct physical loss or damage and are not entitled to coverage. *See, e.g.*, *Sandy Point Dental*, 2020 WL 5630465; *It's Nice,* (Hr'g Tr. pp. 27-31); *Plan Check Downtown III*, 2020 WL 5742712, *4-6; *Mark's Engine Co. No. 28 Restaurant,* 2020 WL 5938689, at * 4-5; *Pappy's Barber Shops I,* 2020 WL 5500221; *Rose's 1*, 2020 WL 4589206, at *5; *Diesel Barbershop*, 2020 WL 4724305; *Gavrilides Mgmt.*, Hr'g Tr. at 35:1-11 (finding loss of business due to executive orders shutting down restaurants for dining in response to COVID-19 pandemic did not establish "direct physical loss of or damage to" the property). Because Plaintiff's business income loss was caused by the Executive Orders, and not the speculative presence of the virus on its property, there is no question that Plaintiff's loss was not caused by a "direct physical loss of or damage to" covered property. Consequently, Plaintiff's claims are not entitled to coverage.

### B. Coronavirus Does Not Physically Alter Property

Although Plaintiffs' Response asserts that viral particulates and infected individuals have been physically present on its premises, it cites to its statement of additional facts which say nothing of the sort. Additionally, the Firoentino affidavit does not state that the novel coronavirus was ever present on Plaintiff's premises or that its presence caused Plaintiff's reduction in business operations. (Dkt. No. 42-6.) However, even if the virus was on Plaintiff's premises <u>and</u> caused

7

Plaintiff's loss, Plaintiff's claim would still fail because "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of property." *Sandy Point Dental*, 2020 WL 5630465, at *2-3. *See also*, *Pappy's Barber Shops II*, 2020 WL 5847570, at *1 ("the presence of the virus itself, or of individuals infected the virus [sic], at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property"); *Diesel Barbershop*, 2020 WL 4724305 at *5 (coronavirus does not cause a distinct, demonstrable alteration of property).

Knowing that it cannot establish that its losses were caused by a distinct, demonstrable physical alteration of its property, Plaintiffs resort to arguing for coverage because the virus is a physical substance that lives on physical surfaces. This argument conflates the type of *damage* that must have occurred with the cause of the damage and type of property purportedly damaged. As in *Eljer*, the mere fact the virus and the property are "physical" in nature does not render Plaintiff's *loss* "physical." In *Eljer*, defective plumbing systems were installed in homes, and while in most instances the systems did not leak or cause any physical damage, the mere presence of such a system in a home would cause that home to lose value. The insured in *Eljer* sought coverage for those homes that incurred only a diminution in value, alleging that it constituted "physical" injury, but the Illinois Supreme Court rejected that argument. Examining the word "physical," which Webster's Dictionary defines as "of or relating to natural or materials things as opposed to things mental, moral, spiritual, or imaginary," the court found it connotes an "alteration in appearance, shape, color or in other material dimension." *Eljer*, 197 Ill. 2d at 301. As a result, the court held that the diminution in value of homes caused by the installation of defective plumbing systems did not constitute a "physical injury" to property. *Id.* at 312. Both the damage causing

agent—the faulty plumbing system—and the insured property—the homes—were tangible and physical in nature; however, the *damage* was not.

Similarly, here, even assuming the coronavirus was on Plaintiff's premises, that substance has not resulted in a *physical* loss or damage. At most, Plaintiff has incurred intangible, nonphysical economic damage resulting from the temporary limitations on the ability to use its premises as it would like. The failure to show a physical alteration to its property is a hurdle Plaintiff cannot overcome, as courts have acknowledged that the coronavirus does not cause a physical alteration to property. *See, e.g.*, *Sandy Point Dental*, 2020 WL 5630465, at *2-3; *Diesel Barbershop*, 2020 WL 4724305 at *5; *Pappy's Barber Shops II*, 2020 WL 5847570, at *1.

Plaintiff attempts to analogize to several cases involving asbestos containing materials incorporated into buildings, but those cases are factually inapposite: *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64 (1990); *Bd. of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428 (1989); and *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 308 Ill. App. 3d 597 (1st Dist. 1999). As the *Eljer* Court explained, its decision in *Wilkin* "recognized the unique nature of asbestos products, which disseminate toxic fibers *upon installation* and continuously contaminate a structure and its contents subsequent to installation." *Eljer*, 197 Ill.2d at 306 (emphasis added). Thus, in those cases, the premises themselves are the source of the toxic substance, are inherently dangerous, and thus the court believed were physically injured.

