# UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISRTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: SOCIETY INSURANCE CO. COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2964 |
| | Master Docket No. 20 C 5965 |
| | Judge Edmond E. Chang |
| This Document Relates to All Cases | Magistrate Judge Jeffrey I. Cummings |

## PLAINTIFFS' OMNIBUS RESPONSE TO SOCIETY INSURANCE'S CURRENTLY-CITED SUPPLEMENTAL AUTHORITY

## INTRODUCTION

In accordance with the Court's November 2, 2020 Minute Order (Doc. No. 69), Plaintiffs, by their undersigned counsel, respectfully submit this omnibus response to Defendant Society Insurance's ("Society") currently-cited supplemental authority. There are at least five reasons why the Court should, as it indicated at the November 2, 2020 Initial Pretrial Conference, give little weight to Society's supplemental filings. First, Society's reliance on these "supplemental authorities" directly conflicts with the position that Society recently took before the Judicial Panel on Multidistrict Litigation ("JPML"). *See* Society's Opposition to Mot. for Transfer, attached hereto as **Exhibit A**. Second, not a single one of the purported "supplemental authorities" that Society cites, which reach the opposite conclusion of other courts reviewing similar language and applying the same rules of policy interpretation, is the final decision on the law of any state with respect to business interruption insurance coverage for COVID-19 related losses under any insurance policy, because no state appellate court has ruled on that issue—let alone any state court of last resort. Third, as demonstrated in additional detail herein, the supplemental decisions are distinguishable from this

case because they are based on the application of different policy language to different factual allegations. Indeed, many of the dismissal motions ruled on thus far in the more than 1,300 COVID-19 business interruption cases pending across the United States contain contractual language that the Society policies plainly *do not* contain—namely, a virus exclusion. Fourth, the trial court decisions on which Society relies not only are wrongly decided, they are readily distinguishable, because among other things, Plaintiffs expressly allege many forms of direct physical loss of or damage to covered property, including structural alterations of that property. Fifth, numerous trial courts have correctly concluded that allegations of direct physical loss of or damage to property, such as those contained in Plaintiffs' bellwether complaints, are sufficient to state a claim under insurance policy language similar to or identical to the language in Society's policies, especially when black-letter rules of insurance policy interpretation are properly applied. For these reasons, the Court should reject Society's supplemental authority in its entirety.

## ARGUMENT

### I. Society Should Be Estopped From Presenting Supplemental Authority

Based on the positions that Society has previously argued before another judicial panel, Society should be estopped from presenting the supplemental authorities that it has periodically filed in this litigation. Indeed, in its recent filings before the JPML in *In re COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942, Society asserted that centralizing the various actions against those insurers who have denied coverage for business interruption losses due to the COVID-19 pandemic would be improper, because, as Society argued:

> The non-Society cases consist of the 128 other lawsuits filed against 49 other insurers. Some are putative class actions, others are not. ***The suits assert various causes of action under numerous theories of liability under many different states' laws. Society is not a party in any of those cases, and its insurance policies and coverage decisions are not at issue in any of them.*** The transfer request is based on the superficial "commonality" that all plaintiffs allegedly suffered economic losses due to government orders issued to combat the spread of COVID-19 and that their claims

> for those losses have been, or are expected to be, denied by their insurers. Plaintiffs in these cases "span the entire economy" of the United States, and ***the request for collective adjudication glosses over the different coverages and insurance policy language at issue, grounds for recovery being asserted, facts of each claim, individual damages allegedly suffered, and the differing state law applicable to each claim.***

Ex. A, Society's Opp. To Mot. to Transfer at 2 (emphasis added); *see also id.* at 3 (describing the other COVID-19 coverage actions as involving "different parties, different insurance policy language, and different facts"); *id.* at 4 (characterizing the other cases as bearing only "a superficial resemblance" to the actions filed against Society); and *id.* at 6 (arguing that "[t]he legal issues presented, moreover—the interpretation of insurance contracts—are governed by state law, making them particularly unsuitable for transfer and centralization").

