# EXHIBIT A

BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *IN RE* COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2942 |

# SOCIETY INSURANCE COMPANY'S
# <u>OPPOSITION TO MOTION FOR TRANSFER</u>

Laura A. Foggan
April N. Ross
Austin J. Sutta
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
Telephone: (202) 624-2774
Facsimile: (202) 628-5116
lfoggan@crowell.com

**TABLE OF CONTENTS**

<u>Page</u>

I. INTRODUCTION ................................................................................................................1

II. LEGAL STANDARD .........................................................................................................2

III. ARGUMENT .......................................................................................................................3

A. Centralizing the Society Insurance Cases Would Not Promote Judicial Efficiency, Convenience Or The Interests of the Parties. ..................................................3

B. The Primary Issues To Be Decided Are Legal, Governed By State Law, And Best Resolved by the Home Forum Federal Court Sitting In That State. ................................4

C. Centralization is Inappropriate Because There Are Different Insurance Contracts With Distinct Policy Provisions And Different Facts At Issue In These Cases. .........................7

IV. CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*The Barn Investment LLC et al. v. Society Insurance, Inc.*,
  Case No. 1:20-cv-03142 (N.D. Ill.) ..................................................................................... 1

*Big Onion Tavern Group, LLC, et al. v. Society Insurance, Inc.*,
  Case No. 1:20-cv-02005 (N.D. Ill) ................................................................................... 1, 8

*Billy Goat Tavern I, Inc., et al v. Society Insurance, Inc.*,
  Case No. 1:20-cv-02068 (N.D. Ill.) .............................................................................. 1, 2, 6

*Border Chicken AZ LLC v. Nationwide Mutual Insurance Company, et al.*,
  Case No. 2:20-cv-00785-JJT (D. Ariz.) ............................................................................... 8

*Caribe Restaurant & Nightclub, Inc. v. Topa Insurance Company*,
  Case No. 2:20-cv-03570 (C.D. Cal.) .................................................................................... 8

*In Re: Chinese-Manufactured Drywall Products Liability Litig.*,
  MDL No. 2047 (J.P.M.L. Feb. 5, 2010) ............................................................................... 9

*Christine Jo Berkseth-Rojas DDS v. Aspen American Insurance Company*,
  Case No. 3:20-cv-00948-D (N.D. Tex.) ............................................................................... 8

*Cole v. Elliott Equipment Co.*,
  653 F. 2d 1031 (5th Cir. 1981) ............................................................................................. 6

*Dakota Ventures, LLC et al. v. Oregon Mutual Insurance Co.*,
  Case No. 3:20-cv-00630-HZ (D. Or.) ................................................................................... 8

*In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*,
  434 F. Supp. 1235 (J.P.M.L. 1977) ...................................................................................... 5

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ............................................................................................................. 7

*In re Fla., P.R. & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*,
  325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018) ................................................................. 9

*In re: Fout & Wuerdeman Litig.*,
  657 F. Supp. 2d 1371 (J.P.M.L 2009) .............................................................................. 3, 9

*In re Galveston, Texas Oil Well Platform Disaster Litig.*,
  322 F. Supp. 1405 (J.P.M.L. 1971) ...................................................................................... 4

*Gio Pizzeria & Bar Hospitality, et al. v. Certain Underwriters at Lloyd's, London*,
   Case No. 1:20-cv-03107 (S.D.N.Y.) .................................................................................. 8

*In re: Healthextras Ins. Mktg. & Sales Practices Litig.*,
   24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) ..................................................................... 5

*In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*,
   626 F. Supp. 2d 1355 (J.P.M.L. 2009) ............................................................................. 3

*In re: Honey Prod. Mktg. & Sales Practices Litig.*,
   883 F. Supp. 2d 1333 (J.P.M.L. 2012) ............................................................................. 6

*In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*,
   517 F. Supp. 2d 1362 (J.P.M.L. 2007) ......................................................................... 4, 9

*JDS 1455 Inc. v. Society Insurance, Inc.*,
   Case No. 1:20-cv-02546 (N.D. Ill.) ............................................................................. 1, 2

*In re Medi-Cal Reimbursement Rate Reduction Litigation*,
   652 F. Supp. 2d 1378 (J.P.M.L. 2009) ............................................................................. 5

*In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*,
   299 F. Supp. 1403 (J.P.M.L. 1969) .................................................................................. 4

*Nue LLC v. Oregon Mutual Insurance Company*,
   Case No. 2:20-cv-00676-RSL (D. Wash.) ....................................................................... 8

*Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*,
   693 F.3d 417 (3rd Cir. 2012) ........................................................................................... 7

*Pigment Inc. v. The Hartford Financial Services Group, Inc. et al.*,
   Case No. 3:20-cv-00794-BEN-JLB (C.D. Cal.) .............................................................. 8

*Prime Time Sports Grill v. Certain Underwriters at Lloyd's London*,
   Case No. 8:20-cv-00771 (M.D. Fla.) ............................................................................... 8

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
   273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) ............................................................... 3, 4

*In re: Real Estate Transfer Tax Litig.*,
   895 F. Supp. 2d 1350 (J.P.M.L. 2012) ............................................................................. 5

*Rising Dough, Inc. et al. v. Society Insurance, Inc.*,
   Case No. 2:20-cv-00623-WED (E.D. Wi.) ...................................................................... 1

*Roscoe Same, LLC et al. v. Society Insurance, Inc.*,
   Case No. 1:20-cv-02641 (N.D. Ill.) ................................................................................. 1

*Rush Prudential HMO, Inc. v. Moran*,
    536 U.S. 355 (2002) ................................................................................................................9

*Selective Insurance Company of South Carolina v. Target Corporation*,
    845 F.3d 263 (7th Cir. 2016) ...................................................................................................7

*Studio 417, Inc. v. The Cincinnati Insurance Company*,
    Case No. 6:20-cv-03127-SRB (W.D. Miss.) ...........................................................................8

*In re: Teamster Car Hauler Products Liabil. Litig.*,
    856 F. Supp. 2d 1343 (2012) ...................................................................................................5

*In re: Teamster Car Hauler Products Liability Litigation*,
    856 F. Supp. 3d 1343 (J.P.M.L. 2012) ...................................................................................10

*Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*,
    402 F.3d 1161 (11th Cir. 2005) ................................................................................................7

**Statutes**

28 U.S.C. § 1407 ............................................................................................................... *passim*

28 U.S.C. § 1407(a) .................................................................................................................3

**Other Authorities**

Rule 4.1(a) ..............................................................................................................................12

I. **INTRODUCTION**

Defendant Society Insurance Company ("Society") opposes the motions of LH Dining Plaintiffs,[1] the Christine Jo Plaintiffs,[2] and the El Novillo Plaintiffs[3] (collectively, "Movants") to centralize six cases[4] pending against it with lawsuits pending against 49 other insurers in courts across the country into an MDL proceeding. Society is a regional writer of coverage operating in six states. To require Society to litigate in an MDL with 49 other insurers, most of whom write coverage in states where Society does not even conduct business, would place an immense burden on Society, as well as Society's regionally concentrated policyholders.

Of the six actions against Society, one is an individual plaintiff suit; five are putative class actions.[5] Two bring claims for bad faith denial of insurance coverage,[6] five seek a

---

[1] "LH Dining Plaintiffs" refers to Plaintiffs LH Dining LLC and Newchops Restaurant Comcast LLC, who filed a joint motion for consolidation and transfer under 28 U.S.C. § 1407 on April 20, 2020. *See* J.P.M.L. Dkt. 2942, EFC No. 1-1 ("LH Dining Br.").

[2] "Christine Jo Plaintiffs" refers to Christine Jo Berkseth-Rojas DDS, Bridal Expressions LLC, Caribe Restaurant & Nightclub, Inc., Dakota Ventures, LLC, GIO Pizzeria & Bar Hospitality, LLC, GIO Pizzeria Boca, LLC, Rising Dough, Inc., Willy McCoys of Albertville LLC, Willy McCoys of Shakopee LLC, Whiskey Jacks of Ramsey, LLC, and Troy Stacy Enterprises Inc., who filed a joint motion for consolidation and transfer under 28 U.S.C. § 1407 on April 21, 2020. *See* J.P.M.L. Dkt. 2942, EFC No. 4-1 ("Christine Jo Br.").

[3] "El Novillo Plaintiffs" refers to El Novillo Restaurant, d/b/a/ DJJ Restaurant Corporation, and El Novillo Restaurant, d/b/a Triad Restaurant Corporation, which responded in partial support to the LH Dining Motion and the Christie Joe Motion on April 24, 2020. *See* J.P.M.L. Dkt. 2942, EFC No. 9 ("El Novillo Br.").

