# EXHIBIT A

| | |
|---|---|
| IN RE: SOCIETY INSURANCE CO. COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2964 |
| | Master Docket No. 20 C 5965 |
| | Judge Edmond E. Chang |
| This Document Relates to All Cases | Magistrate Judge Jeffrey I. Cummings |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY AND WISCONSIN RULING DENYING MOTION TO DISMISS IN A SOCIETY INSURANCE COVID-19 BUSINESS INTERRUPTION CASE**

In light of Society's Notice of Wisconsin Ruling Dismissing Society COVID-19 Business Interruption Case (Dkt. 103-1), Plaintiffs, through undersigned Plaintiffs' Co-Lead Counsel, respectfully submit this Notice of Supplemental Authority and Wisconsin Ruling Denying Motion to Dismiss in a Society COVID-19 Business Interruption Case regarding a recent Wisconsin state court ruling. Plaintiffs state as follows:

1.      On January 29, 2021, Judge Laura Gramling Perez of the Circuit Court of Milwaukee County, Wisconsin, denied Defendant Society Insurance's Motion to Dismiss the complaint in *Colectivo Coffee Roasters, Inc. v. Society Insurance*, Case No. 2020-CV-002597 (transcript attached as "Exhibit 1"), a case in which the class-representative plaintiffs made many of the same allegations, including that "Covid created a physical danger in and around the plaintiffs' premises" (Hr'g Tr. at 42:1-10), that are at issue in the Bellwether Motions in this action and in which Society asserted many of the same arguments as it does here under its standard-form policy language.

2.      The *Colectivo* court held that the arguments presented in the Defendant's Motion to Dismiss were insufficient to warrant dismissal of plaintiffs' claims. (*Id.* at 43:14-17.) Judge Perez first

rejected Society's attempt to "conflate[ ]" the term "direct physical loss" with "damage" and found that the Society policy was ambiguous with respect to whether a "dangerous condition in the premises" triggered business interruption coverage. (*Id.* at 37:2-20.) Because such ambiguity must be construed against the insurer under Wisconsin law, the court held this ambiguity foreclosed a dismissal based on the contract language alone. (*Id.* at 37:20-24.)

3.  The Court then emphasized that factual arguments about whether there was direct physical loss or damage were not appropriate for disposition in a motion to dismiss: "Certainly the defense raises interesting and very material factual arguments, and those are arguments that I think are appropriately made at some point in this lawsuit, but it is certainly not the rule of this court at this point to resolve factual disputes . . ." (*Id.* at 43:17-22.) Specifically, the Court noted that the plaintiffs' complaint in that case, like the Bellwether Motions, included "scientific and factual" support for the allegations that "Covid was widespread and likely was present in the plaintiffs' restaurants and the plaintiffs' premises at the time of the governor's March 2020 orders." (*Id.* at 42:11-17.)

4.  Moreover, Judge Perez noted that the plaintiffs had adequately plead that Governor Evers' Executive Orders caused a physical loss of the plaintiff's property. (*Id.* at 43:25-44:2.) In a similar vein to its holding on allegations of direct physical loss, the Court emphasized that questions of whether the plaintiffs "'could still continue [their] business unabated and in another manner,' . . . again bring factual issues to bear that are not appropriately considered by this Court in connection with a motion to dismiss." (*Id.* at 44:4-10.)

Dated: February 2, 2021

Respectfully submitted,

*/s/ Timothy W. Burns*
Timothy W. Burns
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com

Shelby S. Guilbert, Jr.
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: 404-572-4697
sguilbert@kslaw.com

Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 North LaSalle Street, #3100
Chicago, Illinois 60602
Telephone: 312-899-9090
smm@cliffordlaw.com

Adam J. Levitt
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com

W. Mark Lanier
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Telephone: 713-659-5200
WML@lanierlawfirm.com

***Plaintiffs' Co-Lead Counsel***

# EXHIBIT 1

```
 1          STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY
            --------------------------------------------------------
 2

            COLECTIVO COFFEE ROASTERS, INC.,
 3          ET AL.,

 4                     Plaintiffs,          CASE NO. 2020-CV-002597

 5                     vs.

 6          SOCIETY INSURANCE,
            A MUTUAL COMPANY,
 7

                       Defendant.
 8
            ---------------------------------------------------------
 9                        MOTION TO DISMISS HEARING
            ---------------------------------------------------------
10

              BEFORE THE HONORABLE LAURA GRAMLING PEREZ,
11                         CIRCUIT COURT JUDGE
                           JANUARY 29, 2021
12

13

14
                               APPEARANCES:
15

16          JAY URBAN, Attorney at Law, appeared on behalf of
            plaintiffs via Zoom telephone conference.
17
            JANET CAIN AND HEIDI VOGT, Attorneys at Law, appeared on
18          behalf of the defendant via Zoom telephone conference.

19

20

21                         GEORGENE L. LITTLEFAIR
                            Official Court Reporter
22

23

24

25
```

1

2

3        THE CLERK:  Case Number 2020-CV-002597,

4    Colectivo Coffee Roasters, Inc., et al. versus Society

5    Insurance, A Mutual Company.  Your appearances,

6    please.

7        MR. URBAN:  Jay Urban of Urban and Taylor

8    appears for the plaintiffs in this action.  It's also an

9    allegation of a class action.

10        MS. CAIN:  Janet Cain and Heidi Vogt on behalf

11    of Society Insurance.

12        THE COURT:  Good morning, everybody.  We're here

13    today for a hearing on Society's motion to dismiss the

14    complaint.

15        Before we talk about the merits of the motion,

16    I'll note for the record that we're conducting the

17    hearing today, perhaps ironically, given the allegations

18    of the complaint, during a nationwide health emergency as

19    a result of the Covid-19 Pandemic, and because of orders

20    that have been entered by the Chief Judge of the First

21    District Circuit Court, we're not able to safely and

22    appropriately meet in person in the courthouse in order

23    to conduct our hearing.  Because of that we're conducting

24    the hearing remotely using the Zoom platform.

25        All three counsel and I are appearing using both

a video and an audio feed. Madam clerk, madam court
reporter and my law clerk are participating using only an
audio feed, and there are a number of people connected
with Society who are essentially observing today who are
appearing using either an audio feed or by telephone.

In order to insure that the hearing is open to
the public, we are streaming it live on YouTube.

Mr. Urban, I assume you don't have any objection
to proceeding in this fashion today?

MR. URBAN: No, I follow the rules.

THE COURT: Ms. Cain, I assume you don't either?

MS. CAIN: No, no objection.

THE COURT: All right. Good. So let's talk
about the motion. I have had the opportunity to review
the parties' submissions so you should know I have read
through the briefs. I may have a couple of questions for
both sides as we proceed.

But, Ms. Cain, I guess I'll turn things over to
you. Is there anything you'd like to particularly point
my attention to or emphasize or add to your brief the
arguments in your briefing?

