**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: SOCIETY INSURANCE CO. COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION <br><br> This Document Relates to All Cases | MDL No. 2964 <br><br> Master Docket No. 20-cv-5965 <br><br> Judge Edmond E. Chang <br><br> Magistrate Judge Jeffrey I. Cummings |

**CLASS PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION FOR CERTIFICATION OF A LIMITED FUND CLASS**
**PURSUANT TO FED. R. CIV. P. 23(b)(1)(B) AND APPOINTMENT**
<u>**OF CLASS REPRESENTATIVES AND CLASS COUNSEL**</u>

**Dated:**  August 24, 2021

Class Plaintiffs submit this reply in further support of their motion for certification of a limited fund class pursuant to Rule 23(b)(1)(B).[1] (Motion, Dkt. 214; Memorandum, Dkt. 215).

## **INTRODUCTION**

In their opening motion, Plaintiffs made an evidentiary showing that the business interruption losses of the more than 25,000 Society policyholders with Special Property Coverage insurance likely exceed, by a generous margin, the resources at Society's disposal to cover those losses. Indeed, even when risk-adjusted by 50% (an adjustment the Supreme Court has held to be unnecessary),[2] Plaintiffs' accounting puts Society's funds at just 23% of the proposed Class members' losses. Dkt. 215 at 2, 15–19. Society claims that this accounting is inaccurate, but fails to provide an alternative one or, indeed, offer any solution to the fundamental problem bedeviling this litigation: that there are simply not enough funds available to cover the anticipated losses. Alternatively, Society, along with the Individual Plaintiffs, propose deferring class certification until further discovery can be conducted. Not only is such discovery unnecessary in light of the clear shortfall in Society's funds, but allowing additional time for Society to deplete its funds through individual settlements would also defeat the whole purpose of Rule 23(b)(1)(B) class certification: to ensure that all class members are treated fairly and equitably. This is the paradigmatic case calling for certification of a limited fund class, and Plaintiffs' motion should therefore be granted.

---

[1] For brevity, Class Plaintiffs are also simply referred to herein as "Plaintiffs," but that reference in this brief does not include the Individual Plaintiffs.

[2] In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Court held that when determining whether a fund is limited, the claims should be "set definitely at their maximums." *Id.* at 838.

## ARGUMENT

Although Society and Individual Plaintiffs argue that Plaintiffs have not satisfied their burden of proof under Rule 23, many of the facts critical to the question of class certification remain undisputed. As discussed below, there can be little question that: (1) Society sold business interruption coverage to proposed Class members; (2) the COVID-19 pandemic and related closure orders wreaked havoc on businesses nationwide; (3) policyholders made claims pursuant to Society's Business Interruption and Extra Expense provisions; and (4) Society has not paid those claims. Society takes issue with the extent to which Class members' businesses were detrimentally affected, but class certification is not "a dress rehearsal for the trial on the merits," and those questions need not be resolved pre-certification. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376–77 (7th Cir. 2015) (the Court should weigh competing evidence and resolve threshold disputes before certifying the class when there are "*material factual disputes* that bear on the requirements for class certification") (emphasis added). Here, there are no material factual disputes that preclude certification.

## I. Plaintiffs Have Satisfied Rule 23(a).

### A. The proposed Class is sufficiently numerous because joinder of all members would be impracticable.

Society's chief complaint as to numerosity is that Plaintiffs do not identify precisely how many Society policyholders fall within the proposed class definition. But, as Society correctly recognizes, the numerosity requirement is not a "counting exercise, but rather, focuses on the infeasibility of joining all members of the proposed class." Dkt. 240 at 4. This Court has consistently found that joinder of forty or more plaintiffs would be sufficiently impracticable to warrant class certification, even when the exact number is unknown or disputed. *Schneider v. Ecolab, Inc.*, No. 14 C 01044, 2016 WL 7840218, at *3 (N.D. Ill. Sept. 2, 2016); *Starr v. Chi. Cut*

*Steakhouse, LLC*, 75 F. Supp. 3d 859, 871 (N.D. Ill. 2014).  And while Plaintiffs bear the burden of showing their proposed class is sufficiently numerous, they "need not make that showing to a degree of absolute certainty."  *Bell*, 800 F.3d at 377.  Instead, the Court can rely on common sense and good faith estimates to determine whether an estimate of class size is reasonable.  *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011).