The asbestos cases are in sharp contrast to the situation here, where the *premises* are not the source of a dangerous substance, people carrying the virus are. There is nothing inherently dangerous about the physical characteristics of Plaintiff's property, which is why scores of businesses throughout the state, including restaurants like Plaintiff's have continued to operate on its premises, albeit with restrictions in place to enforce social distancing. Moreover, asbestos

cannot be remediated through frequent cleaning with disinfectants (which Plaintiffs' businesses were required to do even in the pre-COVID-19 era), nor can the continuous release of asbestos fibers be reduced by limiting the number of people allowed in the structure. *Sandy Point Dental*, 2020 WL 5630465, at \*2 (distinguishing *Bd. of Educ. of Twp. High Sch. Dist. No. 211*, 308 Ill. App. 3d 597 on the basis that the "plaintiff was required to conduct repairs and remove asbestos-causing materials from the premises.")

Further distinguishing those cases from the present case, the Court emphasized the presence of asbestos containing materials in buildings is a condition "**which by law must be corrected**." *Wilkin*, 144 Ill.2d at 75-76 (quoting *A, C & S, Inc.*, 131 Ill.2d at 446). The insureds in these cases sought recovery from their insurers for the costs associated with inspection, removal, or replacement of asbestos products from their buildings due to federal and state regulations requiring the removal or containment of asbestos products in certain. *Id.* at 71. Illinois state law during the relevant time periods in *A, C & S*, *Wilkin*, and *School District No. 211*, prohibited school personnel and students from occupying buildings that contained friable asbestos material that had not been remediated within a specific timeframe. In contrast, here the Executive Orders not only permitted persons to go into Plaintiff's restaurants to get food for take-out, they *encouraged* restaurants, like Plaintiff's, to continue to offer those services.

Plaintiff attempts to obfuscate its failure to establish that its suspension of on-premises dining was caused by a physical alteration to its property by submitting a declaration from Dr. Dubberke regarding his opinions as to the properties of the COVID-19 virus and its modes of transmission. Dr. Dubberke's declaration is wholly immaterial and thus inadmissible under FRE 401 and 402 as to the threshold issue of coverage under the Business Income additional coverage because, as explained above, Plaintiff did not cease on-premises dining at its restaurant due to the

presence, or suspected presence, of COVID-19 on its premises. Rather, Plaintiff alleges it temporarily stopped providing on-premises dining because the Executive Orders required it to do so as discussed above.

Moreover, while Dr. Dubberke's declaration only discusses whether the virus can be located on surfaces, it does not state the virus in any way alters the physical characteristics of the property on which it rests, further demonstrating its irrelevance. Common, everyday experience demonstrates that the mere fact something has come to rest on an object does not equate to a physical alteration of that object. Indeed, Dr. Dubberke's declaration, even if admissible, underscores Plaintiff's inability to show the virus causes a distinct, demonstrable physical alteration to property. Dr. Dubberke's declaration confirms the virus does not alter the physical characteristics of the property on which it rests, as there is no discernible difference between surfaces where the virus has been present, surfaces where it has not been, or surfaces that have been cleaned. (Dkt. No. 42 at p. 12, ¶ 5(G) ("The presence of the virus is only observed through the infection rate.").) Instead, surfaces such as tables, chairs, grocery carts, and elevator buttons on which the virus has been present remain exactly the same as they were once the virus has been removed, because *the virus has not altered their physical characteristics*. "The mere adherence of molecules to porous surfaces, without more, does not equate physical loss or damage," and "[t]he recognition that physical damage or alteration of property may occur at the microscopic level does not obviate the requirement that physical damage need be distinct and demonstrable." *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100, at *7 (D.Or. Aug.4, 1999).