In those same JPML filings, Society further argued that centralization would be inappropriate because of what Society conceded are the "different insurance contracts" with "distinct policy provisions" at issue in the cases. *Id.* at 7. As Society explained, "[t]here are important differences in policy provisions and exclusions, and as a result, ***individual consideration of policy language*** will be required for each case." *Id.* at 7 (emphasis added); *see also id.* at 7-8 (listing particular policy provisions contained in certain insurers' policies but not in Society's policies). And, even when policy provisions do have the same name, Society claimed that "there are often differences in those policy terms." *Id.* at 8. As Society argued, "[e]ach insurance contract must be considered on its own merit and, where entire coverage parts differ from policy to policy, ***even the legal issues presented are not the same.***" *Id.* at 8-9 (emphasis added).

Ultimately, in arguing against transfer and centralization, Society described substantial differences between the actions filed against Society and the actions filed against other insurers:

> There is also no common core of defendants, with 50 separate insurers sued in the actions proposed for transfer. ***Nor are there common theories of recovery, with plaintiffs in various cases alleging claims arising from at least six different types of insuring agreements issued by different insurers***, including Business

> Interruption, Civil Authority, Extra Expense, Sue and Labor, Ingress and Egress, and Preservation of Property insuring agreements. Christine Jo Br. at 5. ***The need to reconcile the unique underlying facts of each case including the nature of the plaintiff's businesses, the type of coverage at issue, the varying degrees of damages suffered, and the geographic locality of the parties and corresponding applicable state law all disfavor centralization.***

*Id.* at 10 (emphasis added); *see also id.* (arguing that "contract interpretation demands individual consideration of the applicable terms and conditions of each agreement").

Given the litany of contrary positions that Society argued before the JPML *on this very issue*, Society should be estopped from relying on its previously submitted "supplemental authority," which consists of trial court decisions involving different policies, issued by different insurers, to different policyholders, in different states, when Society itself represented to the JPML that such cases are completely dissimilar to the actions filed against Society, and, ultimately, prevailed before the JPML on that very point.

As the Seventh Circuit has explained, "[j]udicial estoppel is a flexible equitable doctrine designed to prevent 'the perversion of the judicial process,'" by protecting courts from being "'manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (internal citations omitted).[1] The doctrine is applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice. *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (internal citations omitted).

Here, Society's intentional self-contradiction, and the equities of this case, weigh in favor of barring Society from relying on its "supplemental authority." First, Society's current position

---

[1] Although state law governs the insurance issues in this proceeding, federal law governs the issue of judicial estoppel. *Am. Transp. Grp. LLC v. California Cartage Co., LLC*, 168 F. Supp. 3d 1074, 1078 (N.D. Ill. 2016) ("Unlike *res judicata* or other preclusion doctrines, as to which the court is bound to apply state law governing judgments, judicial estoppel relates to the federal courts' ability to protect themselves from manipulation and should not vary according to the law of the state in which the dispute arose.").

(attempting to rely on cases involving different insurers who issued different policies) is demonstrably inconsistent with the earlier position that it took on this same issue before the JPML, where Society argued that the other cases were completely dissimilar from the pending cases against Society. *E.g.*, Ex. A at 4 (characterizing the other cases as bearing only "a superficial resemblance" to the actions filed against Society); *see also id.* at 10 (arguing that "contract interpretation demands individual consideration of the applicable terms and conditions of each agreement"). Second, in its order denying transfer, the JPML cited many of the reasons advanced by Society and other insurance companies regarding the purported dissimilarities of the various lawsuits against other insurers. *E.g.*, Order Denying Transfer and Directing Issuance of Show Cause Orders, attached hereto as **Exhibit B**, at 3 ("While the policy language for business income and civil authority coverages may be very similar among the policies, seemingly minor differences in policy language could have significant impact on the scope of coverage."). Finally, Society would derive an unfair advantage if it were allowed to rely on decisions involving different insurers, different policies, and different factual allegations, because Society used those purported differences in the cases filed against other insurers to argue against the creation of a multidistrict litigation that would have adjudicated all COVID-19 business interruption cases in one proceeding.