[4] The six Society lawsuits identified for consolidation are: *Big Onion Tavern Group, LLC, et al. v. Society Insurance, Inc.*, Case No. 1:20-cv-02005 (N.D. Ill); *Billy Goat Tavern I, Inc., et al v. Society Insurance, Inc.*, Case No. 1:20-cv-02068 (N.D. Ill.); *JDS 1455 Inc. v. Society Insurance, Inc.*, Case No. 1:20-cv-02546 (N.D. Ill.); *Rising Dough, Inc. et al. v. Society Insurance, Inc.*, Case No. 2:20-cv-00623-WED (E.D. Wi.); *Roscoe Same, LLC et al. v. Society Insurance, Inc.*, Case No. 1:20-cv-02641 (N.D. Ill.); and *The Barn Investment LLC et al. v. Society Insurance, Inc.*, Case No. 1:20-cv-03142 (N.D. Ill.).

[5] *Big Onion Tavern Group, LLC*, Case No. 1:20-cv-02005 is not a class action.

[6] *Big Onion Tavern Group, LLC*, Case No. 1:20-cv-02005 and *Roscoe Same, LLC,* Case No. 1:20-cv-02641 bring bad faith counts.

1

declaratory judgment that Society must cover business interruption losses arising from government COVID-19 orders,[7] and all six assert breach of contract claims. A motion for summary judgment already is pending in one of these actions.[8]

The non-Society cases consist of the 128 other lawsuits filed against 49 other insurers. Some are putative class actions, others are not. The suits assert various causes of action under numerous theories of liability under many different states' laws. Society is not a party in any of those cases, and its insurance policies and coverage decisions are not at issue in any of them. The transfer request is based on the superficial "commonality" that all plaintiffs allegedly suffered economic losses due to government orders issued to combat the spread of COVID-19 and that their claims for those losses have been, or are expected to be, denied by their insurers. Plaintiffs in these cases "span the entire economy" of the United States, and the request for collective adjudication glosses over the different coverages and insurance policy language at issue, grounds for recovery being asserted, facts of each claim, individual damages allegedly suffered, and the differing state law applicable to each claim. Tellingly, numerous plaintiffs—including plaintiffs suing Society such as Big Onion Tavern Group, LLC ("Big Onion")[9]—agree that these cases should not be transferred for centralization. Movants' proposal does not meet the fundamental purpose of efficiency, or the requirements for transfer, under 28 U.S.C. § 1407.

## II. LEGAL STANDARD

Transfer and centralization of related civil actions is appropriate where (1) the actions "involv[e] one or more common questions of fact"; (2) transfer "will be for the convenience of

---

[7] *JDS 1455 Inc.*, Case No. 1:20-cv-02546 does not bring a cause of action for declaratory judgment.

[8] *Billy Goat Tavern 1, Inc. et al. v. Society Insurance*, Case No. 1:20-cv-02068 (N.D. Ill.), Def.'s Mot. Summ. J., EFC No. 23.

[9] *See* Memorandum Of Law In Opposition To Motion For Transfer And Consolidation Pursuant to 28 U.S.C. § 1407, J.P.M.L. Dkt. 2942, EFC No. 198 ("Big Onion Br.").

parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Centralization is justified only where it "is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*, 626 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009). Here, Movants cannot meet their burden of proving that centralization is appropriate. *See, e.g., In re: Fout & Wuerdeman Litig.*, 657 F. Supp. 2d 1371 (J.P.M.L 2009).

### III. ARGUMENT

#### A. Centralizing the Society Insurance Cases Would Not Promote Judicial Efficiency, Convenience Or The Interests of the Parties.

Society is a Wisconsin corporation and a regional insurer writing coverage in six states—Illinois, Indiana, Iowa, Minnesota, Tennessee, and Wisconsin. Society should not be subject to centralization with other cases—most of which are in states where it has no contacts—involving different parties, different insurance policy language, and different facts. Rather than simplifying pretrial proceedings, transfer would lead to multiplying burdens on Society. Society would be brought into a proceeding involving 49 other insurers, where it would be necessary to monitor issues relating to those insurers that are distinct from those involving Society, its policies, and its insureds. Any MDL would be more, not less, complex than proceeding with Society's cases individually, and would "prolong pretrial proceedings, because of," among other things, the "need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) ("*In re PPI*").

Further, Society could be forced to litigate in a location distant from its home state, multiplying costs and burdens. Transferring Society cases for coordination with cases bearing

-3-

only a superficial resemblance to them would not increase the convenience to all parties. Instead, transfer would "impose heavy and unnecessary burdens in time and expense" on Society and its policyholders. *In re Galveston, Texas Oil Well Platform Disaster Litig.*, 322 F. Supp. 1405, 1407 (J.P.M.L. 1971) (inconvenience of transfer for opponents of centralization outweighed the convenience for proponents of centralization).