MS. CAIN: Yes, thank you, Judge. As you know,
the plaintiffs are alleging that their business
operations were suspended due to the pandemic and the
government orders limiting their operations to take-out

1   and delivery service, and therefore they claim they are
2   entitled to coverage under the Society policies for their
3   business income losses.
4           The policies provide business income and extra
5   expense coverage when operations are suspended due to,
6   quote, "direct physical loss of or damage to covered
7   property," and as I'm sure the Court is aware that's
8   really the key term that we're here to discuss today.
9           The plaintiffs claim that the partial temporary
10  loss of use of their property is direct physical loss of
11  property and that Covid-19 was, quote, on or around,
12  unquote, their property, and it was physically damaged by
13  the presence of Covid-19.
14          Under Wisconsin law and the cases from a
15  significant majority of other jurisdictions that have
16  addressed this term, "physical loss of or damage to
17  property," the plaintiffs have not sustained either loss
18  of or damage to their property so as to trigger coverage
19  under the policies.
20          As this Court knows, one judge in Wisconsin,
21  Judge David Weber in Door County, has addressed a similar
22  situation.  He held that a governor's order regulating
23  the use of property is not a direct physical loss of
24  property.  He thoroughly analyzed the claim of
25  Al Johnson's, a restaurant in Door County, for business

income loss when it changed its business operations to take-out and delivery only due to Governor Evers' orders. And he said, "The government order is not a physical loss, and therefore Al Johnson's suspension of its operations was not caused by a physical loss."

In addition, Judge Weber said that there had been no physical event at Al Johnson's property that led to the suspension of its operations such as there was in the *Manpower* case, which was cited by the plaintiffs and which I replied to in our reply brief. In that case the court found a physical loss did exist because there was a collapse of the building that the insured's business was in, and that collapse was a physical event that created a physical barrier between the insured and its property.

Here, like in the *Al Johnson's* case, there was no physical event and no physical barrier between the plaintiffs and their properties. In fact, they continued to use their properties throughout the pandemic. The plaintiffs argue in their brief and I imagine will argue today that this case is different from *Al Johnson's* because Al Johnson's did not make an allegation that Covid-19 was present on its property, whereas they have made such an allegation here.

However, the plaintiffs can't rest on speculative allegations or legal conclusions to survive a

motion to dismiss. They must allege facts that plausibly

suggest that they're entitled to relief, and their

allegation that Covid-19 was on or around their property

and it has rendered their property unsafe and unfit for

use is nothing more than a speculative allegation and a

legal conclusion.

This Court shouldn't accept that allegation as a

well pleaded fact sufficient to survive a motion to

dismiss. However, even if it could be shown that

Covid-19 was on their premises, it wouldn't be sufficient

to show that Covid-19 caused damage to their

property. The property wasn't damaged or altered in any

way by the virus. They don't say there was a physical

event that affected their property such as in

*Manpower*. They don't allege that their property is in

need of repair due to a physical change. They don't say

that someone with Covid-19 was ever present on their

property. They don't allege how the virus physically

affected their property at all. They only say it was on

or around the property.

Courts addressing Covid-19 coverage issues in

other jurisdictions have made it clear that the virus

doesn't harm property, and other than a conclusory

allegation that their property was damaged the plaintiffs

do nothing to refute this.

For example, in the case *Uncork & Create,* which
was cited in my brief, a case out of West Virginia, the
court stated "The novel Corona virus has no affect on the
physical premises of a business." An Illinois case,
*Sandy Point Dental*, held that the Corona virus does not
physically alter the appearance, shape, color, structure
or other material dimension of property.

          And in Wisconsin the case law interpreting what
physical loss is suggests that without an alteration
there's no physical loss. Judge Weber found those
Wisconsin cases that I've cited in my brief to be
persuasive on what physical loss means. Those cases held
that physical loss means tangible destruction of property
or physical damage to property such as an alteration in
appearance, shape, color or other material dimension.
Even *Couchon Insurance*, a well known authority, states
that the requirement that the loss be, quote, physical,
closed quote, is widely held to preclude claims when the
insured merely suffers a detrimental economic impact
unaccompanied by a distinct demonstrable alteration of
property. An unfounded allegation that the virus caused
physical property damage or loss cannot be accepted
without support for this proposition, especially in light
of the many cases that it held that it simply doesn't
affect property at all.

1    Despite plaintiffs' allegation that their

2    property was unfit for use, they pointed to absolutely no

3    damage to or physical change in their property

4    whatsoever. In fact, they've continued to use their

5    property to prepare their product and to deliver their

6    product to customers. Employees continue to work on

7    their property. Customers and delivery service employees

8    are collecting orders on their property. The property

9    hasn't been affected at all. It's in the same condition

10   today that it was in the day before Governor Evers issued

11   his order. The only thing that's been affected is how

12   the plaintiffs can use the property, and that was

13   affected by a government order, not by any physical

14   change or intrusion on the property.

15       Other courts that have addressed complaints that

16   alleged that the virus was present and that it damaged

17   property and still denied coverage. For example, in a

18   recent case in Georgia, *Johnson vs. Hartford Financial*

19   *Services Group*, which is also cited in my brief, the

20   Northern District of Georgia Federal Court held that even

21   though the plaintiff alleged there was an infiltration

22   and proliferation of the virus which caused a physical

23   loss of or damage to their premises, this wasn't

24   sufficient to trigger coverage, and the court granted the

25   insurer's motion to dismiss. The court held that even if

1    it considered the mere presence of Covid-19 to be enough
2    to cause a direct physical loss of or damage to property,
3    the plaintiff still didn't state a facially plausible
4    claim.  The plaintiff never alleged that Covid-19 was
5    ever actually on their premises.  There was no allegation
6    of anyone on the premises with the virus.  The plaintiffs
7    just alleged that because of the high number of cases in
8    Georgia and the ease of person to person transmission it
9    must have been on their premises.  The court said this
10   was conjecture and speculation, and the plaintiff can't
11   rely on speculation and conjecture to survive a motion to
12   dismiss.

13        The plaintiffs' allegations in this case are
14   equally speculative, and there's no allegation that
15   anyone was on their premises at all with the virus at
16   anytime.  This case involves restaurants that had to
17   temporarily change their operations to take out and
18   delivery only because the governor ordered them to cease
19   in-person dining to stop the spread of Covid-19.  They
20   didn't cease to change their operations because there was
21   physical loss of property or physical damage to their
22   property.  There simply wasn't.  The policy requires
23   direct physical loss of or damage to property that caused
24   suspension of operations.  There's nothing physical about
25   the governor's orders as Judge Weber and so many other

courts across the country have recognized. There wasn't a fire, an earthquake, no collapse that affected the property that led to the suspension of their operations. There was simply an order.

Now, the plaintiffs have argued that there can be loss of property without damage to property. This is true in some situations, as some courts have found loss to mean permanent dispossession of property, even without any damage to the property. Here there was no permanent disposition. The governor's orders were temporary, not permanent. Furthermore, the plaintiffs were not dispossessed of their property at all. They continued to have access to it. They continued to use it. Their employees still showed up for work, even when the dining room was closed to the public. Their property was and still is in their possession. In fact, nothing prevented the plaintiffs from using their dining rooms. They just couldn't use them to serve customers. All that changed was how their property could be used for a temporary period of time.