The undisputed facts here are telling.  Society has not disputed that 25,249 of its policyholders had business interruption coverage in effect during 2020.  It has not disputed that "virtually every restaurant in every community has been impacted" by the COVID-19 pandemic and related closure orders.[3]  And, it has not disputed that there are more than 40 plaintiffs among the bellwether plaintiffs alone.  Instead, Society urges that not every policyholder who purchased business interruption coverage will meet the class definition because some businesses—like grocery stores and pharmacies—were exempted from closure orders and allowed to remain open as essential businesses.  But Society is missing the forest for the trees.  Even if Society correctly contends that not all 25,249 policyholders will ultimately fall within the class definition, the fact that a number large enough to make joinder impracticable *will* be included is undeniable.  The Court is acutely aware of the breadth and severity of the damage caused by COVID-19 and related closure orders on the business community.  Common sense, along with the undisputed facts, compel the conclusion that Plaintiffs have satisfied their burden here.

**B.    The proposed Class members' claims share common questions of law and fact.**

Next, Society argues that Plaintiffs have not established commonality because Class members' claims will vary by type of business, locality, and applicable closure orders.  But the

---

[3] *See* Ex. 1 to Dkt. 215; National Restaurant Association Releases 2021 State of the Restaurant Industry Report (Jan. 26, 2021), available at https://tinyurl.com/b7dt3tsm.

commonality inquiry looks to Society's common conduct, and *not* Class members' individual circumstances. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (commonality is found when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members."). Here, all of the Class's claims are premised on Society's uniform denials of Business Income and Extra Expense claims. Common questions related to the interpretation and application of Society's policy provisions, which formed the basis of those denials, are central to all of the Class members' claims and are readily susceptible to classwide resolution.

As this Court has recognized, varying degrees of injury suffered by Plaintiffs and the other Class members are not a barrier to a finding of commonality because "individual variability in *injury* is taken into account at the *damages*, rather than the liability, phase of a case." *Rogers v. Sheriff of Cook Cty.*, No. 1:15-CV-11632, 2020 WL 7027556, at *4 (N.D. Ill. Nov. 29, 2020) (emphasis in original). Society's ardent reliance on comments made by counsel for the Individual Plaintiffs is misguided for this exact reason; it ignores that all claims, regardless of the amount of individual damages, are predicated on and are traceable to Society's common conduct.

Although Society relies on *Dukes* for the proposition that dissimilarities among class members can sometimes defeat commonality, this Court has clarified that "*Dukes* requires a common injury and a common answer only in the sense that class members' injuries are all allegedly caused by the *same conduct* of the defendant and can be answered with the *same liability* decision." *Id*. (emphasis in original). More importantly, there is no requirement that every question necessary for resolution be common to all class members. *Bell*, 800 F.3d at 379 ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class."). In light of the questions that are clearly common to all

Class members' claims—including, *inter alia*, the questions relating to Society's interpretation and blanket denial of its uniform insurance contracts discussed above—Plaintiffs have readily met their commonality burden here.

### C. The proposed class representatives' claims are typical of the Class's claims as a whole.

As to typicality, Society largely reiterates its commonality argument to suggest that factual differences among individual Plaintiffs preclude certification. But "factual variations will not destroy typicality" when Plaintiffs' claims "have the same essential characteristics as the claims of the class at large." *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 157 (N.D. Ill. 2020). As discussed above, Plaintiffs have established as much here.