Dr. Dubberke questions only the reliability of bleach as a method to destroy the coronavirus, but bleach is only one of 499 disinfectants that meet the Environmental Protection

Agency's criteria for use against the coronavirus.[8] Plaintiff and Dr. Dubberke admit the presence of the virus on surfaces case be remediated through cleaning and disinfection, "as suggested by the CDC." (Dkt. No. 42-2, ¶¶ 23, 28.) The presence of a substance that can be removed through cleaning does not constitute a physical loss or damage. *See, e.g.*, *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569, n.8 (6th Cir. 2012) (cleaning personal property to remove mold and bacteria contamination was an economic loss, not a tangible, physical loss); *Mama Jo's, Inc. v. Sparta Ins. Co.*, Case No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fl. June 11, 2018) (construction dust and debris that formed a paste that adhered to surfaces in restaurant could be removed through cleaning and thus did not constitute physical loss or damage), *aff'd* ---Fed. Appx.---, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. 2020); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (mold that could be removed through cleaning did not constitute physical injury even though it would reoccur "in short order").

Finally, Plaintiff's argument that the potential presence of the virus on surfaces or premises renders property unusable is belied by the Executive Orders and everyday experience, as it would mean that grocery carts, door handles, elevator buttons, touch screens in self-checkout lines, and credit-card scanners are all rendered nonfunctional and unusable. Yet this is clearly not the case, and such objects are touched, operated, and used countless times every day because the presence of the virus does not render property unusable or nonfunctional. Furthermore, scores of businesses equally susceptible to the coronavirus, including hospitals, grocery stores, and hardware stores

---

[8] The full list is available at https://cfpub.epa.gov/giwiz/disinfectants/index.cfm (last visited October 14, 2020). The Court may take judicial notice of this list because it is a matter in the public record published on a government website. *See, e.g*, *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n. 3 (7th Cir. 2010); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.3d 600, 607 (7th Cir. 2002).

were and are operational. This fact illustrates, as previously discussed, that the cause of Plaintiff's reduced business income is the restrictions set by the Executive Orders for certain categories of businesses, not that the property is unusable. Moreover, like other restaurants, bars, and taverns, Plaintiff's and its employees and customers could access Plaintiff's businesses for the sale of food and alcohol for delivery and takeout, just like owners of Non-Essential Businesses were able to access their premises to perform Minimum Basic Operations. (Dkt. 42, pp. 3-4, ¶¶ 14, 19-20, 22-3; p. 9, ¶¶ 46-49.) The virus does not render premises uninhabitable or unusable and does not cause direct physical loss of or damage to property.

III. **PLAINTIFF HAS FAILED TO ESTABLISH COVERAGE UNDER CIVIL AUTHORITY**

For coverage to exist under Civil Authority all four of the following elements must be present: (1) damage to property other than property at the described premises that is caused by a Covered Cause of Loss, (2) an action by a civil authority that prohibits access to the described premises, (3) the action of civil authority prohibits access to the area immediately surrounding the damaged property, and the insured premises are within that area, and (4) the action of civil authority is taken in response to dangerous physical conditions that result from the property damage or continuation of the Covered Cause of Loss that caused the damage. (Dkt. No. 42 at ¶ 45.) As explained above, the Complaint fails to allege the first element because it does not allege damage to property other than property at the described premises caused by a Covered Cause of Loss, i.e., a direct physical loss. *Sandy Point*, 2020 WL 5630465, *3 (no coverage under civil authority coverage because "just as coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege the coronavirus caused direct physical loss to other property"); *Its Nice Inc.*, Hr'g Tr. at p. 36 (same).

Plaintiff's Response does not attempt to argue that the additional three requirements for civil authority coverage are met, implicitly conceding they are not. Indeed, the second condition

13

has not been met because the Executive Orders do not prohibit access to Plaintiff's premises. Undefined terms in insurance policies are given their plain, ordinary, and popular meaning as understood by the average, ordinary, normal lay person. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, at 108, 115 (1992) (using Webster's dictionary definition of term in policy). The Merriam-Webster dictionary defines "prohibit" as "to forbid by authority" or "to prevent from doing something."[9] It defines "access" as "permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing."[10] Thus, the average lay person would understand the policy language to mean an action that forbids entrance to the premises. Given the common definitions of "prohibit" and "access," Plaintiff's argument that "prohibits access" cannot be interpreted to mean "prohibit all human access" fails. (Dkt. No. 45 at p. 19.) To "prohibit access" means to forbid—not limit or restrict—entrance.