For these reasons, Society's prior positions before the JPML estop it from relying on its supplemental authority here.

## II.     Society's Cited Decisions Should be Given Little, If Any, Weight

Even if Society were not estopped from relying on its supplemental authority (which, as explained above, it should be), this Court should give little, if any, weight to these cases. Presumably, Society has cherry-picked the cases it filed as "supplemental authority" because it deems them persuasive; however, any perceived value of these cases is suspect at this stage of the litigation for two reasons. First, some courts have granted motions to dismiss, but many have not.

5

As this Court noted during the November 2, 2020 Initial Pretrial Conference, it is likely that these cases will continue to be decided one after another with decisions being handed down going both ways on whether motions to dismiss should be granted. *See* Nov. 2, 2020 Hr'g. Tr. at 30:21 – 31:22, attached hereto as **Exhibit C**. Second, none of Society's proffered decisions are binding on this Court. Indeed, all of the business interruption litigation is at its earliest stages. Most, if not all, of the cases cited by Society were decided without the benefit of discovery. And, none of the decisions have weathered review by an appellate court. Moreover, the inferences Society has drawn from these few select cases adds no substantive value to this Court's treatment of the Society policies at issue in the case *sub judice*. For these reasons, even if Society were not estopped from presenting these authorities, the Court should give them little, if any, weight.

### III. Some of Society's Cited Decisions Contain Virus Exclusions, While Others Dismissed Complaints That Failed to Allege Physical Loss of or Damage to Property

Pointedly, some of the decisions that Society cites as relevant involve insurance policies that, unlike Society's policies, contain an express exclusion for loss or damage resulting from a virus. (*See* Doc. No. 121-1, *Gavrilides Mgmt.*, at 36:21 – 38:8; Doc. No. 121-2, Doc. No. 121-4, *Diesel Barbershop*, at 15 ("Even if the Court had found that the language within the Policies was ambiguous and/or that Plaintiffs properly plead direct physical loss to the Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims.")). Notably, in pleading the issue of "direct physical loss of or damage to" property in those cases, the presence of the virus exclusion may have led some litigants to forego some of the strongest allegations of "direct physical loss of or damage"—namely, that the virus was present on their property and infested the air in and surface of the property or that the immediate threat or presence of the virus and the ensuring government shutdown orders impaired the function and diminished the usable space in the property. Despite the efforts of Society's CEO at the outset of the pandemic to dissuade Society policyholders from submitting claims by falsely

stating that "pandemic events are excluded,"[2] the Society policies do not include a virus or pandemic exclusion. Thus, the persuasive value of cases involving virus exclusions is negligible.[3]

Moreover, in the cases at bar, Plaintiffs have made physical loss and damage allegations, which is important because the decisions cited by Society as supplemental authority also contain a finding that the plaintiffs in those cases did not state a claim under the policies at issue because the plaintiffs did not actually allege "physical loss" or "physical damage" to their property due to the coronavirus in the narrow sense that the courts construed those terms. Those cases stand in stark contrast to the allegations contained within the bellwether complaints currently under consideration by the Court.

For example, in the bellwether motions selected by this Court, Plaintiffs alleged their claims as follows:

- *Big Onion* (20-cv-2005): "Plaintiffs have alleged a physical deprivation of property as a result of the 'continuous presence of the coronavirus on or around Plaintiffs' premises [which] has created a dangerous condition and rendered their premises unsafe and unfit for their intended use.' Specifically, Plaintiffs have alleged that 'COVID-19 strains **physically** infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous.'" (Doc. No. 124-1, at 12-13) (internal citations omitted).

- *Valley Lodge* (20-cv-2813): "[T]he persistence of contamination resulting from COVID-19 constitutes a 'loss' within the meaning of the insurance policy … Specifically, … when an object or surface contains live virus, the virus is physically present on surfaces and objects, but imperceptible to the human eye, and the objects and surfaces should not be used. … [T]he presence of virus on objects and surfaces cannot be reliably eliminated because these surfaces will continue to become contaminated as people spread the virus throughout their dining experience." (Doc. No. 32, at 10-11) (internal citations omitted).