In analyzing the convenience prong of 28 U.S.C. § 1407, "the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law." *See In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 299 F. Supp. 1403, 1405 (J.P.M.L. 1969). Here, both Society and many of its affected policyholders[10] oppose centralization because it leads to the exact opposite result from what MDL proceedings are intended to promote.

Even if the cases were not disposed of by early motion practice, centralizing these cases would provide no convenience benefit to the parties and their witnesses because, where the named defendants vary from action to action, "[c]entralization [ ] appears unlikely to serve the convenience of most, if not all, defendants and their witnesses." *In re PPI*, 273 F. Supp. 3d at 1362 (declining to transfer despite certain shared factual issues where discovery in the actions was "almost certain to be defendant-specific"); *In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (Denying centralization because the four actions at issue were "against different defendant insurance companies and involve different contracts").

### B. The Primary Issues To Be Decided Are Legal, Governed By State Law, And Best Resolved by the Home Forum Federal Court Sitting In That State.

Centralization would not advance the just, speedy, or efficient resolution of these cases

---

[10] The Big Onion Brief was submitted on behalf of 55 Society policyholders. Big Onion Br., Ex. A, EFC No. 198-1.

because the primary issues to be decided are legal, not factual. Common issues of law are not appropriate for centralization. *In re: Real Estate Transfer Tax Litig.*, 895 F. Supp. 2d 1350 (J.P.M.L. 2012); *In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977). This Panel has consistently recognized that "Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." *In re: Teamster Car Hauler Products Liabil. Litig.*, 856 F. Supp. 2d 1343 (2012) (transfer denied where "the defects alleged and injuries suffered vary among these actions, and various additional defendants are named based on different theories of liability"). The Panel has also noted that "merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re Medi-Cal Reimbursement Rate Reduction Litigation*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (declining to order transfer where issues were "by and large strictly legal"). *See also In re: Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying centralization because "the key issue in all cases is legal in nature"); *In re ClearTalk-ZTE Arbitration Litig.*, 24 F. Supp. 3d 1374, 1375 (J.P.M.L. 2014) ("[T]he resolution of purely a legal issue or issues is generally insufficient to warrant centralization").

Because straightforward legal questions predominate, centralization would frustrate Section 1407's purpose of promoting efficiency. To the extent discovery is needed at all, it will be specific to each policyholder and its insurer. If the cases were centralized, parties would be forced wait while discovery unrelated to the facts of their case was conducted. For example, given that MDL judges necessarily phase pretrial proceedings, the MDL court might decide to address the Sue and Labor language or Ingress and Egress provisions first, causing all of the Society cases being put on hold while the court decides issues that have no bearing at all on

Society's cases. Society's cases can proceed most efficiently in their home courts where they will focus on the policy language at issue, and are subject to early dispositive motions. In fact, Society has already moved for summary adjudication of one of the actions at issue, *Billy Goat Tavern 1, Inc. et al. v. Society Insurance*, Case No. 1:20-cv-02068 (N.D. Ill.), Def.'s Mot. Summ. J., EFC No. 23, seeking a determination that no obligation is owed under the policy at issue.

The legal issues presented, moreover—the interpretation of insurance contracts—are governed by state law, making them particularly unsuitable for transfer and centralization. This Panel has held that cases that must be resolved under different state's laws are not suited for centralization. *See, e.g.*, *In re: Honey Prod. Mktg. & Sales Practices Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) (denying motion for transfer where "[t]he actions involve . . . different state regulations subject to different legal challenges by the defendants"). Whether business interruption policies will provide coverage for COVID-19 government closures is a salient legal issue for state courts. Because "the federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position [ ] to determine how local courts would dispose of such issues," the federal business interruption cases should be decided by federal judges sitting in the respective state where an action is filed. *U.S. Kimbell Foods, Inc.*, 440 U.S. 715, 740 (1979); *See also Cole v. Elliott Equipment Co.*, 653 F. 2d 1031, 1034 (5th Cir. 1981) ("a federal trial judge who sits in a particular state and has practiced before its courts 'is better able to resolve certain questions about the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state'").