The cases relied on by the plaintiffs that have found loss of property without physical damage to property involve some physical force or intrusion that compromises the property making it uninhabitable or unusable such as the collapse in *Manpower*, soot and smoke

from a wildfire, an accumulation of gasoline that infiltrated property or rock falls from an unstable retaining wall, all of which resulted in physical compromise to property and inability to inhabit the property. On the contrary, Covid-19 has no effect on the physical property of plaintiffs' businesses.

Furthermore, unlike those cases, Covid-19 did not make plaintiffs' property uninhabitable or unfit for use as I've already stated. They continued to inhabit the property and to use the property throughout the pandemic even though the virus was allegedly on or around the premises.

As one court recently stated, plaintiffs maintain their inability to use their property constitutes a direct physical loss. The court does not agree. Plaintiffs' loss of usability did not result from an immediate occurrence which tangibly altered or disturbed their property in some perceptible way. The order merely temporarily halted plaintiffs' business operations, and that case is *Drama Camp Productions*, 2020 West Law, 8018579, out of Alabama, decided on December 30, 2020.

Furthermore, the business income coverage is triggered when there's a direct physical loss of or damage to property, which I've explained there wasn't,

but only for the period of restoration. That period is
defined in the policy as the period of time after direct
physical loss or damage until the date when the property
should be repaired, rebuilt or replaced. Here the
plaintiffs' property did not need repair, rebuilding or
replacement due to the presence of Covid-19, the alleged
presence of Covid-19, or Governor Evers' order. This
provision would make no sense if physical damage did not
occur. A temporary partial loss of use of property, the
loss alleged by the plaintiffs here, is not something
that can be repaired, rebuilt or replaced as those terms
are commonly understood. Judge Weber made specific
reference to this clause in deciding the *Al Johnson's*
case stating, quote, repaired, rebuilt, replaced. Seems
to me that this means the loss of use without more does
not constitute direct physical loss or damage, closed
quote.

Another court applied common canons of
construction and stated, "If we construe direct physical
loss or damage to require actual harm, it gives effect to
the other provisions of the policy." Considering all
these terms of the policy together, it's clear that there
must be direct physical loss of or damage to plaintiffs'
property which requires repair, rebuilding or replacing
in order to trigger coverage. Loss of use of property

due to a governor's order is not physical loss of property, and no property needs to be repaired in order for the plaintiffs to carry on their operations. Therefore, under the clear policy language, the business income and extra expense coverages do not apply.

The plaintiffs also claim they're entitled to coverage under the civil authority coverage of the policy. They had merely alleged in their complaint that, quote, The governor's orders prohibit access to other venues and businesses in the immediate areas around plaintiffs' businesses," but do not indicate what those businesses are, where those businesses are or what type of physical damage those other businesses have allegedly sustained. There are multiple requirements to trigger civil authority coverage and plaintiff doesn't meet any of them.

First, just as the plaintiffs do not plausibly allege damage to their own property, they don't plausibly allege damage to other property. They can only speculate that Covid-19 was on their own property and can only speculate it was on other property, and they can't show that even if it was present it caused any physical damage at all.

Second, the plaintiffs can't show that any civil authority prohibited access to their property because of

1    damage to other property. They have not alleged the
2    governor's orders were issued because of damage to any
3    property, much less property that was in the immediate
4    area of their property. The orders were issued because
5    Governor Evers wanted to stop the spread of the virus
6    among groups of people. It was a ban on mass gatherings
7    telling people they were safer at home, not that they
8    couldn't go to restaurants because those restaurants were
9    physically damaged. Even if there was damage to
10   neighboring property, plaintiffs have not alleged that
11   that damage to other property led to an action by civil
12   authority to prohibit them from accessing their own
13   property. The orders were not issued in response to
14   neighboring property that was damaged.
15           Third, access to the plaintiffs' property was
16   not prohibited. The order allowed access to the
17   property. It didn't prohibit access. Limiting access to
18   a part of the plaintiffs' property for dining service is
19   not prohibiting access to their property. For these
20   reasons the civil authority coverage is not applicable.
21           The plaintiffs also claim they're entitled to
22   coverage for loss of business income under the
23   contamination coverage provisions of Society's
24   policies. Again, there are several requirements to
25   trigger this coverage which are present here. First and

1   most importantly, there was no contamination as that term
2   is defined in the policy. That term is defined as a
3   defect, deficiency, inadequacy or dangerous condition in
4   their products, merchandise or premises. It's illogical
5   to say that there was a defect, deficiency, inadequacy or
6   dangerous condition in products that they continued to
7   produce at property they continued to use on a daily
8   basis. If the plaintiffs' products were defective,
9   inadequate or presented a dangerous condition, plaintiffs
10  couldn't have continued to sell them but they did. If
11  the plaintiffs' premises were defective where there was a
12  dangerous condition on the premises, employees, customers
13  and delivery drivers would certainly not have been
14  allowed on the premises to prepare food or pick up food,
15  but they were. The possible speculated presence of
16  Covid-19 on plaintiffs' premises, which they continued to
17  use, does not meet the definition of contamination. Even
18  if it did, however, contamination must result in an
19  action by a public health or governmental authority to
20  prohibit access to the premises or production of their
21  products. That did not happen. There was no prohibition
22  of access, as I explained, and no prohibition on
23  production of their products. The governor's orders were
24  not issued because of contamination. They were issued to
25  stop the spread of virus among people.

```
 1            THE COURT:  Ms. Cain, if I could just interrupt

 2    for a moment.  Isn't one of the plaintiffs' products

 3    dine-in meal service?  Wasn't that a part of the

 4    plaintiffs' product?

 5            MS. CAIN:  I don't think that's a part of the

 6    plaintiffs' product.  I think that is one of the services

 7    that the plaintiffs --

 8            THE COURT:  So isn't it a service that they

 9    provide, then?  That's part of their business is

10    providing full-service dining services.  So you seem to

11    argue that they were able to fully continue to provide

12    their product or carry on their business, but isn't part

13    of their business allowing people to come in and sit down

14    at their tables and order food and drink and stay there

15    to consume it?

16            MS. CAIN:  That is part of their business.  I

17    can't dispute that that's part of their business, but

18    they weren't prohibited from operating their

19    business.  They were just told that they had to limit or

20    restrict the way they operated their business.  There

21    still was no contamination on the premises caused by

22    Covid-19.

23            THE COURT:  Okay.  Let me back up a little bit.

24    You're using the word "loss" -- the word "damage"

25    sometimes interchangeably here.  There in the policy
```

```
 1        there is coverage for a covered cost of loss.  Covered
 2        costs is defined as a direct physical loss.  If there is
 3        coverage, and I'm essentially describing my understanding
 4        of the policy, and then I'm going to ask you if I'm
 5        missing something.  If coverage, then, a type of loss
 6        that is compensable is direct physical loss of or damage
 7        to covered property.  So this language regarding damage
 8        to covered property really isn't language that's
 9        incorporated in the definition of the type of loss that's
10        covered.  It's really a part of the definition of the
11        damages that are compensable.  Do you understand what I'm
12        getting at?  Am I missing something somehow?  So there
13        are kind of two steps.  First of all, is there covered
14        loss?  And then the second step, if there is, what is the
15        insured able to collect for?  And my reading of the
16        policy says that to answer the question of whether
17        there's a covered loss you look at whether there's a
18        direct physical loss.  If there is, then to answer the
19        question of what losses, what damages is the insured able
20        to recover?  The answer is they're able to recover their
21        direct physical loss over damage to covered property.  So
22        there's sort of two different definitions at issue
23        here.  Am I right about that?  Do you get what I'm
24        getting at?
25              MS. CAIN:  I think so.  Under the business
```

income coverage, they're entitled to recover for the
business income due to suspension of operations caused by
a direct physical loss of or damage to property.