Society's contention that differing defenses among Class members "defeat the typicality prong" is similarly flawed for at least two reasons. First, Society's cited authority supports the opposite conclusion. Society relies on *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) for the proposition that "class action defendants have a due process right to raise individualized defenses against each class member." Dkt. 240 at 9 (citing *Mullins*, 795 F.3d at 671). Yet *Mullins* also holds that the availability of such defenses will not preclude certification. *Id.* ("It has long been recognized that the need for individual damages determinations at this later stage of the litigation does not itself justify the denial of certification."). "As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Id.*

Second, this Court has recognized that typicality "is determined with reference to a *defendant's actions*, not with respect to specific defenses a defendant may have against certain class members." *Zollicoffer*, 335 F.R.D. at 157 (emphasis added). Stated differently, Society's available defenses do not enter the equation at this stage. The present question is whether Class

members' claims arise from the same course of conduct and are based on the same legal theories. *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *6 (N.D. Ill. Aug. 29, 2016). Because both of those criteria are met here, Plaintiffs' claims are typical of the Class's claims as a whole.

> **D.** **The proposed class representatives and proposed class counsel will fairly and adequately protect all Class members' interests.**

Finally, Society challenges both the adequacy of the class representatives and the adequacy of class counsel. At this stage of litigation, the Court is familiar with both.

In arguing against the adequacy of the proposed class representatives, Society relies exclusively on cases where the representatives either had radically divergent interests from the remainder of the class or demonstrable credibility problems. *See* Dkt. 240 at 9. Neither of those concerns are present here. And, if at some point they presented themselves, nothing would prevent the Court from taking appropriate action. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 187 n. 11 (N.D. Ill. 1992). Moreover, there should be little doubt as to the adequacy of class counsel. When assessing adequacy of counsel, courts consider "counsel's work on the case to date, counsel's class action experience, counsel's knowledge of the applicable law, and the resources counsel will commit to the case." *Savanna Grp. v. Truan*, No. 10 C 7995, 2013 WL 626981, at *7 (N.D. Ill. Feb. 20, 2013) (quoting *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n. 7 (7th Cir. 2013)). All of those factors weigh in favor of certification here. Through the course of this litigation, Co-Lead Counsel have shown they are "qualified, experienced and able to conduct the litigation." *Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (citing *Scholes*, 143 F.R.D. at 186); *see also* Dkt. 40, 55. Plaintiffs have thus satisfied all of the Rule 23(a) criteria.

## II.     Plaintiffs Have Satisfied Rule 23(b)(1)(B).

### A.     Insurance companies are not excepted from Rule 23(b)(1)(B).

Society argues that insurance companies are exempt from limited fund treatment but identifies no provision in Rule 23(b)(1)(B) and no cases that establish that exemption. Rule 23 itself makes no industry-specific distinctions, of course, and there is no dispute that state insurance law does not regulate common law contract disputes between policyholders and insurers. Moreover, this case is not preempted by federal or state law. Society, however, relies on the mere fact of state regulation to preempt it from Rule 23(b)(1)(B) in this breach of contract case. Dkt. 240 at 12. Society provides no case law in support of its position, Dkt. 240 at 12, *because no such case law exists*.

Society opportunistically singles out limited fund class actions for insurance industry exemption. However, Society's theory that a limited fund class action could consume all available funds of an insurance company is equally true for all class actions. Indeed, Society faces the same massive shortfall if the class is certified under *any* of Rule 23(b)'s provisions. The difference is that the limited fund class protects all policyholders, while non-mandatory classes allow Society to favor some policyholders at the expense of others.

The rhetorical heart of Society's motion is the second sentence of Society's Introduction, which completely misrepresents what Plaintiffs seek by their motion: "[Plaintiffs] purport to lay claim to all of Society's assets, substituting their judgment for the determination of the Wisconsin Insurance Commissioner, which oversees Society's financial condition, ignoring the existence of state guaranty funds, and otherwise attempting to elevate their interest above those invested in the ongoing operation of Society's business and the rights of other policyholders." Dkt. 240 at 1. No, no, no and no. Society knows better, and the slightest glance at Plaintiffs' motion shows that Plaintiffs do nothing of the sort.