Nonetheless, the Executive Orders indisputably did not prohibit access to Plaintiff's premises under any reasonable definition of the phrase. As Plaintiff admits, the orders did not prevent or forbid Plaintiff from entering its premises, but only limited the types of activities allowed there such as consuming food or beverages on site. (Dkt. No. 42, ¶ 28.) *Sandy Point Dental*, No. 20-cv-2160, 2020 WL 5630465, at *2-3 (holding that "while the coronavirus orders have limited plaintiff's operations, no order issued in Illinois prohibits access to plaintiff's premises.") *See also*, *Mark's Engine Co. No. 28 Restaurant,* 2020 WL 5938689, at * 4-5 (holding no coverage for COVID-19 business interruption claim because order did not prohibit plaintiff from accessing its premises). Moreover, the Executive Orders allowed customers of businesses that served food, such as The Hampton Social and The Bassment, to "enter the premises to

---

[9] https://www.merriam-webster.com/dictionary/prohibit

[10] https://www.merriam-webster.com/dictionary/access

purchase food or beverages for carry-out." (Dkt. Nos. 18-1 at p. 13, § 1.)  Further, employees of Non-Essential Businesses were allowed to perform "Minimum Basic Operations" on their premises. (Dkt. No. 42 at ¶ 23.)

For the same reason, Plaintiff has failed to allege or raise a genuine issue of material fact that the Executive Orders prohibited "[a]ccess to the area immediately surrounding the damaged property. . . and the described premises are within the area."  Access, i.e. entrance, to the area surrounding Plaintiff's premises were not forbidden under the Executive Orders, as Plaintiff concedes that the Executive Orders did not prohibit access to streets or sidewalks surrounding the insured premises.  (Dkt. No. 42 ¶ 29.)   Because people were allowed to enter the area surrounding Plaintiff's premises, access was not prohibited.

Finally, the requirement that the action of civil authority be taken in response to dangerous conditions caused by damage to property other than the described premises cannot be met and Plaintiff's Response does not argue that it has.  The Executive Orders were not issued due to dangerous conditions resulting from any presence of the coronavirus on property at the time the Orders were entered, but instead they were entered to reduce the risk of *future* transmission of COVID-19.  As explained in Society's Motion, orders entered to address a risk of future harm do not trigger coverage under Civil Authority.  *See, e.g., United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 129 (2d Cir. 2006); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, (5th Cir. 2011).

**IV.**    **PLAINTIFF HAS FAILED TO ESTABLISH COVERAGE UNDER CONTAMINATION**

Similarly, Plaintiff's contention it is entitled to coverage under the Contamination provision, which defines contamination as "a defect, deficiency, inadequacy or dangerous conditions in your products, merchandise, or premises," fails.  (Dkt. No. 18-2 at p. 26, ¶ m (emphasis added).)  This provision provides coverage for losses caused by "[c]ontamination that

results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product." (*Id.*) Thus, for there to be coverage, Plaintiff would need to establish that (1) its products, merchandise, or premises was contaminated, (2) this contamination caused the issuance of the Executive Orders, and (3) the Executive Orders prohibited access to Plaintiff's premises. The Contamination provision does not provide coverage to losses tangentially related to contamination anywhere in the world, it must be a contamination of the insured's products, merchandise, or premises. The only "action of governmental authority" alleged or otherwise identified by Plaintiff is the Executive Orders. As discussed above, the Executive Orders did not prohibit access to Plaintiff's premises, so Plaintiff's claim is defeated on this ground alone. It also fails because the Executive Orders were not entered due to any contamination of <u>Plaintiff's</u> premises, products, or merchandise, and the Policy requires that the contamination of the policyholder's premises, products, or merchandise <u>must be the cause</u> of the action of the governmental authority—not contamination anywhere in the State of Illinois. Accordingly, Plaintiff has failed to establish its losses fall within the scope of the Contamination provision.

## V.    THE ORDINANCE OR LAW EXCLUSION BARS COVERAGE FOR PLAINTIFF'S CLAIM

Plaintiff's Response fails to address the argument in Society's Motion that the Ordinance or Law Exclusion, which excludes coverage for any loss resulting from the enforcement of or compliance with an ordinance or law that regulates the use of property, bars Plaintiff's claim. The Executive Orders regulate how Plaintiff may use its premises by disallowing on-premises dining. Thus, even if there were coverage for Plaintiff's claim, which there is not, it would be barred by the Ordinance or Law Exclusion.