---

[2] *See Big Onion* Amended Complaint (20-cv-2005) (Doc. No. 29), ¶ 16, Ex. C. The Insurance Services Office ("ISO") drafted a virus exclusion in the wake of the SARS epidemic in 2003 that is found in many insurers' policies, but that exclusion is indisputably absent from the policies issued by Society Insurance, even though the Society Insurance policy form appears to have drawn heavily from ISO form language. *See Big Onion* Opposition (Doc. No. 124-1) at 7 n.2.

[3] *See also, e.g.,* Tom Baker, "Motion to Dismiss Box Score Update," COVID Coverage Litigation Tracker, https://cclt.law.upenn.edu/2020/10/29/motion-to-dismiss-box-score-update/ (last visited Nov. 6, 2020) (noting that with respect to cases *lacking* a virus exclusion, such as Society's policies, more motions to dismiss have been *denied* than granted).

As the Court observed during the November 2, 2020 Initial Pretrial Conference, the *Valley Lodge* plaintiffs also have submitted an expert affidavit regarding that physical spread of the virus that stands unrebutted. Ex. C, Nov. 2, 2020 Hr'g. Tr. at 10:18-24.

- *Rising Dough* (20-cv-0623): "Because the Restaurants have alleged that (1) COVID-19 presented a dangerous physical condition on property, (2) the presence of COVID-19 renders property impure, (3) the presence changes the property's substance and contaminates interior building surfaces, and (4) the presence and threat of COVID-19 forced the Restaurants to reduce business on their property to avoid further harm, the Restaurants sufficiently allege 'direct physical loss or damage.'" (Doc. No. 26 at 16) (internal citations omitted).

Thus, unlike the plaintiffs in the cases that Society cites as "supplemental authority," Plaintiffs in the bellwether cases have not limited their allegations to loss of use of their property due to the executive orders, and they have alleged "physical loss of" or "physical damage to" their premises due to the presence and spread of the coronavirus.

### IV. The Cases Offered by Society Are Distinguishable for the Reasons Outlined Above and in the Bellwether Plaintiffs' Response Briefs

Based on a review of the various notices of supplemental authority,[4] Society has offered the following supplemental authority, all of which is distinguishable:

- *Gavrilides Mgmt. Co., et al. v Mich. Ins. Co.*, Case No 20-258-CB-C30 (Cir. Ct. Mich.) (applying Michigan law): This bench ruling from a state court judge in Michigan is inapt

---

[4] Society filed Notices of Supplemental Authority in each of the cases in which the Court is considering bellwether motions (*see Big Onion Tavern Group, LLC, et al. v. Society Ins.* ("*Big Onion*") (20-cv-2005) (Doc. Nos. 120, 133); *Valley Lodge Corp. v. Society Ins.* ("*Valley Lodge*") (20-cv-02813) (Doc. Nos. 43, 55); *Rising Dough, Inc., et al. v. Society Ins.* ("*Rising Dough*") (20-cv-00623) (Doc. No. 35)), as well as over a dozen other cases. *See Kedzie Boulevard Café, Inc., et al. v. Society Ins.* (20-cv-02692) (Doc. Nos. 26, 38); *Peg Leg Porker Restaurant, LLC v. Society Ins.* (3:20-cv-00337) (Doc. No. 28); *The Barn Investment LLC, et al. v. Society Ins.* (20-cv-03142) (Doc. Nos. 27, 38); *351 Kingsbury Corner, LLC v. Society Ins.* (20-cv-02589) (Doc. Nos. 34, 40); *Dunlays Management Services LLC v. Society Ins.* (20-cv-2524) (Doc. Nos. 37, 40); *Roscoe Same LLC, et al. v. Society Ins.* (20-cv-02641) (Doc. Nos. 38, 47); *Biscuit Café Inc., et al. v. Society Ins.* (20-cv-02514) (Doc. Nos. 42, 55); *Ciao Baby on Main LLC v. Society Ins.* (20-cv-03251) (Doc. Nos. 21, 26); *Cardelli Enterprise, LLC v. Society Ins.* (20-cv-03251) (Doc Nos. 28, 33); *Deerfield Italian Kitchen, Inc. v. Society Ins.* (20-cv-03896) (Doc. Nos. 25, 31); *Billy Goat Tavern I, Inc. v. Society Ins.* (20-cv-02068) (Doc. Nos. 54, 58); *Riverside Enterprises, LLC v. Society Ins.* (20-cv-04178) (Doc. No. 23); *Purple Pig Cheese Bar & Pork Store, LLC v. Society Ins.* (20-cv-03164) (Doc. No. 24); *The Whistler LLC v. Society Ins.* ("*Whistler*") (20-cv-03959) (Doc. No. 26); *726 West Grand LLC v. Society Ins.* (20-cv-03432) (Doc. No. 43).