There is no reason to have a judge sitting in Pennsylvania make determinations under Wisconsin state law, or to have a judge sitting in Florida or Illinois make determinations about Tennessee, Indiana, Minnesota, or Iowa state law. As one of the plaintiffs in the Society cases

explained: "Such fact-specific and party-specific claims, based on a single jurisdiction's unique cause of action, are inappropriate for multidistrict litigation." Big Onion Br. at 16; *Accord Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) ("'There is a local interest in having localized controversies decided at home. There is an appropriateness too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself'") (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509 (1947)). As longstanding jurisprudence on MDL centralization makes clear, it is undesirable for all parties—and particularly here for a regional insurer and local plaintiffs—to have legal issues resolved in a faraway forum with less familiarity with appliable state law than their home court.

    **C.    Centralization is Inappropriate Because There Are Different Insurance Contracts With Distinct Policy Provisions And Different Facts At Issue In These Cases.**

There most definitely are not "standard or near-standard terms across all the property insurance policies at issue," nor is the policy language only "slightly different," as Movants contend. Christine Jo Br. at 5; El Novillo Br. at 4; LH Dining Br. at 8. There are important differences in policy provisions and exclusions, and as a result, individual consideration of policy language will be required for each case.[11] For example, none of the Society policies at issue contain a Sue and Labor provision. Yet some of the related cases allege that other

---

[11]     *See, e.g., Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*, 402 F.3d 1161, 1166 (11th Cir. 2005) (*quoting Royal Ins. Co. of Am. v. Thomas*, 879 So.2d 1144, 1154 (Ala. 2003)) (A court must "give meaning and effect . . . to every word and phrase in the contract in determining the meaning thereof, and a construction which neutralizes any provision of a contract should never be adopted"); *Selective Insurance Company of South Carolina v. Target Corporation*, 845 F.3d 263, 267 (7th Cir. 2016) (In interpreting insurance contracts, the court "must seek to give effect to each clause and word used, without rendering any terms meaningless"); *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*, 693 F.3d 417, 425 (3rd Cir. 2012) (Because "the law does not assume that the language of the contract was chosen carelessly," "all provisions in the agreement . . . will be given effect") (internal citations omitted).

Case: 1:20-cv-05965 Document #: 82-1 Filed: 11/09/20 Page 14 of 18 PageID #:1639
Case MDL No. 2942 Document 871 Filed 08/03/20 Page 15 of 17

defendant insurers breached the Sue and Labor provision of their applicable policies. For example, in *Dakota Ventures, LLC et al. v. Oregon Mutual Insurance Co.*, Case No. 3:20-cv-00630-HZ (D. Or.), a putative class action, Plaintiff alleges that losses caused by COVID-19 and the related orders issued by government authorities triggered the Sue and Labor provision of the Oregon Mutual policy. (¶27, ¶39, ¶41). Claims under Sue and Labor provisions are also made in a handful of other cases for which transfer is sought.[12] None of the Society policies at issue contain an Ingress and Egress provision. But related cases against a few other insurers allege that they breached the Ingress and Egress provision of the applicable policy in those disputes.[13] And, even when the policy provisions at issue have the same names as coverage terms in policies issued by Society, there are often differences in those policy terms. For instance, Civil Authority and related Extra Expense provisions cited in various complaints in cases proposed for the MDL differ from those in Society's policies with respect to requirements of proximity to damaged property, at what point coverage begins after the first action of a civil authority that prohibits access to the described premises, and for what period the coverage applies.[14] Each insurance contract must be considered on its own merit and, where entire coverage parts differ from policy

---

[12] E.g., *Gio Pizzeria & Bar Hospitality, et al. v. Certain Underwriters at Lloyd's, London*, Case No. 1:20-cv-03107 (S.D.N.Y.); *Studio 417, Inc. v. The Cincinnati Insurance Company*, Case No. 6:20-cv-03127-SRB (W.D. Miss.); *Caribe Restaurant & Nightclub, Inc. v. Topa Insurance Company*, Case No. 2:20-cv-03570 (C.D. Cal.); *Christine Jo Berkseth-Rojas DDS v. Aspen American Insurance Company*, Case No. 3:20-cv-00948-D (N.D. Tex.).

[13] E.g., *Dakota Ventures, LLC et al. v. Oregon Mutual Insurance Co.*, Case No. 3:20-cv-00630-HZ (D. Or.); *Nue LLC v. Oregon Mutual Insurance Company*, Case No. 2:20-cv-00676-RSL, (D. Wash.); *Studio 417, Inc. v. The Cincinnati Insurance Company*, Case No. 6:20-cv-03127-SRB (W.D. Miss.); *Prime Time Sports Grill v. Certain Underwriters at Lloyd's London*, Case No. 8:20-cv-00771 (M.D. Fla.).