THE COURT: Right. So the first issue is was
the cause of this a direct physical loss?

MS. CAIN: True.

THE COURT: And your argument is essentially
that the plaintiff has not alleged and cannot allege that
they have suffered a direct physical loss, that there's
not a covered cause of loss here?

MS. CAIN: True.

THE COURT: All right. I'd like to -- so our
time is running short, and I do have a remaining calendar
today, and, as I said, I have read the parties'
submissions. So I'd like to give Mr. Urban an
opportunity to respond. I'll give you a chance,
Ms. Cain, on rebuttal briefly, but I'd like to turn
things over to Mr. Urban if I can.

MS. CAIN: Sure. And that's fine because I've
gone through the three types of coverage that they're
alleging they're entitled, and so I think this is a good
time for you to move to Mr. Urban.

THE COURT: Thank you.

Mr. Urban.

MR. URBAN: Thank you, Your Honor. So this

happens now and then, but what we have here is in the
very early stages of this case a motion to dismiss. A
motion to dismiss is a fatal sanction in a case. It says
not only is the courthouse closed to you, but you don't
even get a chance to describe what your business is. You
don't even get a chance to describe what your losses
are. It's asking you, Your Honor, to put your hand on
the scales of justice and quash it, and they're asking
you to do it, not in this case, in other cases.

So I see this debate all the time of which case
did I bring? Because I'm sitting here looking at
Ms. Cain and I'm sitting here looking at the Society
briefing and I'm sitting here looking at their policy,
and I'm saying to myself, "This ain't my case. These
ain't my clients," because they're not. My clients are
the clients that have a dine-in service only. This
business that they were all engaged in carry-out and they
could instantly flip the switch, I rejected those cases
from time to time. There has to be a situation here
where you cover your losses. I'm actually surprised, and
I know we have some Society people on the telephone
today. I'm actually surprised that Society took such
great lengths to basically corner the market on writing
policies for bars and restaurants to have such little
regard for the various different ways of how bars and

|    | restaurants work. |
|----|-------------------|
| 1  | |
| 2  | I put myself through college and law school |
| 3  | working in bars and restaurants, and what I'm hearing |
| 4  | today has very little to do with the true operations of |
| 5  | those things.  For example, we represent bars.  You can't |
| 6  | take out drinks from a bar.  So when your bar is |
| 7  | closed -- because Covid is everywhere.  Covid is in the |
| 8  | air.  Covid is worse than smoke.  Smoke you can at least |
| 9  | see where it is.  Covid is literally every single place, |
| 10 | and even if you don't have Covid, you can still transmit |
| 11 | Covid.  And in March of this year, in April of this year, |
| 12 | continuing all the way to this point, we know less than |
| 13 | ten percent about Covid, but we know it is everywhere, |
| 14 | and we know what Society's policy is.  We know it doesn't |
| 15 | have an exclusion to Covid.  It does not have a virus's |
| 16 | exclusion in its policy.  That hasn't even been addressed |
| 17 | or talked about here.  So this is an all-risk policy, and |
| 18 | they're trying to reinvent the facts that we pled because |
| 19 | we have pled -- there's two purposes, like you said, of |
| 20 | physical loss.  There's direct physical loss and then |
| 21 | there's physical damages.  Those are not interchangeable |
| 22 | and we pled both. |
| 23 | If Covid is everywhere, there's lots of ways |
| 24 | that it can be loss.  Many of my clients did not go to |
| 25 | their premises.  What did they use their open dining |

1    rooms for?  They were supposed to convert their in-house
 2    five-course hopefully someday Michelin star restaurant
 3    into a storage facility?  We didn't know back when this
 4    happened what surfaces would do.

 5          Look, Your Honor, look what pains you took in
 6    the Milwaukee County Task Force on Covid to present your
 7    rendered surfaces to antibacterialize, to put up
 8    Plexiglas so much that I've remarked, "It looks like a
 9    hockey rink in there."  And these are all of the things
10    that come out in a case factually.  That's not the case
11    that they're trying to defend against.  That's the case
12    we brought.  We've brought the case that the virus is
13    everywhere.  We cited the science in our brief, and
14    they're trying to make this Court also something that
15    you're not, Your Honor.  Are you the Court of Appeals or
16    the Supreme Court of Georgia?  Are you the U.S. Supreme
17    Court?  There is no case, no case, interpreting the
18    Society insurance policy.  Every single case that they
19    cited in their thick brief involves a different insurance
20    policy, a different restaurant, in a different state,
21    with a different set of laws.

22          We know what Wisconsin laws require, and that is
23    any, any, ambiguity in a policy about what physical loss
24    is or isn't is subject to interpretation.  The closest
25    thing we have is what Judge Edelman ordered in his ruling

1      in his case, which wasn't a Society policy.  That was an

2      ISO policy which is really important.  The Society could

3      have adopted ISO forms and had a case exactly like all

4      those other cases that it cites.  It didn't.  It chose to

5      write its own policy.

6              THE COURT:  Mr. Urban, if I could interrupt and

7      ask you two questions:  I'm confused because you're

8      referring to Judge Edelman.  Are you referring to Judge

9      Weber in the Door County case, or is there a different

10     case you're referring to that I don't have in mind right

11     now?

12             MR. URBAN:  On that particular point -- this is

13     a problem of preparation.  We put everything in our heads

14     and then we spit it out too fast.  The *Manpower* case,

15     Your Honor, the federal case, where Judge Edelman

16     addressed the direct physical loss and noted specifically

17     with that language that it can include loss of use.  I

18     was more or less responding to the question that you

19     asked Ms. Cain kind of how these things are

20     different.  It sounds like you've already appreciated the

21     difference in articulation between it's an and/or

22     proposition to the physical, not just the loss of use.