*First*, Plaintiffs make no effort to lay claim to the entirety of Society's assets. Since the beginning of this case, Plaintiffs have recognized that Society is an ongoing insurance concern and that it is in everyone's interest for Society to remain as such. In fact, Plaintiffs seek to resolve this case in a way that will also allow Society to maintain its current financial ratings—because, for Plaintiffs and the other proposed Class members to be fully compensated, Society will likely have to make payments over a number of years, and Society's ability to do so is tied to its ability to continue to sell insurance, which, in turn, is tied to its financial ratings. *See* Dkt. 215 at 2–3, 17–20. Far from seeking all of Society's assets, Plaintiffs are merely seeking to ensure that the limited assets that Society has available to pay Plaintiffs and the other Class members' COVID-19 business interruption insurance claims are equitably divided among the claimants. *Id.* at 1–2, 17–20 (addressing Society's reinsurance, its remaining capital after accounting for the assets Society must maintain to satisfy its insurance regulators of its solvency, and the reserves Society has established for non-COVID-19 claims by its policyholders).

*Second*, Plaintiffs' proposed limited fund accounts for Society's need to maintain a certain level of assets to avoid supervision by insurance regulators. *Id.* at 17. Plaintiffs recognize that the outer bounds of the limited fund must keep Society above the "the authorized control level" necessary to satisfy regulators. *Id.* at 17–18. Thus, Plaintiffs' motion does not, in any way, thwart the Wisconsin Insurance Commissioner's stated requirements for maintaining the solvency of a Wisconsin insurance company.

*Third*, because Plaintiffs' Motion does not impinge upon Society's required financial wherewithal, the concerns of state guaranty funds similarly are not involved. *See id.* at 17–19.

*Finally*, Plaintiffs' proposed limited fund, by definition, recognizes and respects that Society has set aside reserves to pay its policyholders' non-COVID-19 claims. *Id.* at 17. Plaintiffs,

in no way, are attempting to invade those reserves. Thus, Plaintiffs' motion does not elevate its interest above the rights of Society's policyholders' other claims.

Society's rhetoric, although completely off the mark, does make one thing clear: Society's financial condition is such that not even Society can contend that it has anything approaching sufficient free assets to pay the Class's claims. Otherwise, why the concern with insurance regulators on Society's part? Why the concern with guaranty funds on Society's part? Society's response confirms that this is a limited fund case that requires the very type of class certification that Plaintiffs seek here.

**B.      Society offers no facts to rebut insufficiency.**

The Court may consider unliquidated claims in assessing the insufficiency of Society's funds. Although Justice Souter referred to liquidated claims in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999), he left room for unliquidated claims if they are ascertainable, as they are here. As the Fourth Circuit observed:

> [I]n assessing the first condition set forth in Ortiz, the Supreme Court commented that although the Ortiz district court essentially found that the damages were unliquidated and unascertainable for the subset of plaintiffs previously described, the Ortiz district court could have used experience with prior similar cases as a guide to approximate the damages figure.

*Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 174 (4th Cir. 2020). Indeed, "in the post-*Ortiz* era, federal courts have approved limited fund class action settlements involving tort claims." *Id*. (citing, with the district court's parenthetical, *Stott v. Capital Fin. Servs., Inc*., 277 F.R.D. 316, 328–29 (N.D. Tex. 2011) ("… the district court was able to reach a 'sufficiently reliable conclusion regarding the probable total of the aggregated liquid damages.'")). Thus, the presence of liquidated damages is not a *per se* test. Instead, reasonable approximation is acceptable. That is precisely what Plaintiffs have done here.

Society does not challenge the reasonableness of Plaintiffs' estimate of the average amount of policyholder claims in this case, based on the average decline in net income, which is $49,300. Dkt. 215 at 12. Plaintiffs prepared that estimate based on information available at this point in the litigation, and the estimate is suitable for the limited fund motion. It is inconceivable that policyholder claims would drop below the $146.3 million that Society has available to satisfy those claims. *Id*. at 18 (Table 2).