## VI.    THE POLICY IS UNAMBIGUOUS AND PLAINTIFFS' INTERPRETATION IS NOT REASONABLE

Plaintiff's argument that the Society Policy language should be construed in its favor is contrary to Illinois law. The rule that policy provisions should be construed in favor of the policyholder only applies where the provision is ambiguous. *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 433, 930 N.E.2d 999 (Ill. 2010). Similarly, even if Illinois follows the reasonable expectations doctrine—a number of cases have specifically rejected the notion the doctrine applies in Illinois-it is not applied if the policy is clear and unambiguous. *Cont'l Cas. Co. v. Howard Hoffman and Associates*, 2011 IL App (1st) 100957, ¶¶ 76-77, 955 N.E.2d 151 (Ill.App. 2011); *Whitt v. St. Farm Fire & Cas. Co.*, 315 Ill.App.3d 658, 662 734 N.E.2d 911 (Ill.App. 2000). However, "[a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning," *Founders Ins. Co.*, 237 Ill.2d at 433, nor is a policy term ambiguous because the policyholder "can suggest creative possibilities for its meaning," *Nicor, Inc. v. Assoc. Electric & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 417, 860 N.E.2d 280 (Ill. 2006). Instead, "ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Id.* "The general rules that favor the insured must 'yield to the paramount rule of reasonable construction that guides all contract interpretation." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010) (quoting, *Western States Ins. Co. v. Bobo*, 268 Ill.App.3d 513, 644 N.E.2d 486, 488 (Ill. App. Ct. 1994)). *See also*, *Cont'l Cas. Co.*, 2011 IL App (1st) 100957, ¶ 77 ("We are not warranted, under the cloak of construction, in making a new contract for the parties.") (quotations omitted).

Plaintiff's interpretation is not reasonable and ignores the language of the Society Policy, the facts as Plaintiff has alleged them, the binding precedent of *Eljer*, and the scores of cases finding no coverage for these claims. Plaintiff's argument disregards the Society Policy's plain requirement that its loss of business income must have been *caused by* a "direct physical loss of

17

or damage to" insured property, and the fact that both the Amended Complaint and the Firoentino Affidavit state that Plaintiff's reduction in operations and business income was caused by the Executive Orders. Instead, Plaintiff relies on the wholly unsupported assertion—of which it offers no evidence—that the virus was on its premises. However, the question of whether the virus was actually on Plaintiff's premises is irrelevant because the Executive Orders were the cause of Plaintiff's economic loss and "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of property." *Sandy Point Dental*, 2020 WL 5630465, at *2-3; *accord Eljer Mfg., Inc.,* 197 Ill.2d at 301 ("tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension").

The Society Policy does not purport to cover either "all risks" or "all loss." It contains very specific unambiguous terms and conditions, and under them there is no coverage for Plaintiff's claims. Not only is the phrase "all-risk" not found in the policy, but the Society Policy only provides coverage for direct physical losses, not all losses, or even all fortuitous losses. Further, even if the Society Policy was an "all-risk" policy, which it is not, "labeling the policy as all-risk does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. Inc. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002); *see also*, *Pentair,* 400 F.3d at 615-16; *It's Nice,* (Hr'g Tr. pp. 29-31) (holding "all risk policy" did not cover COVID-19 business interruption because there was no "direct physical loss"); *Plan Check Downtown III*, No. CV 20-6954-GW-SKx, 2020 WL 5742712, at * 3, 6 (same). Because Plaintiff has not, and cannot, meet the requirement of establishing its claim was caused by a direct physical loss of or damage to its covered property, the absence of a virus exclusion in the Society Policy is not relevant. *See Landmark American Ins. Co. v. NIP Grp., Inc.*,

2011 IL App (1st) 101155, 962 N.E.2d 562 (neither a policy exclusion nor an exception to a policy exclusion can create insurance coverage where coverage did not otherwise exist).

## **CONCLUSION**

WHEREFORE, Defendant, Society Insurance, respectfully requests that this Honorable Court enter an order either dismissing Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, granting summary judgment in favor of Society on the Plaintiff's Complaint in its entirety; declaring there is no coverage for Plaintiff's claim under the Society Policy; and granting Society such other and further relief as this Court deems just.

Thomas B. Underwood (#3122933)
Michael D. Sanders (#6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
(312) 427-3944 (facsimile)
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

Respectfully submitted,

Society Insurance

By:   /s/ Thomas B. Underwood
        Counsel for Defendant