and distinguishable for the reasons stated in the *Big Onion* Opposition (20-cv-2005) (Doc. No. 124-1) at 10 n.3&4.

- *Rose's 1, LLC v. Erie Ins. Exch.*, Case No. 2020 CA 002424B (Sup. Ct. D.C.) (applying District of Columbia law): This ruling from a state court judge in the District of Columbia is inapt and distinguishable for the reasons stated in the *Big Onion* Opposition (Doc. No. 124-1) at 10 n.3&4. *See also*, *Valley Lodge* Motion for Leave, No. 1:20-cv-02813 Doc. No. 50-1).

- *Diesel Barbershop LLC, et al. v. State Farm Lloyd's*, Case No. 5:20-cv-461-DAE (W.D. Tex.) (applying Texas law): This ruling involves materially different policy language that covers "accidental direct physical loss of insured property" rather than "direct physical loss of or damage to property" and is further inapt and distinguishable for the reasons stated in the Big Onion Opposition (Doc. No. 124-1) at 10 n.3&4. *See also*, *Valley Lodge* Motion for Leave, No. 1:20-cv-02813 Doc. No. 50-1).

- *Inns by the Sea v. California Mut. Ins. Co.*, 20-cv-1274 (Sup. Ct. Ca.) (applying California law): This ruling from a California state court judge is a one-sentence order that contains no analysis.

- *10E, LLC v. Travelers Indemnity Co. of Connecticut, et al.*, Case No. 2:20-cv-04418-SVW-AS, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) (applying California law): This ruling is based on the holding that "'[d]etrimental economic impact' does not suffice" to allege "direct physical loss of or damage to" property and that "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *Id.*, at *5. Based on this holding, the Court found: "Plaintiff's FAC attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage." *Id*. Specifically, the court rejected the insured's claim for "diminished value" to its property due to the executive orders and the "labeling of the insured property as non-essential." *Id*. at 2. Therefore, this case is distinguishable because Plaintiffs here allege both "physical loss of" and "physical damage to" its premises due to the presence of a harmful condition. This case is further distinguishable because, unlike the Society policies, the policy at issue contained a virus exclusion. *Id*.

- *Sandy Point Dental, P.C. v. The Cincinnati Ins. Co.*, Case No. 20-cv-2160 (N.D. Ill. Sep. 21, 2020) (applying Illinois law): This case is distinguishable for at least four reasons. *First*, the "critical policy language" at issue in *Sandy Point*—"<u>direct physical loss</u> to property at the premises"—is more narrow than the language in the Society policies, which covers "direct physical loss <u>or damage to</u>" property. *Id*. at 2, 4. *Second*, unlike the Plaintiffs here, Sandy Dental "fail[ed] to allege" the "presence of the virus on its physical surfaces," *id*. at 4, leading the court to hold: "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders." *Id*. at 5. Thus, instead of also alleging "physical damage" due to the presence of a harmful condition, as the Plaintiffs have done here, Sandy Dental's claim was predicated solely on the "partial loss to the properties from loss of use" caused by the executive orders. *Id*. at 3. *Third,* the