[14] Compare *Pigment Inc. v. The Hartford Financial Services Group, Inc. et al.*, Case No. 3:20-cv-00794-BEN-JLB (C.D. Cal.) and *Border Chicken AZ LLC v. Nationwide Mutual Insurance Company, et al.*, Case No. 2:20-cv-00785-JJT (D. Ariz.) with *Big Onion Tavern Group, LLC*, Case No. 1:20-cv-02005.

to policy, even the legal issues presented are not the same.

"[T]he interpretation of insurance contracts is at the 'core' of the business of insurance," as insurance disputes often turn on the inclusion or exclusion of a single word, let alone entire policy provisions directly applicable to a controversy. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 374-75 (2002). The Panel has repeatedly found that insurance disputes, by their very nature, are ill-suited for centralization where "[r]esolution of this action will require interpretation and construction of multiple contracts of insurance issued by different carriers." *In Re: Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (J.P.M.L. Feb. 5, 2010); *see also Insurance Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying transfer where the actions were "against different defendant insurance companies and involved different contracts"). **Error! Bookmark not defined.**

On top of the various policy provisions that an MDL judge would need to navigate, the facts of each individual case vary and would not be advanced by centralized pretrial proceedings. Proposed MDL plaintiffs consist of restaurants, bars, shoe retailers, marketing agencies, beauty salons, theaters, gyms, dentistry practices, real estate agencies, hotels, bridal shops, trucking schools, optical practices, and breweries, among others. The types of loss suffered by, for example, a shuttered dentistry practice differ from losses sustained by a restaurant that continued to provide take-out services under government orders regarding the pandemic. In addition, the claims for relief differ from case to case. These types of variations weigh against transfer, as damages calculations, which necessarily require highly individualized factual inquiries and expert analysis, are not susceptible to common proof or inquiry. *See, e.g.*, *In re Fla., P.R. & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69

(J.P.M.L. 2018) (denying motion to transfer where "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages"); *In re: Teamster Car Hauler Products Liability Litigation*, 856 F. Supp. 3d 1343 (J.P.M.L. 2012) (denying motion to transfer where the "injuries suffered vary among these actions, and various additional defendants are named based on different theories of liability").

There is also no common core of defendants, with 50 separate insurers sued in the actions proposed for transfer. Nor are there common theories of recovery, with plaintiffs in various cases alleging claims arising from at least six different types of insuring agreements issued by different insurers, including Business Interruption, Civil Authority, Extra Expense, Sue and Labor, Ingress and Egress, and Preservation of Property insuring agreements. Christine Jo Br. at 5. The need to reconcile the unique underlying facts of each case including the nature of the plaintiff's businesses, the type of coverage at issue, the varying degrees of damages suffered, and the geographic locality of the parties and corresponding applicable state law all disfavor centralization.

## IV. CONCLUSION

Centralization would multiply the burdens on a regional insurer such as Society and its local policyholders and should be denied because it would not increase judicial efficiency or promote the parties' interests. And existing authority makes clear that insurance coverage disputes such as these are generally not appropriate for consolidation under 28 U.S.C. § 1407 given the significantly disparate facts involved and how much contract interpretation demands individual consideration of the applicable terms and conditions of each agreement. For the reasons set forth above, Society Insurance respectfully requests Movants' Motions to Transfer be denied.

Dated: June 2, 2020

Respectfully submitted,

CROWELL & MORING LLP
Laura A. Foggan
April N. Ross
Austin J. Sutta

/s/ Laura A. Foggan

Laura A. Foggan
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
Telephone: (202) 624-2774
Facsimile: (202) 628-5116
lfoggan@crowell.com

*Attorney for Defendant Society Insurance Company*

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | ) ) ) ) ) ) | MDL No. 2942 |

**PROOF OF SERVICE**

In compliance with the Rule 4.1(a) of the Rules and Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on June 2, 2020 a copy of the foregoing "Notice of Appearance" was electronically filed with the Court's CM/ECF system which sends a service copy to all registered parties via the Court's ECF filing system.

Respectfully submitted,

Dated: June 2, 2020

/s/ Laura A. Foggan

Laura A. Foggan

CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
(202) 624-2500
Fax (202) 628-5116
lfoggan@crowell.com

*Attorney for Defendant Society Insurance Company*

-12-