23             THE COURT:  And can I also ask:  So you say that

24     all of the other cases that have been decided sort of on

25     this issue related to Covid over the past, I suppose,

```
 1            year, nine months, involve other policies.  Do any others

 2            involve a Society policy similar to this one?

 3                      MR. URBAN:  The only case that involves a

 4            Society policy that is this same policy is the

 5            *Al Johnson's* case, and I'll address that in a moment.

 6            And nobody else has -- *Al Johnson's* case was about one

 7            business operation that I know because one of the bars

 8            and restaurants that I worked in was in Door County, has

 9            goats on its roof.  So just there it's a completely

10            different business entity.  They only asked to analyze

11            that policy, and their complaint is completely different

12            than our complaint.  We didn't plead the same things that

13            they pled.  Judge Weber in that case, which, again, it's

14            instructive.  It's another circuit court judge that

15            looked at things.  But you're not the Court of Appeals

16            judge in that case.  That judge's job was to apply this

17            policy to what *Al Johnson's* alleged, and at the end of

18            that decision the whole reason for that decision is that

19            the judge said several times throughout the

20            hearing.  They didn't plead what we pled here, which was

21            there was contamination of the premises, that there was

22            loss of use, those kind of things.  They didn't plead

23            that.  He asked them to plead it.  They didn't amend

24            their complaint ever.

25                      We analyzed this case and quoted science.  The
```

1    closest case that actually we could find about this

2    situation is the *Sentinel Management* case that we cite in

3    the Minnesota Court of Appeals. Again, general

4    authority, but if you want to look at some general

5    authority, and it talked about asbestos fibers not

6    physically altering the business structure, but there was

7    still a physical loss because of the danger of asbestos

8    and that it's airborne.

9           So we're dealing with, just like you said even

10   before we started the hearing, Your Honor, we're dealing

11   with some very specific things here, and what Society is

12   asking you to do is to assume that every single other

13   policy that they cited in their brief is Society; it's

14   not, that every single entity is *Al Johnson's*; they're

15   not, and our complaint isn't even the same complaint as

16   *Al Johnson's*.

17          Our amended complaint alleges all these things,

18   and we're only supposed to be looking at the four

19   corners, and I come into this hearing today in my Zoom,

20   and I've been to all these restaurants I represent, and

21   they don't operate in any way that the way Society is

22   saying that they operate. You even observed yourself

23   some of them are dine-in, some are other ones. Tandem,

24   who is the other named plaintiff, for example, also has a

25   World Central Kitchen component of it, so actually those

```
 1       parts of their operations in the pandemic were not
 2       affected.  So this is -- these are discussions that we
 3       have at the motion for summary judgment stage.  What
 4       we're talking about here is the heavy hand of the courts
 5       saying you're not getting the chance to explore these
 6       cases.  At the notice pleading, we pled direct physical
 7       loss.  We pled the civil authority.  They're just trying
 8       to interpret what that civil authority means.  The
 9       governor said, "Stay home."  That includes the
10       restaurateurs.  You're to stay safe, stay home, and
11       they're saying that you can just willy-nilly walk around,
12       go to your property.  I wouldn't do that.  You'd have to
13       have a gun to my head to have me eat at a
14       restaurant right now.  So this just completely is taking
15       out of context this public health crisis that we've never
16       been in before.  The closest thing we've had is the SARS
17       virus, where, by the way, a lot of those other policies
18       cited by Society put virus exclusions in their policy.
19       Society chose not to.  After SARS a whole wave of those
20       policies came to do that.  And now they want to quibble
21       with what the civil authority means and that you can just
22       show up to work.
23              I heard Society argue today that all the
24       employees just stayed.  What?  That's baffling to me.
25       These folks shut down because you have an airborne virus
```

that can go anywhere and can affect anything. It can
even transfer it out on me. And you're being asked to
impose the ultimate sanction to say we're not even going
to let the justice system consider what these losses are
and what all these hundreds and thousands of businesses
are throughout the state of Wisconsin based on the
obligations that there is a physical loss under their
individual policy. They're trying to make this case that
case, and so there's five things that they're trying to
do to make you put that hand of justice on you on the
scales.

First, they want you to change or ignore law of
a motion to dismiss which is the four corners of the
complaint and the inferences from that complaint. Notice
pleading. Did we plead the case? Yes. Did we plead
different than *Al Johnson's*? Yes. We alleged direct
physical loss and damage to the property.

Interpretation of insurance policies also is
well known, and that's an ambiguity taking these things
into consideration. Their policy has not been analyzed
before by the Court of Appeals or the Supreme Court in
this state. You are the de novo person to do that. None
of those other cases are binding because they're not in
Society and the Door County is not binding because it's
not the same case.

```
 1                    Second, they want you to compare it to that
 2      same case.  They want you to say this case is just like
 3      Al Johnson's, and it's not.  We both can read the
 4      complaint in that case and the judge said, "If these two
 5      things were pled, I wouldn't be doing this."  He even
 6      said, "I think a Court of Appeals might even have to look
 7      at me."  It was a skin-of-the-teeth decision.  I read it
 8      again this morning.  He even said, "Sometimes I have to
 9      make a close call here, but I have to make it on the four
10      corners of the complaint or the inferences from the
11      complaint."
12                    Third, they want you to change their policy to
13      be like these other policies.  We can't do that, Your
14      Honor.  Our clients pay good money for these policies,
15      and they purchased these policies that they had no hand
16      in drafting that don't have virus exclusions.  The
17      contamination clause is an all-risk policy, and they
18      defined it as direct physical loss or damage.  It's not
19      an ISO policy.
20                    And then the fourth thing that I already talked
21      about is what we've already been talking about is they
22      also want you to change the business's practices, so they
23      want to embed in their argument that the governor shuts
24      you down, have everybody show up to work tomorrow and
25      just start taking out for people.  At that point would
```

you even order something from a place? We haven't even
gotten into the whole facts of this case of all the food
product that had been spoliated because they had to leave
the process in the property. We don't know at that
point. Do you know what a restaurateur in March was
thinking? Half of my clients closed their properties
before the governor ordered it just because it was
unsafe. If you're told that there's asbestos in your
property and there's fibers in the air, a responsible
business says there's a direct physical loss on my
property here. It's in the air. It's everywhere. If we
knew we could spot it, we wouldn't be in a pandemic
because we could avoid it.

And the fifth thing that they want to do is they
want to change the civil order from the governor and use
that as their heavy hand to kick it out of court to say,
"You can still go to your property. You can still have
all your staff go to your property." Is that really what
we're dealing with here in a pandemic? That we have this
virus that's everywhere. It's airborne. It's
toxic. It's lethal. And we're just supposed to do
business as usual, turn on the spigot, and so all these
arguments that Society is ultimately making that I'm not
going to address here today, but I could, all have to do
with profitability. That's just damages. I think you

1 even noted that in your question. Well, if you can't do

2 dine-in, and could you do dine-in? Could you mitigate

3 your damages? Could you evolve your restaurant to do

4 something else?

5 Right now, for example, there's a bill pending

6 before the legislature to allow bars to serve cocktails

7 to go or your restaurants to serve cocktails to go.

8 Those are damages arguments. Those are damages for a

9 jury. Those are considerations for summary judgment.

10 That's after we have discovery. There hasn't been any

11 discovery in this case. Out of the gate there wasn't

12 even an answer. It was just denied based on the policy.