Society offers no alternative estimate, and no information from which to establish an alternative estimate, but challenges Plaintiffs' estimate because, *inter alia*, it is based on information from seventeen restaurants. Society, apparently, suggests that an unspecified larger sample size would be appropriate and argues that more information should be evaluated for each restaurant—apparently, a full forensic examination including line-item cost analysis, and evaluation of mitigation efforts, historical trends, and "changes in the market." Dkt. 240 at 14–15. Society's large-scale, plaintiff-by-plaintiff approach is not practical for a limited fund motion, nor is it necessary or efficient, because the fact that Society is underwater upon a finding of liability is not seriously in dispute. Instead, as Plaintiffs noted in response to Society's motion to compel broad swaths of financial and accounting data, "damages discovery should be directed at damages models as they are presented through experts during the progress of this case." Dkt. 228 at 9.

Society attempts to rebut Plaintiffs' numerical analysis as to the drastic insufficiency of funds available to pay policyholder claims, not with numerical arguments, but with procedural arguments about the development and presentation of an unspecified, future numerical analysis. Society hides behind its procedural arguments to assiduously avoid providing *any* numerical analysis of its own. Nonetheless, Society's scorched earth conduct in this litigation reveals that Society understands that this is "bet the company" litigation. Society has not, and cannot, claim

that it has sufficient funds to satisfy claims if there is a finding of liability in this case. The pragmatic reality of this case is that Society is deeply underwater, and Plaintiffs' estimates reliably confirm that reality. Additional damages models can be built after Society has complied with its discovery obligations. In the meantime, the risk of the "early feast, later famine" problem increases as each day passes.

Society makes passing reference to its reinsurance program, but merely notes that the program is described in the Report of Examination, which is discussed below (and was provided with Plaintiffs' motion, Dkt. 215-4), and Society notes the obvious fact that the reinsurance is subject to "retentions, terms, … and the applicable facts." Dkt. 240 at 16. Society does not, however, contest the reinsurance limits, which Plaintiffs included in their estimate of Society's available funds. *See* Dkt. 215 at 18 (Table 2). Because the reinsurance is already set at its maximum, Society's vague reference to retentions, etc., is irrelevant, because additional information—which Society refuses to produce—can only show that the available reinsurance is less than the policy limits, and therefore show an even greater insufficiency of funds.

Society's reliance on the Report of Examination from the Wisconsin Office of the Commissioner of Insurance to support its claim of solvency, Dkt. 240 at 15, is further undermined by that report's obsolescence. Indeed, that report reflects Society's condition as of December 31, 2019, *before the onset of the pandemic*. The report included a short statement about the pandemic as a "subsequent event," Dkt. 215-4 at 29, but did not take a stand on the likely outcome of the business interruption litigation against Society and did not assess whether Society could pay all claims if there is a finding of liability. Instead, the report merely parroted Society's own assertion that "Society does not anticipate that coverage will be triggered for these property claims requiring any loss reserves or payments." *Id*. The report made no independent assessment of Society's

assertion, but, instead, wrote down whatever Society said. Thus, while the report contains some useful information, it offers no assurance about either the likelihood or impact of a finding of liability against Society for COVID-19 business interruption claims. On this critical point, the "watchdog" neither sniffed nor barked.

C. **Society's blanket denials establish standing.**

The proposed class includes all policyholders with covered losses, both those who filed a claim and those who did not (repudiated policyholders). Dkt. 215 at 9. Society argues that repudiated policyholders must be excluded from the class, because they are purportedly "uninjured" for not having filed a claim for Society to deny. Dkt. 240 at 17. However, as the Court described the situation, Society denied claims "preemptively and *en masse*." Dkt. 131 at 8. Thus, repudiated policyholders are also injured and have Article III standing.

The law of anticipatory repudiation in Illinois, which is illustrative of the law in each state relevant to this litigation, establishes that Society's preemptive and *en masse* denial gives rise to a claim for breach of contract by all policyholders with a covered loss.