court's conclusion that the phrase "direct physical loss" (which again is materially different than the language in the Society policies) requires "physical alteration" of property is contrary to the decision of courts following black-letter insurance law on policy interpretation and holding that the presence of a harmful element, such as asbestos fibers, on or around the insured premises constitutes property damage because it is harmful to occupants of the building, not because it physically alters the building necessitating repair or replacement of any altered part of the building. *Fourth*, the Sandy Point opinion is predicated on the finding that Sandy Dental "need not make any repairs or change any part of the building to continue its business." *Id*. at 5. But, unlike a dental office, the bars and restaurants operated by the Plaintiffs *did* have to physically alter and change the structure and layout of their indoor dining and bar areas to continue to operate safely and in compliance with the executive orders. *See, e.g.*, *Big Onion* Opposition (20-cv-2005) (Doc. No. 124-1, at 18) ("While some businesses that do not depend on indoor gatherings in confined spaces have been able to reconfigure their properties to make them safe during the pandemic, it is possible that Plaintiffs, whose business models do depend on in-person gatherings, will not be able to do so until the COVID-19 pandemic is over.")

- *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, Case No. 20-cv-907-CAB-BLM (S.D. Cal. Sep. 22, 2020) (applying California law): This decision is distinguishable because, unlike the Plaintiffs in this case, the plaintiffs in that case "focus" only on the alleged "direct physical loss of" due to the "loss of the ability to continue operating their business as a result of the government orders." *Id*. at 6-7. Specifically, the court noted "the complaint does not allege that COVID-19 or the coronavirus itself caused a direct physical loss triggering coverage under the Policy. Rather, the complaint alleges only that the government orders themselves caused direct physical loss and damage to Plaintiffs' property. *Id*. at 4. The court rejected this argument, finding that "the government orders did not constitute direct physical loss or damage to property." *Id*. at 7. Importantly, the policy at issue in *Pappy's* also contained a virus exclusion, which the insured argued did not apply because "the efficient proximate cause of [Plaintiffs'] losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiffs' insured properties." *Id*. at 4. Thus, as with many of the plaintiffs across the country that have had their COVID-19 business interruption claims dismissed, Pappy's Barbershop failed to actually allege physical loss or damage to property caused by the virus in order to try to avoid the application of a virus exclusion. However, again, no such exclusion is found in the Society policies.

V. **The COVID-19 Business Interruption Decisions Society Insurance Failed to Mention Are More Applicable to the Allegations At Issue in the Bellwether Motions and Underscore Why This Litigation Should Proceed**

Contrary to Society's suggestion during the November 2, 2020 Initial Pretrial Conference, courts have not universally held that COVID-19 business interruption insurance claims fail as a matter

of law. As noted in the response to the bellwether motions,[5] and in the Notices of Supplemental Authority filed by *Rising Dough*[6] and *Valley Lodge*[7] several courts have already rejected the same types of arguments made by Society and denied similar (proffered) dispositive motions. Importantly, the only court Plaintiffs are aware of (Judge Bough in the United States District Court for the Western District of Missouri) to consider allegations of "physical loss of or damage to" property due to the spread of the coronavirus similar to those alleged by Plaintiffs has repeatedly held that such allegations are sufficient to state a claim:

- *Studio 417,* 2020 WL 4692385, at *4 (holding plaintiffs adequately alleged a direct physical loss because COVID-19 "is a physical substance" that "lives on and is active on insert physical surfaces, and is also emitted into the air," and that "***COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it unsafe and unusable, resulting in direct physical loss to the premises and property***.") (emphasis added).