13 Most of these policies were denied within 24 hours of

14 submitting a claim. There was no investigation.

15 And so we have a virus, like I said, that is

16 absolutely everywhere. That is a physical loss. It's a

17 physical virus. It's airborne and it can't be seen, and

18 you're being asked to put the heaviest hand on the scales

19 of justice that there ever is, which is a motion to

20 dismiss to say you can't even come here and explore all

21 the allegations that you made based on the facts of this

22 case and the facts of this policy in the State of

23 Wisconsin with these laws.

24 So the closest thing we have is the Edelman

25 decision, the *Manpower* decision, that talks about some of

1    these issues, but not all of these issues, and that case
2    allowed the case to go forward because Judge Edelman
3    ruled that he rejected the ISOP's argument -- ISOP is the
4    defense insurance policy in that case -- that a peril
5    must physically damage property. He rejected that. He
6    said there could also be other types of physical losses
7    and so forth, including loss of use of the property, and
8    just because you can go to a property doesn't mean you
9    can make profit like the year before or even make money
10   like the year before. I mean, I would imagine that
11   Society has denied claims before when people tried to
12   say, "Someone stole my cappuccino machine," and then they
13   go evaluate the cappuccino machine and your cappuccino
14   machine was broken. "It wasn't our fault." It's just
15   like being in a car accident. "Oh, you damaged the
16   fender of my car." "No, that was preexisting damage.
17   That damage was there from before." This is a situation
18   that's different. This has to do with losses arising out
19   of Covid out of something that's airborne.

20       So I know that the Court has a calendar and time
21   is short. I took special attention. I did not want to
22   read. I think my key did a very nice brief. I thought
23   their brief was very good, too. It just isn't this case.
24   And so we, of course, briefed this, but I wanted to just
25   kind of highlight it for the Court some of the ways that

this case is pled and how this is really a very important

issue and an issue of very, very first impression for

3 this Court, and if I were the judge, I would want to have

4 a lot more information. And I'm not saying we didn't

5 plead enough because we did. I would be wanting to

6 consider these issues in the confines of a summary

7 judgment after there are facts, because right now the

8 facts that are being stated are the way that you're being

9 asked to interpret the policies of these facts are not

10 this policy, and they're not the way that these

11 businesses operate. Maybe some of them, and maybe those

12 cases will get rejected down the road. For example, I

13 don't represent any -- we made some class allegations,

14 but if somebody has a property that is just a

15 drive-through -- like the McDonalds drive-through window,

16 yes, you can eat in the property, but if you can

17 immediately pivot to being something else, those are

18 damages arguments, extent of damages arguments.

19 THE COURT: Thank you, Mr. Urban.

20 Ms. Cain, anything briefly on rebuttal?

21 MS. CAIN: Just briefly, Judge. I did refer the

22 Court several times to the standard on a motion to

23 dismiss and the *Data Key Partners* case in Wisconsin is

24 one we cited in our brief, and it pretty much sets forth

25 in detail what the Court is looking for on a motion to

dismiss and what the plaintiff needs to do. And he has to make well pleaded allegations that establish that he's entitled to the relief that he's seeking.

Mr. Urban was talking about things that he says are not in this case. What I can tell you is that many, many of the decisions cited in my brief and that have been rendered across this country do interpret the exact same language as is in the Society policy, that being the business income coverage language requiring direct physical loss of or damage to property.

What I heard from Mr. Urban was that the virus is everywhere, and what I didn't hear from him is how that causes damage to property or how a government order causes a loss of property. And I think that it's clear from Judge Weber's decision that a government order doesn't constitute a loss of property, and I realize that Judge Weber is another circuit court judge in Wisconsin, but he is the only judge thus far who has interpreted this type of language in a policy. He looked at Society's policy in great detail, and here we're asking this Court to look at Society's policy as well as the allegations they pled in their complaint to see if those allegations measure up. And based on the fact that the virus doesn't cause physical damage and the fact that there was no loss of property in this case the plaintiff

1    cannot survive a motion to dismiss.

 2            I just want to speak briefly about *Manpower*, and

 3    I did talk about it initially, but Mr. Urban claims that

 4    that is the case that this Court should look as most

 5    similar.  That case is not similar to this case because

 6    in that case there was a physical event, a collapse that

 7    caused physical damage, and that's why the insured in

 8    that case couldn't use their property.  The court

 9    specifically said there was a physical event, a collapse,

10    that caused a barrier between the plaintiff and his

11    property.  We have nothing like that here.

12            And, lastly, plaintiff talks about how some of

13    his clients or maybe even all of his clients did not do

14    take-out and delivery.  He didn't plead anything about

15    that in his complaint, and we're left with the case that

16    has Colectivo as a plaintiff, which, as I understand it,

17    is primarily a coffee and pastry-type business that

18    clearly could have served customers with take-out and

19    delivery despite the fact that they may not have been

20    allowed to have customers dine in at their restaurant.

21            I think if the Court just looks at the

22    allegations of the complaint and the language of the

23    Society policy, it should find, as most other courts have

24    found, that interpreted similar or exact same language

25    that there was no physical loss of or damage to property

1      and that's fatal to plaintiffs' claim.

2              Thank you, Judge.

3              THE COURT:  Thank you, Ms. Cain.

4              I'd like to go off the record for a moment and

5      talk about how to proceed today.  So, madam court

6      reporter, we're off the record.

7              *(Off the record.)*

8              THE COURT:  We're back on the record.  First of

9      all I just want to commend counsel on both sides.  I

10     thought that the briefing and the argument were excellent

11     on this.  This is certainly an interesting and somewhat

12     novel case, and I thought that both sides have done a

13     really excellent job of presenting your side.

14             This is a motion to dismiss, and we're all well

15     aware of the legal standards on a motion to dismiss.

16     Ms. Cain references the *Data Key Partners* case and that

17     is certainly sort of a leading case on the standard.  A

18     motion to dismiss for failure to state a claim tests the

19     legal sufficiency of the complaint.  Plaintiffs must

20     allege facts that plausibly suggest that they're entitled

21     to relief, and that's under *Data Key Partners vs. Permira*

22     *Advisers, LLC*, which is 356 Wis. 2d 665 2014 State

23     Supreme Court case.  I note, however, that in reviewing a

24     motion to dismiss I'm required to accept as true all well

25     pleaded facts alleged in the complaint along with all

```
 1    reasonable inferences from those facts, and that's under
 2    both Data Key Partners and Kaloti Enterprises, Inc. vs.
 3    Kellogg Sales Company, which is a 2005 State Supreme
 4    Court case, 283 Wis. 2d 555.
 5              I am required to dismiss the claim only if it is
 6    quite clear that under no conditions can the plaintiff
 7    recover.  That's under Casteel vs. McCaughtry, 176 Wis.
 8    2d 571, a 1993 State Supreme Court case as well as myriad
 9    other cases, no doubt.
10              I also consider other important legal
11    consideration here.  The first is that it is a pretty
12    standard aspect of contract law that any ambiguity in a
13    contract is to be resolved against the drafter, and in
14    Wisconsin certainly insurance contracts should be read to
15    give the broadest possible coverage to the insured,
16    again, resolving any ambiguities in favor of the insured
17    and against the insurer who is, in fact, always the
18    drafter of the policy or at least typically the drafter
19    of the policy.  Here, while I believe the defense raises
20    a number of very interesting and perhaps ultimately very
21    fruitful defenses, both in terms of the meaning of the
22    policy language in this case and the facts surrounding
23    the Covid-19 Pandemic in Milwaukee and how it affected
24    the plaintiffs in this case, I do not believe that the
25    defendants have established what they need to establish
```

in order to achieve a dismissal of the case at this
point.  I believe it's too early and I believe that the
plaintiff has offered well pled allegations that
certainly resolving any inferences and any ambiguities in
the plaintiffs' favor as I must at this point, are
sufficient to state a claim in this case.