> Under Illinois law, a party commits an anticipatory repudiation when it manifests a clear, unequivocal intent not to perform under the contract when performance is due. The repudiation has to render unattainable the point of the contract. When one party has committed a repudiation, the other party can treat the contract as ended.

*Arlington LF, LLC v. Arlington Hosp., Inc*., 637 F.3d 706, 713 (7th Cir. 2011) (citations and quotations omitted). Society's repudiation relieved policyholders of any duty under the Businessowners Policies to file a claim with Society, and there is no doubt that their claims are presently disputed by Society. Indeed, Society does not claim that it has paid any COVID-19 business interruption claims for Business Income losses.

In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), the Supreme Court held that all class members must suffer "concrete harm." Society argues that Plaintiffs run afoul of this rule

by including repudiated policyholders in the proposed class. However, repudiated policyholders are not like the consumers in *TransUnion* who did not have their credit reports disseminated. Consumers without standing in *TransUnion* "did not factually establish a sufficient risk of future harm to support Article III standing." *Id*. at 2212. In contrast, repudiated policyholders have actual covered losses that, as alleged, occurred in the past, not potential covered losses that might occur in the future.

Society cites cases, mostly from outside of the states involved in this litigation, that reject standing where the plaintiff did not make a claim. Moreover, those cases are not repudiation cases and differ from this case on the legal theories and facts at issue. For example, Society relies on *Weaver v. Aetna Life Ins. Co*., 370 F. App'x 822, 823 (9th Cir. 2010), but that case did not even involve a dispute about coverage or claims, but instead concerned premium refunds for a "group policy that allegedly was not finalized." Similarly, the plaintiffs in *Impress Commc'ns v. Unumprovident Corp*., 335 F. Supp. 2d 1053, 1061 (C.D. Cal. 2003) brought, *inter alia*, a fraudulent inducement claim, and did not allege repudiation. Likewise, the plaintiff in *Anderson v. Nationwide Ins. Enter*., 187 F. Supp. 2d 447, 455 (W.D. Pa. 2002) was not the policyholder, but sought remedies based on a claim brought by the policyholder—that is not this case.[4]

**D.    Society identifies no class issues to resolve with class discovery.**

In a last-ditch effort to prolong this process and defer justice to Plaintiffs and the other Class members, Society demands class discovery if the Court believes that Plaintiffs "have provided an evidentiary basis for their motion." Dkt. 240 at 19. Society's request fails, because

---

[4] Society's declaratory judgment cases brought by insurance companies, *Kincaid v. Erie Ins. Co*., 944 N.E.2d 207 (Ohio 2010), *Atlanta Int'l Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co*., 938 F.2d 81, 83 (7th Cir. 1991), and *Northland Ins. Co. v. Crane*, 2005 WL 831282, at *2 (N.D. Ill. Apr. 7, 2005) do not involve repudiation, and the last two cases acknowledge that the threat of a demand is enough to establish standing.

its only basis for this request is its vague contention that such discovery would enable it "to obtain information that would further demonstrate why class certification must be denied." *Id*. Society does not identify any relevant and proportional topics of discovery and does not explain how discovery is likely to overcome the $476.1 million shortfall in this case. In any event, should the Court see fit to grant Society's request to conduct class discovery, any class discovery must be reciprocal; if Society is permitted discovery, so too should Plaintiffs be permitted to take discovery of, *e.g.*, the policyholder list, a list of claims made, claims filed, claims approved, claims denied, Society's assets and liabilities, and the availability of reinsurance.

## III.  Individual Plaintiffs' Concerns Should Not Prevent Class Certification.

Individual Plaintiffs are in substantial agreement with Class Plaintiffs on the suitability of class certification for proceeding with this massive multidistrict litigation. Individual Plaintiffs do not dispute that the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are all met. Individual Plaintiffs further acknowledge that they share the concerns of Class Plaintiffs underlying their request for a limited fund class, both "about Society's ability to make its policyholders' whole for their losses" and "potential collusion between Society and state court class plaintiffs that undermine this MDL." Dkt. 241 at 2, 3. Nevertheless, Individual Plaintiffs make two objections to certification under Rule 23(b)(1)(B), neither of which should prevent certification of a limited fund class here.