- *K.C. Hopps,* Case No. 20-cv-00437-SRB (finding that "*Studio 417* involves the same Defendant, similar insurance provisions, and similar factual allegations" and holding "[f]or substantially the same reasons as those in the *Studio 417* Order, the Court finds that Plaintiff's claims against Defendant are adequately stated")

- *Blue Springs Dental Care LLC v. Owners Ins. Co.*, Case No. 20-CV-00383-SRB (W.D. Mo. Sept. 21, 2020) (attached hereto as **Exhibit D**) ("Plaintiffs respond that they have sufficiently pled their insured properties were physically damaged, arguing they have ***adequately alleged that 'the presence of COVID-19 on and around the insured property deprived Plaintiffs of the use of their property and also damaged it***.' Plaintiffs also contend they sufficiently allege a physical loss, arguing their allegations that Plaintiffs were forced to end or dramatically reduce all operations at

---

[5] *See Big Onion* Opposition (20-cv-2005) (Doc. No. 124-1), at 9-10, 12 (citing *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385.

[6] *See Rising Dough* Notice of Supplemental Authority (20-cv-00623) (Doc. No. 41) (citing *Studio 417,* 2020 WL 4692385 and *K.C. Hopps, LTD. v. The Cincinnati Insurance Company*, *Inc.*, Case No. 20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020)); *See Rising Dough* Second Notice of Supplemental Authority (20-cv-00623) (Doc. No. 46) (citing *Optical Services USA JC1 v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (Sup. Ct. N.J. Aug. 13, 2020) (transcript).

[7] *See Valley Lodge*, 1:20-cv-02813, Notice of Supplemental Authority (Doc. No. 57) (citing *Studio 417, Inc. v. The Cincinnati Insurance Company*, Case No. 20-cv-03127-SRB; *Blue Springs Dental Care, LLC, et al., v. Owners Insurance Company*, Case No. 20-cv-00383-SRB; *Urogynecology Specialists of Florida, LLC v. Sentinel Insurance Company, Ltd.*, Case No. 6:20-cv-1174-Orl-22EJK; *K.C. Hopps, Ltd. v. The Cincinnati Insurance Company, Inc.*, Case No. 20-cv-00437 SRB).

their clinics because of '***actual contamination by COVID-19'*** as well as related restrictions imposed by the Stay Home Orders that 'prohibited the public from accessing Plaintiffs' covered premises.'") (emphasis added) (internal citations omitted).

Other judges across the country have likewise denied motions to dismiss COVID-19 business interruption lawsuits based on the finding that it would be premature to resolve such claims at the pleading stage without discovery. *See, e.g., Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co.* Case No. 20-cv-01174 (M.D Fla. September 24, 2020) (attached hereto as **Exhibit E**) ("[T]his Court finds that Plaintiff has stated a plausible claim at this juncture. Plaintiff alleged the existence of the insurance contract, losses which may be covered under the insurance contract, and Sentinel's failure to pay for the losses. These allegations, when read in the light most favorable to Plaintiff, are facially plausible"); *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, Case No. 20-cv-00375 (Penn. Ct. Common Pleas. Oct. 26, 2020) (attached hereto as **Exhibit F**); *Francois Inc. v. Cincinnati Ins. Co.*, Case No. 20-cv-201416 (Ohio Ct. Common Pleas Sept. 29, 2020) (attached hereto as **Exhibit G**) (holding the plaintiff's "complaint states claims which arguably fit the terms and conditions of the insurance policy and therefore the claims and defenses need to be developed with a record.").

Moreover, one court has granted a motion for summary judgment filed by a *policyholder* seeking COVID-19 business interruption losses, holding that: "In ordinary terms, this loss is unambiguously a 'direct physical loss,' and the Policies afford coverage." *North State Deli LLC v. Cincinnati Ins. Co*., Case No. 20-cv-02569 (N.C. Sup. Ct. Oct. 9, 2020) (attached hereto as **Exhibit H**). In reaching this conclusion, the Court held:

> The parties sharply dispute the meaning of the phrase "direct physical loss." Cincinnati argues that "the policies do not provide coverage for pure economic harm in the absence of direct physical loss to property, which requires some form of physical alteration to property." Even if Cincinnati's proffered ordinary meaning is reasonable, the ordinary meaning set forth above is also reasonable, rendering the Policies at least ambiguous. ***Accordingly, in giving the ambiguous terms the***

> ***reasonable definition which favors coverage, the phrase "direct physical loss" includes the loss of use or access to covered property even where that property has not been structurally altered***.