So first let me talk about some of what I see as
the ambiguities in the policy language.  On the policy
language applies here only if there is a covered cause of
loss.  So there's only coverage if there's a covered
cause of loss, and that is defined in the policy as
direct physical loss.  Direct -- and essentially the
defense argues that there's no direct physical loss
that's been pled here, and therefore the plaintiffs' case
must fail at this point.  Direct physical loss is not a
term that's defined in the policy.  And in this case --
and I don't think it's entirely clear what it means at
this point.  Here, defense counsel has both in its
briefing and during today's argument has often conflated
the term "direct physical loss" with "damage."  So
essentially asserts that direct physical loss is to be
some kind of physical damage to the property.  If you
look, though, elsewhere in the policy, there is a second
sort of definition or separate policy language that
states that the insurer will pay for loss of income, for

example, that is due to direct physical loss of or damage to covered property. So elsewhere in the policy there's a definition or use of the term "direct physical loss" used as well as the term "damage" to the covered property. So it would seem that looking at that direct physical loss must be something other than damage or the use of the word damage in that policy language would be surplus language, and one does not construe contract language so as to allow any of the material language to be surplus language. So I don't think that it's so clear that direct physical loss actually requires damage to the covered property.

I think that other terms in the policy are also somewhat ambiguous, including the question of what is a dangerous condition in the premises? That language is contained in the contamination clause, and an issue that didn't receive a lot of attention in the briefs and I think received almost no attention in today's arguments the meaning of the language contained in the exclusions in the policy. So I think that there is various ambiguous language in the policy that under Wisconsin law is to be construed against the insurer and that I think forecloses a dismissal today based on that contract language.

I think that discovery is necessary before sort

1   of discovery and perhaps further briefing applying the

2   particular facts of this case to the policy language are

3   necessary before the Court makes a decision ultimately as

4   to whether the policy language applies to the

5   circumstances here.

6           In talking about -- speaking of applying the

7   policy language to the circumstances here, you know, I

8   think Mr. Urban has sort of put his finger on the issue

9   here.  Each party states a number of cases around the

10  country, both in connection with Covid-19 and business

11  losses, both those recent cases and other cases involving

12  other types of business losses.  So the parties have

13  cited myriad cases from throughout the country holding

14  that certain types of losses are or are not covered under

15  certain policy language.

16          I would say the very fact that there are many

17  cases coming out in many different respects on these

18  types of issues illustrates the fact that the legal

19  issues to be decided here tend to be pretty fact

20  specific.  You tend to look pretty carefully at the

21  specific policy language and the specific facts, the

22  specific type of loss and type of damages as a result of

23  that loss at issue in the case.

24          I think the fact that there are so many

25  different cases that each party has been able to find

1    from all over the country to try to illustrate its case

 2    simply demonstrates that this is an issue that needs to

 3    be decided on a motion to dismiss, that the issues around

 4    the nature of the policy language here and the particular

 5    facts present here are such that the case is not amenable

 6    to decision on a motion to dismiss.

 7            And I note, in particular, that the parties sort

 8    of differ regarding the upshot of the *Manpower* case and I

 9    think part of the reason for that difference is that it's

10    not clear whether this case, the degree to which this

11    case is like the *Manpower* case or not like the *Manpower*

12    case and what aspects of the holding in *Manpower* are

13    really applicable here, and I think it's difficult to

14    make those decisions without factual discovery and

15    without an opportunity to develop the facts in this case,

16    both on the part of the plaintiff and on the defense.

17            I think that certain case law that's been cited

18    isn't particularly helpful at this point in the

19    litigation.  For example, the defense cites the *Wisconsin

20    Label Corp.* case which basically holds that the word

21    "physical" has a meaning that it's not surplusage, that

22    it means physical.  And I don't disagree that in the

23    policy here the word "physical" has meaning, but I don't

24    believe that the *Wisconsin Label Corp.* particularly

25    instructive at this phase in the case regarding what the

meaning of the term "direct physical loss" is in connection with this particular insurance policy.

Similarly, I'll note just sort of as an another example, the defense offers the *General Casualty vs. Rainbow Insulators* case which basically said that the term "physical injury to tangible property is unambiguous," but that is a different phrase. That's a different term than the one used in the policy here, so while the word "physical" used together with "injury to tangible property" may well be unambiguous in connection with the policy at issue in the *General Casualty Company* case, I don't believe that the holding in that case is particularly instructive in this one where there's really entirely different policy language.

You know, and just to remark on the county case. That's certainly an interesting and not unimportant case in the context of this one, both because it involves another policy issued by the defendant in this case and because it's the only other case that's been decided on this issue so far in the State of Wisconsin, and I certainly have all respect for my colleague Judge Weber in Door County. I don't believe that it is necessarily clear -- and, first of all, obviously, we all know he's another circuit court judge. His decision is by no means binding on me, both because it's not published as circuit

1    court decisions in Wisconsin never are, and because he is
2    not an appellate court that is at a higher level than I
3    am, but I certainly do take into account the decisions
4    that my colleagues make. I think that it's important to
5    consider the analysis and the logic brought to bear by
6    other people who have looked at these issues. I don't
7    believe that it's particularly clear that Judge Weber's
8    analysis applies in this case partly because although the
9    policy language may be the same, I don't believe the
10   allegations are necessarily the same. And I will admit
11   that I have not had the opportunity to go back and pull
12   out the complaint in that case and sort of parse through
13   it and compare it to this one, but I think it is likely
14   that the allegations are different in many respects.
15          And, in any case, I do, as I've sort of alluded
16   to you already, I do believe that to make a ruling at
17   this point, at the motion to dismiss phase, concerning
18   the meaning of the policy language and the strength, I
19   should say, of the plaintiffs' allegations in its type of
20   loss, I think necessarily requires some degree of
21   resolution of ambiguities, including resolution of
22   ambiguities in favor of the defense and decision on
23   certain factual issues, neither of which I think are
24   appropriate, and I think we would all agree that neither
25   of which are appropriate on a motion to dismiss.

So looking at plaintiffs' allegations, I do think that the plaintiff has included certain well pled allegations that state a claim in this case. They include allegations that Covid created the physical loss, essentially the dining area, that Covid created a physical danger in and around the plaintiffs' premises, and the defense essentially argues that these allegations are speculative, and therefore they are not well pled allegations that this Court should consider on a motion to dismiss.