*First*, Individual Plaintiffs argue that class certification is premature. However, they offer no specific criticism of the showing Class Plaintiffs have already made of the insufficiency of the funds available to Society to satisfy all of the proposed class members' claims. Instead, they incorrectly assert that Class Plaintiffs have offered "no evidence" that Society's funds are limited, Dkt. 241 at 7, disregarding the detailed accounting that Class Plaintiffs offered in their motion, *see* Dkt. 215 at 16–19. As Plaintiffs discuss in Section IV.B, above, this accounting has gone

uncontested by both the Individual Plaintiffs and Society. Even if more precise accounting could be done with further information from Society (information it has so far refused to provide), Class Plaintiffs need not establish with absolute precision the limit of Society's funds. *See Baker v. Wash. Mut. Fin. Group, LLC*, 193 F. App'x 294, 297 (5th Cir. 2006) (sustaining Rule 23(b)(1)(B) certification and rejecting the argument that "the upper limit of the fund" was "not demonstrated with precision" where there was sufficient evidence that it would be exceeded by the "claims against that fund, set definitely at their maximums.'") (quoting *Ortiz*, 527 U.S. at 838).

*Second*, Individual Plaintiffs object on due process grounds to being bound by a class judgment. Class Plaintiffs agree that Individual Plaintiffs "have invested considerable time and resources retaining counsel and litigating their individual claims." Dkt. 241 at 9. Individual Plaintiffs' efforts have played no small part in advancing the overall litigation against Society to this point. In recognition of these contributions, Class Plaintiffs have no objection to Individual Plaintiffs being permitted to opt out of the proposed Rule 23(b)(1)(B) class. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303–05 (permitting plaintiffs who had expended significant resources litigating their claims on an individual basis to opt out of a Rule 23(b)(1)(B) class). Such an accommodation would resolve the second of the Individual Plaintiffs' due process concerns and thus should not impede certification of the limited fund that Class Plaintiffs seek.

## CONCLUSION

For the reasons set forth herein, and in Plaintiffs' opening memorandum of law (Dkt. 215), Plaintiffs have demonstrated that all of the requirements for certification of a limited fund class action pursuant to Rules 23(a) and 23(b)(1)(B) are met in this litigation, and that the policy rationale undergirding the limited fund mechanism also supports certification of the Class so that all policyholders have equal access to Society's limited resources.

Dated: August 24, 2021                         Respectfully submitted,


                                               /s/   Adam J. Levitt
                                               Adam J. Levitt
                                               **DiCELLO LEVITT GUTZLER LLC**
                                               Ten North Dearborn Street, Sixth Floor
                                               Chicago, Illinois  60602
                                               Telephone: 312-214-7900
                                               alevitt@dicellolevitt.com

                                               Timothy W. Burns
                                               **BURNS BOWEN BAIR LLP**
                                               One South Pinckney Street, Suite 930
                                               Madison, Wisconsin  53703
                                               Telephone: 608-286-2302
                                               tburns@bbblawllp.com

                                               Shannon M. McNulty
                                               **CLIFFORD LAW OFFICES, P.C.**
                                               120 North LaSalle Street, #3100
                                               Chicago, Illinois 60602
                                               Telephone: 312-899-9090
                                               smm@cliffordlaw.com

                                               W. Mark Lanier
                                               **THE LANIER LAW FIRM PC**
                                               10940 West Sam Houston Parkway North
                                               Suite 100
                                               Houston, Texas  77064
                                               Telephone: 713-659-5200
                                               WML@lanierlawfirm.com

                                               ***Plaintiffs' MDL Co-Lead Counsel and
                                               Proposed Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically using the Court's CM/ECF service, which will send notification of such filing to all counsel of record on this 24th day of August, 2021.

Respectfully submitted,

/s/   Adam J. Levitt
Adam J. Levitt
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com

*One of Plaintiffs' MDL Co-Lead Counsel
and Proposed Class Counsel*