*Id*., at 6 (emphasis added). Further, the Court also noted that the policies at issue, like the Society policies here, "do not exclude virus-related causes of loss" and held that the "Ordinance or Law," "Acts or Decisions" and "Delay or Loss of Use" exclusions did not apply to the plaintiff's COVID-19 business interruption losses "as a matter of law." *Id*. at 7.

The decisions of these courts in favor of coverage is not surprising. The plain language of the policies favor Plaintiffs, but even if the insurers could offer an alternative reasonable interpretation of "direct physical loss of or damage," they would still not be entitled to deny coverage. It is black letter law, as affirmed recently by the Seventh Circuit, that if insurance policy language is "'susceptible to more than one reasonable meaning,' an ambiguity exists and it will be construed against the insurer." *Berg v. N.Y. Life Ins. Co.*, 831 F.3d 426, 428-431 (7th Cir. 2016) (reversing summary judgment ruling for insurer and holding that, because an ambiguity existed, the policy must be construed in favor of coverage); *See also, Ins. Co. of Pa v. Océ-USA Holdings, Inc.*, No. 12 C 04713, 2012 WL 1283819, at *3 (N.D. Ill. Mar. 26, 2013) (Chang, J.) (holding "if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy") (citation omitted); *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 230 (Wis. 2002); *see also Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 744–45, 456 N.W.2d 570, 573 (1990) ("Words or phrases in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. If we determine that the phrase is ambiguous, we must construe the ambiguity in favor of coverage.")

(internal citations omitted).[8]  It also is not surprising, given the plain meaning of these terms and the rules of insurance policy interpretation, that courts hold that a harmful condition on insured property constitutes physical loss or damage.[9]  While Plaintiffs submit that they have offered the *only* reasonable interpretation of the plain language at issue in Society's policies, as long as Plaintiffs' interpretation is reasonable, Society's motions must be denied.

In sum, Society's reliance on the decisions it cites should be rejected.  But to the extent the Court finds decisions from other jurisdictions helpful in deciding the bellwether motions, the cases Society has offered should be given little weight, and the court should also consider the more recent and more apt decisions from courts that have determined that cases like the bellwether Plaintiffs' cases should proceed.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully submit that this Court should reject Society's currently cited "supplemental authority" in its entirety.

Dated:  November 9, 2020

                                          Respectfully submitted,

                                          */s/ Shelby S. Guilbert, Jr.*

                                          Shelby S. Guilbert, Jr.
                                          **KING & SPALDING LLP**
                                          1180 Peachtree Street, NE, Suite 1600
                                          Atlanta, Georgia  30309
                                          Telephone:  404-572-4697

---

[8]  For further discussion about the applicable rules of construction to the policies in this case, *see Big Onion* (20-cv-2005) (Dkt. No. 124-1) at 5-6; *Rising Dough* (20-cv-00623) (Doc. No. 26) at 25); *Valley Lodge* (20-cv-02813) (Doc. No. 32) at 8; *Whistler* (20-cv-03959) (Doc. No. 24-1) at 6-7.

[9] *See, e.g.*, *U.S. Fid & Gaur. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 76 (1991) (holding invisible substances like asbestos fibers that do not otherwise physically alter a structure can create a "harmful element" that qualifies as "property damage"); *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625-26 (Ill. App. Ct. 1999) (coverage under all-risk property insurance policy for "all risks of physical loss or damage to" was triggered by alleged presence of asbestos-containing material in a "friable condition and emitting toxic fibers.").

sguilbert@kslaw.com

Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 North LaSalle Street, #3100
Chicago, Illinois 60602
Telephone: 312-899-9090
smm@cliffordlaw.com

Adam J. Levitt
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com

W. Mark Lanier
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Telephone: 713-659-5200
WML@lanierlawfirm.com

Timothy W. Burns
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com

*Plaintiffs' Interim Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: /s/ *Shelby S. Guilbert, Jr.*
Shelby S. Guilbert, Jr.