However, the plaintiff includes several pages of scientific and factual allegation to support that allegation, that, in fact, Covid was widespread and likely was present in the plaintiffs' restaurants and the plaintiffs' premises at the time of the governor's March 2020 orders in this case. And so I don't believe those allegations are speculative at this time.

And I should note -- and I do want to sort of note as an aside the defense has cited certain cases from other states that essentially stand for the proposition that the presence of microbial or viral contamination cannot be considered a physical loss. I don't think those cases are necessarily applicable here. Here Covid presents or potentially presents a particular type of harm in that it's not something that's sort of present on

1    the surfaces of premises or in the HVAC equipment in

2    premises can be cleaned and then that's that.  It is a

3    contamination that potentially comes into the dining area

4    with any given patron of a restaurant or eating

5    establishment and sort of is newly present potentially

6    with anybody who comes in and sits down and takes their

7    mask off and enjoys their meal while perhaps talking with

8    their friends or family.  So at this point I don't think

9    that we can definitively say that we must follow other

10   cases that hold that to sort of the presence of microbial

11   or viral contamination that can be cleaned and dealt with

12   forecloses a claim for loss to the eating area in this

13   case, to the dining area.

14         So I don't believe that the allegations that

15   there was an actual physical loss, a direct physical loss

16   of at least a portion of the covered premises, are

17   speculative at this point.  Certainly the defense raises

18   interesting and very material factual arguments, and

19   those are arguments that I think are appropriately made

20   at some point in this lawsuit, but it is certainly not

21   the rule of this Court at this point to resolve factual

22   disputes, and so I don't believe that the defendant's

23   factual arguments are really appropriately taken up at

24   this point.

25         I also think that the plaintiff has at least

1    potentially alleged that the governor's order caused a

2    physical loss of its dining areas.  The allegation is

3    that the governor prohibited dining in any restaurants,

4    and although the defendant essentially says, "Well, that

5    wasn't really a physical loss of those areas.  You could

6    use those areas for other things.  You could still

7    continue your business unabated and in another manner,"

8    those again bring factual issues to bear that are not

9    appropriately considered by this Court in connection with

10   a motion to dismiss.

11          Finally, I would note that among other things I

12   think the plaintiff has appropriately alleged that the

13   presence of or the potential for Covid in the room

14   created a dangerous condition that caused the closing of

15   the dining room.  It may have caused the closing of the

16   dining room on the plaintiff or plaintiffs' own action,

17   may have caused the closing of the dining room as a

18   result of the governor's order, but I do think there are

19   allegations that would bring the contamination clause in

20   the policy to bear because I think there are allegations

21   that there was a potential and that there is a potential

22   for Covid and that that created a dangerous condition in

23   the premises.  I want to make clear that it is not my job

24   in connection with a motion to dismiss to resolve

25   conflicting factual or conflicting legal arguments.

There are arguments that the defense has made that may
well bear fruit down the road in connection with perhaps
limiting a class, perhaps in connection with summary
judgment, and perhaps if the case gets this far in
connection with argument concerning how I should instruct
the jury in connection with these claims, but I do
believe that the complaint contains well pleaded
allegations that if proven true would feasibly allow a
right of recovery for the plaintiffs, and so I will
decline to dismiss the case at this time.

With that, Mr. Urban, would you be so kind as to
submit a proposed order for my signature?

MR. URBAN: Yes, and customarily I just say for
the reasons in the pleadings and the reasons on the
record and I can even share that with Ms. Cain and her
team in advance. I just don't like to quibble.

THE COURT: No, I agree. I would prefer to keep
it simple and state that it's for the reasons stated on
the record. You can either just submit it under the
five-day rule or with a letter saying you've shown it to
defense counsel and they approve as to the form.

So, with that, I think we need to make clear
when the defense will file an answer to the complaint.

Ms. Cain, is ten days enough or would you ask
for more time?

```
 1            MS. CAIN:  I'd like a little more time than
 2   that, Your Honor.  Could we have, say, 21 days?
 3            THE COURT:  That's fine.  Why don't we say
 4   March 1st, just to give you kind of a round date?
 5            MS. CAIN:  That's fine.
 6            THE COURT:  Mr. Urban, I assume you'd have no
 7   objection to that?
 8            MR. URBAN:  No, not on those kind of things.
 9   And I will say, even in this case, we sort of grant each
10   other some extensions and so forth so I prefer to
11   practice that way.
12            THE COURT:  Absolutely.  I do want to get us
13   moving because I do have another case waiting for me, so,
14   Mr. Urban, if you could include in your proposed order
15   that the defendant shall file an answer by March 1st that
16   would be great.
17            Let's set a scheduling conference in late March,
18   early April somewhere.  And here's where madam clerk is
19   frantically looking at my calendar trying to figure out
20   where she can fit something in.
21            Although, we had that jury trial go away and
22   perhaps set it that week.
23            THE CLERK:  We can do a scheduling
24   conference.  How is Thursday, March 18th at 9:00 a.m.?
25            THE COURT:  Would that work for everybody?
```

| | |
|---|---|
| 1 | MR. URBAN: I have an 8:30 motion by Zoom in |
| 2 | Dane County. I would think it would be over by 9:00. |
| 3 | Can we do 9:30? |
| 4 | THE CLERK: 9:30 a.m. |
| 5 | MS. CAIN: That's fine, too. |
| 6 | THE COURT: You sure that's enough time, |
| 7 | Mr. Urban? |
| 8 | MR. URBAN: You could give me more time. I just |
| 9 | don't know if courts run behind. |
| 10 | THE CLERK: Can we set it at 10:30? |
| 11 | MR. URBAN: That's good. |
| 12 | MS. CAIN: That's fine. |
| 13 | THE COURT: Let's make it 10:30 just so we don't |
| 14 | run the risk of falling behind if Dane County is behind |
| 15 | or there are Zoom issues or it runs long as today's |
| 16 | did. Anything else today? |
| 17 | MR. URBAN: No, nothing from plaintiffs. |
| 18 | MS. CAIN: Nothing from us. Thank you. |
| 19 | THE COURT: Excellent. Thank you, everybody. I |
| 20 | hope you all have a good weekend. |
| 21 | MS. CAIN: Thanks. You, too. |
| 22 | MR. URBAN: Bye. |
| 23 | THE COURT: Bye. |
| 24 | *(Proceedings concluded)* |
| 25 | |

STATE OF WISCONSIN      )
                        ) S.S.
COUNTY OF MILWAUKEE     )


         I, GEORGENE L. LITTLEFAIR, C.S.R., an official

court reporter, in and for the Circuit Court of Milwaukee

County, do hereby certify that the foregoing is a true

and correct transcript of all the proceedings had and

testimony taken in the above-entitled matter as the same

are contained in my original machine shorthand notes on

the said trial or proceeding.



                    Dated February 1, 2021



                    Georgene L. Littlefair
                    *(Electronically Signed)*