**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: SOCIETY INSURANCE CO. | ) | MDL No. 2964 |
| COVID-19 BUSINESS INTERRUPTION | ) | |
| PROTECTION INSURANCE | ) | Master Docket No. 20-cv-5965 |
| LITIGATION | ) | |
| | ) | Judge Edmond E. Chang |
| | ) | |
| **This Document Relates to All Cases** | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |

<u>**DEFENDANT SOCIETY INSURANCE'S MEMORANDUM OF LAW IN OPPOSITION**</u>
<u>**TO PLAINTIFFS' MOTION TO ENJOIN STATE COURT PROCEEDINGS**</u>

Michael D. Sanders
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
(312) 427-3944 (facsimile)
msanders@pw-law.com

Laura A. Foggan (admitted *pro hac vice*)
April N. Ross (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 (telephone)
lfoggan@crowell.com
aross@crowell.com

*Counsel for Defendant Society Insurance*

Defendant Society Insurance Company ("Society"), through its undersigned counsel, respectfully submits this memorandum opposing Plaintiffs' Motion to Enjoin State Court Proceedings under the All Writs Act, 28 U.S.C. § 1651(a).

## INTRODUCTION

Plaintiffs seek relief based on what they describe as Society's "attempt to use the state courts" in improper ways. *See, e.g.*, D.E. 233 at 3, 8-10. But Plaintiffs, not Society, cast aside federal comity norms dating back to the founding of this country to pursue undue advantage at the expense of the state court litigants Plaintiffs and their counsel seek to represent. Plaintiffs' unsupported rhetoric cannot distract from the extraordinary, unprecedented, and impermissible relief they seek. Like their motion to certify a limited fund class that preceded it, this motion boils down to Plaintiffs' desire to control all aspects of the COVID-related business interruption lawsuits against Society. That desire, and the injunction Plaintiffs seek, find no purchase in the law, and the motion should be denied.

## ARGUMENT

## I.     APPLICABLE LAW.

As the Supreme Court has recognized, "Congress in 1793, shortly after the American Colonies became one united Nation, provided that in federal courts, 'a writ of injunction (shall not) be granted to stay proceedings in any court of a state.'" *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs.*, 398 U.S. 281, 282 (1970). In the centuries that followed, narrow exceptions were added, but "that statute, directing that state courts remain free from interference by federal courts, has remained in effect until this time." *Id.* This fundamental rule provides that "a federal action is not superior to a state proceeding merely because of its federal character." *In re Glenn W. Turner Enters. Litig.*, 521 F.2d 775, 780 (3d Cir. 1975).

The exceptions to this principle are in the Anti-Injunction Act, which provides that "[a] court of the United States *may not* grant an injunction to stay proceedings in a State court except . . . where necessary in aid of its jurisdiction . . . ." 28 U.S.C. § 2283 (emphasis added).[1]  "It is settled that the prohibition of [the Act] cannot be evaded by addressing the order to the parties" instead of directly against the state court.  *Atl. Coast Line R.R.*, 398 U.S. at 287.  The exceptions delineated in the Act are narrowly construed, and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy."  *Id.* at 297.

The All Writs Act, on which Plaintiffs rely, does not supersede the Anti-Injunction Act. The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The "aid of … jurisdictions" language in the All Writs Act "parallels that of the Anti-Injunction Act, and courts regularly construe the two statutes similarly with respect to" these clauses. *Winkler v. Eli Lily & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996).  Under both Acts, an anti-suit injunction, such as the one Plaintiffs seek, is an "extraordinary form of relief."  *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017) (citation and internal quotation marks omitted).  Thus, even when an injunction is technically permitted under the Acts, "a district court must still determine whether an injunction is an appropriate exercise of its authority . . . recognizing the respect due the courts of a sovereign state." *Zurich Am. Ins. Co. v. Superior Ct.*, 326 F.3d 816, 824 (7th Cir. 2003) (internal citation omitted).

---

[1]  The two other exceptions – for injunctions "expressly authorized by Act of Congress … or to protect or effectuate [the district court's] judgments" – are plainly inapplicable here.  *Id.*  Congress has not authorized Plaintiffs' requested injunction and this Court has not issued any judgment.

## II.     THE JURISDICTIONAL PREREQUISITES ARE NOT MET.

The Court's consideration of the Anti-Injunction and All Writs Acts must be "*preceded* by the satisfaction of jurisdictional prerequisites." *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 198 (3d Cir. 1993). These jurisdictional prerequisites are not met here as Plaintiffs are attempting to enjoin persons not before this Court.

The Seventh Circuit has stated that:

> We are of the opinion that the district court has authority under the Anti-Injunction Act to enjoin only those persons (and their counsel) whose cases are presently part of the federal multidistrict litigation, or who were properly part of such multidistrict litigation at the time [of the facts relevant to the injunction sought].

*Winkler*, 101 F.3d at 1203. Because none of the state court plaintiffs that Plaintiffs seek to enjoin have ever been before the MDL court, the relief Plaintiffs seek is prohibited and "well beyond the bounds" of an MDL court's jurisdiction. *See In re Bridgestone/Firestone, Inc.*, Nos. 1373, IP 00-9373-C-B/S, 2003 WL 21983188, at *4 (S.D. Ind. Feb. 2003) (absent a certified class, an MDL court has jurisdiction only over named plaintiffs in the individual MDL actions, and enjoining "all current and future state court litigants would extend well beyond the bounds of our jurisdiction over this action.").

These jurisdictional requirements equally apply in putative class actions, where courts have found that "it would offend the Fifth Amendment's guarantee of due process for a federal court to enjoin an absentee class member whose minimum contacts with the forum have not been established or, in lieu of minimum contacts, who has not consented to the court's jurisdiction . . . ." *Carlough*, 10 F.3d at 199-200 (because district court did not have personal jurisdiction over state court litigants, it "did not have authority to bind their actions when it issued the injunction"). This jurisdictional defect would exist, and prohibit injunctive relief, even if this Court grants class certification because Plaintiffs seek certification of a mandatory, non-opt out class. *See* D.E. 213.

3

Unlike opt-out classes, absent members of a mandatory class cannot be said to have consented to the district court's jurisdiction because they have no option regarding class membership. *See Carlough*, 10 F.3d at 199-200.

The motion should be denied based on these jurisdictional defects alone.

## III. THE REQUIREMENTS FOR EXTRAORDINARY AND RARE RELIEF UNDER THE ANTI-INJUNCTION AND ALL WRITS ACTS ARE NOT MET.

Even if Plaintiffs met the jurisdictional prerequisites, the broad injunctive relief they seek should be denied because it is not "necessary in aid" of this Court's jurisdiction. In framing its arguments, Plaintiffs would have this Court ignore the clear case law establishing that injunctions of state court actions are impermissible except under rare, narrow circumstances not present here. Any doubt about the propriety of an injunction must be resolved in favor of allowing the state actions to proceed. Plaintiffs' recitation of the case law consists of little more than generic proclamations that mostly ignore or gloss over the actual details and holdings of the authorities they cite. To be clear, ***none of the Seventh Circuit or Northern District of Illinois decisions Plaintiffs cite actually grant or uphold the relief they seek***, *i.e.*, an injunction prohibiting current and future parallel state court actions in their entirety and preemptively prohibiting all settlement or compromise discussions when there is no imminent prospect of settlement in the federal litigation. Plaintiffs must resort to these sleight of hand tactics because the law does not allow the exceedingly broad and unprecedented relief they seek.

*First*, the Anti-Injunction Act, as interpreted by the Seventh Circuit, does not permit the wholesale enjoining of allegedly parallel state court proceedings under these circumstances. As noted by the Seventh Circuit:

> Parallel state and federal litigation is common. The first to reach final decision can affect the other, either through rules of claim and issue preclusion (res judicata and collateral estoppel) or through effects such as reducing the scope of a class from 50 to 49 states.

4

> Yet the potential effect of one suit on the other does not justify an injunction.

*Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484 (7th Cir. 2015). The Seventh Circuit has "never viewed parallel *in personam* [as opposed to *in rem*] actions as interfering with the jurisdiction of either court . . . ." *Id.* State court litigants wishing to pursue their own lawsuits, but "not to stop the federal court from adjudicating the suit pending before it" do not undermine the federal court's jurisdiction. *Id.* at 485. Whether enjoining state court actions might be "prudent, beneficial, helpful, and so on" to the federal court is irrelevant under the Anti-Injunction Act because "that's not what necessary [in aid of jurisdiction] means." *Id.* (internal quotation marks omitted). The injunction Plaintiffs seek—preventing plaintiffs who wish to pursue their own cases in a court of their choosing—is prohibited by the Anti-Injunction Act and Seventh Circuit precedent.

*Second*, Plaintiffs cite only one decision within this circuit issuing or upholding an injunction barring any parallel state court proceeding in its entirety, *Ocwen Federal Bank FSB Mortgage Services Litigation*, 397 F. Supp. 2d 957 (N.D. Ill. 2005) (*see* Mem. 233 at 6, 8, 11).[2] In *Ocwen*, a district court presiding over an MDL enjoined three Texas law firms from litigating pending or future lawsuits relating to the issues in the MDL. *Ocwen*, 397 F. Supp. 2d at 962. What Plaintiffs fail to disclose is that the injunction issued by the MDL court (and the *Ocwen* decision Plaintiffs cite throughout their brief) was reversed. The Seventh Circuit **vacated that injunction in its entirety** as "too broad" because it "attempts to prevent activity that … does not appear to threaten the court's jurisdiction or rulings and is not narrowly tailored to prevent any specific

---

[2] *IDS Life Ins. Co. v. SunAmerica, Inc.*, No. 95 C 1204, 95 C 1212, 97 C 7857, 1999 WL 116220 (N.D. Ill. Feb. 26, 1999), cited by Plaintiffs (D.E. 233 at 8), is inapposite because the state court proceeding sought to be enjoined was not a parallel proceeding. Rather, it was a state action seeking confirmation of an arbitration award that was already the subject of a pending federal lawsuit.

abuse." Ex. 1 (*In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, No. 05-4268, slip op. at 3 (7th Cir. Dec. 13, 2005)). The Seventh Circuit noted that, generally, "federal courts **may not** enjoin a parallel *in personam* action involving a controversy over liability" and the purported concern "[t]hat a state court may resolve an issue first (which may operate as res judicata)," even when there is a pending MDL, "is not by itself a sufficient threat to the federal court's jurisdiction that justifies an injunction." *Id.* (emphasis added) (internal quotation marks and citation omitted).[3] That is precisely true here. Rather than supporting Plaintiffs' motion, *Ocwen* is devastating to Plaintiffs' cause and expressly rejects the relief they seek.

The *Ocwen* injunction was "too broad" and outside the MDL court's authority even though the specific Texas law firms enjoined had appeared before the MDL court on behalf of other claimants, were allegedly actively recruiting hundreds of additional claimants, required those claimants to opt out of any MDL class, and stated an intention to use discovery obtained in the state court proceedings in the MDL despite the MDL court's stay of discovery. *Ocwen*, 397 F. Supp. 2d at 963. The Seventh Circuit determined that even these allegations could not, as a matter of law, sustain an injunction against the three firms and continuation of "parallel state actions would not threaten the jurisdiction" of the MDL court. Ex. 1 at 3. Despite having an even less compelling case for relief, the injunction Plaintiffs seek is far broader, and seeks a wholesale injunction against all persons anywhere, including individuals not currently before this MDL court and who are not accused of gamesmanship like the Texas law firms. If the allegations leveled

---

[3] The Seventh Circuit noted a possible exception where an MDL "has settled or there is a substantially significant prospect [of settlement] in the reasonably near future." *Id.* (internal quotation marks and citation omitted). That is not the case here. *See also Zurich Am.*, 326 F.3d at 825 (noting the only "limited expansion" of the "necessary in aid of its jurisdiction" exception beyond *in rem* actions involve school desegregation and limited protection of defendants from attempts to circumvent MDL pretrial **discovery** orders).

against the three Texas law firms were, as a matter of law, insufficient to justify an injunction, then the relief Plaintiffs seek is necessarily impermissible.

The other decision on which Plaintiffs place heavy reliance, *Winkler v. Eli Lily & Co.*, 101 F.3d 1196 (7th Cir. 1996) (*see* D.E. 233 at 5-8, 11-13), is also unhelpful to Plaintiffs. In *Winkler*, as in *Ocwen*, the Seventh Circuit actually ***vacated*** the district court's injunction – a fact that Plaintiffs reference in only the vaguest of terms (D.E. 233 at 7).[4] Once again, the injunction vacated as an abuse of discretion in *Winkler* was substantially narrower than the one Plaintiffs seek here. What Plaintiffs characterize as an injunction "to limit the state-court proceeding" was actually an injunction prohibiting any plaintiff "from attempting to discover the terms of [a confidential] agreement" between defendants and former lead plaintiffs' counsel in the MDL, who withdrew from the MDL, and pursuit of a separate breach of fiduciary duty action against that plaintiffs' counsel. *Winkler*, 101 F.3d at 1198. The Seventh Circuit vacated that injunction because its "broad language sweeps too many people within its interdict, and such a wide-reaching and overly expansive injunction is an abuse of discretion." *Id.* at 1203. If an injunction against discovery of a confidential agreement was too broad, then Plaintiffs' attempt to foreclose all allegedly parallel state court class actions from proceeding (and bar all settlement or compromise discussions in any state actions) is also prohibited.

*Third*, Plaintiffs' alarmist proclamations that a state court's decisions might conflict with this Court's decisions also cannot warrant a wholesale injunction. "Obviously this [country's] dual system could not function if state and federal courts were free to fight each other for control

---

[4] Plaintiffs claim that "the Seventh Circuit ***affirmed*** the district court's power and authority to enter an appropriate injunction (while disagreeing with the scope of the injunction on the particular facts of the case)." D.E. 233 at 7 (emphasis added); *see also id.* at 12-13. However, with respect to the injunction entered, , the Seventh Circuit found "that the district court abused its discretion in imposing the injunction, and vacate[d] the injunction" in its entirety. *Winkler*, 101 F.3d at 1198.

of a particular case." *Atl. Coast Line R.R.*, 398 U.S. at 286. Similarly, "[t]he mere undesirability of duplicative rulings does not, of course, trump the Anti-Injunction Act and empower courts conducting multidistrict litigation to enjoin independent prior state court proceedings . . . unless the court has otherwise obtained jurisdiction" over those proceedings. *Winkler*, 101 F.3d at 1202 n.6. Thus, contrary to Plaintiffs' conclusory assertions, the existence of parallel state litigations does not "improperly … divest this Court of the jurisdiction properly conferred upon it by the JPML" or "render the exercise of [this Court's] jurisdiction nugatory." D.E. 233 at 3, 7, 12 (internal quotation marks and citation omitted in second quotation). The state courts, too, have properly conferred jurisdiction over the cases pending before them, and those rights cannot be swept aside simply because MDL Plaintiffs would prefer so. *See* Ex. 1 at 3 ("That a state court may resolve an issue first (which may operate as res judicata), is not by itself a sufficient threat to the federal court's jurisdiction that justifies an injunction.") (internal quotation marks and citation omitted); *In re Glenn W. Turner*, 521 F.2d at 780 ("[A] federal action is not superior to a state proceeding merely because of its federal character.").

*Fourth*, Plaintiffs' repetitive invocation of "forum shopping" is a red herring (D.E. 233 at 1, 7-9. Society has not filed a single COVID-related business interruption lawsuit in *any* forum. Instead, Society is defending against lawsuits policyholders brought in the venue of their choice. Each of the state class actions cited in Plaintiffs' Exhibit 1 (D.E. 233-1) was initiated months before commencement of this MDL. *See, e.g.*, Ex. 2, D.E. 233_3 & D.E. 233_4. These policyholders could not have filed their state court actions with the intent to circumvent the jurisdiction of this MDL court before the MDL even existed, but in any event, it is the policyholders and not Society that selected these fora.

8

Nor can Society be accused of forum shopping for defending other policyholder's suits. Plaintiffs' assertions regarding the *Circolo* action are simply absurd. Plaintiffs contend Society is "undermining" this MDL by engaging in "vexatious conduct" and "forum shopping" because Society (a Wisconsin company) is defending a lawsuit Circolo (a Wisconsin plaintiff) brought in Wisconsin state court months before the MDL existed, and has sought Wisconsin Supreme Court review of issues of Wisconsin law. D.E. 233 at 8-9. Neither logic nor any authority supports Plaintiffs' argument. The *Circolo* decision that is on appeal granted Society's motion to dismiss, and was issued the week ***before*** this Court's decision on bellwether dispositive motions. Ex. 2 at 14. There is nothing untoward about Society seeking Wisconsin Supreme Court review of issues implicating Wisconsin law.[5] Indeed, Plaintiffs have not cited a single decision permitting a federal court, in an attempt to protect its own decision on ***state law*** (much less a later-issued decision), to enjoin parties from seeking state appellate court determinations on those same state law issues. No Supreme Court decision "suggests that the court presiding over the case likely to reach judgment second can jump the queue by enjoining the suit that is likely to reach decision first." *Adkins*, 779 F.3d at 484-85.

Plaintiffs' aspersions simply highlight their "me" centered approach to litigation and their complete disregard for the interests of the state court litigants they seek to represent. Plaintiffs claim that allowing Society to litigate and potentially settle state court litigations is equal to a "reverse auction" and "forum shopping for appellate relief" (D.E. 233 at 1-2). Plaintiffs and their counsel wish to seize control of all settlement discussions (to the detriment of state court litigants,

---

[5] Plaintiffs also fail to mention that, in another Wisconsin class action they seek to enjoin (*Collectivo*), it was the plaintiff, not Society, that filed a Petition to Bypass. D.E. 233-2 at 4 (denying plaintiff's petition as premature). Yet, Plaintiffs do not accuse Collectivo of forum shopping or vexatious conduct.

many of whom filed their lawsuits before this MDL commenced), and block state appellate courts from deciding issues governed by their state's law.[6]

Similarly, Plaintiffs complain Society seeks to "circumvent the ruling of a federal MDL" and assert that granting their motion will "prevent inconsistent adjudication under the same state laws" (D.E. 233 at 2, 10), but that argument has it exactly backwards. Plaintiffs give no deference to the fact that decisions from a state's highest court on substantive issues of state law are binding; such rulings do not create "inconsistent adjudication" with rulings of the federal courts. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts."). No amount of rhetoric about this Court's decision being "reexamined or second-guessed" by state courts can change this foundational principle of federalism. State courts handling Covid-related cases brought before them are not second-guessing anything. They are exercising their rightful authority to adjudicate cases and apply their

---

[6] Plaintiffs spend significant time ascribing improper motives to Society based on the fact that a number of lawsuits are pending in state court (D.E. 233 at 3-4). In particular, Plaintiffs assert that Society's "failure" to remove state court litigations "underscores the opportunities for mischief and procedural misconduct" and defendants ordinarily "would be rushing to remove" (D.E. 233 at 3-4, n.3). Plaintiffs make no effort to support their smears with facts. For example, Plaintiffs fail to explain how any of the Wisconsin lawsuits they seek to enjoin were removable under CAFA or otherwise given that those litigations were brought on behalf of Wisconsin entities against another Wisconsin entity (Society), seeking certification of a Wisconsin-only class. *See, e.g.*, Ex. 3 (*Badger Crossing* Complaint), at ¶¶ 5-6 & 66. Moreover, Society has sought, where appropriate, to remove state court actions, but has not always been successful. *See, e.g.*, Ex. 4, *Highland Mgmt. Grp. v. Society Ins.*, MDL No. 2964 (D.E. 118) (J.P.M.L. Apr. 6, 2021) (Society removed action and filed a notice of tag-along seeking transfer to this MDL, but the JPML vacated its conditional transfer order after plaintiff successfully remanded the case to the Illinois state court for lack of federal jurisdiction). Importantly, there is no support for Plaintiffs' assertion that a decision not to remove an action to federal court amounts to forum shopping or other misconduct. Plaintiffs do not get to dictate Society's litigation strategy or decisions.

state's controlling law. Plaintiffs cannot weaponize the All Writs Act to block state appellate courts from adjudicating issues of state law.[7]

*Fifth*, and relatedly, Plaintiffs' plea about the "considerable time and resources" expended in the MDL (D.E. 233 at 10) also rings hollow. Plaintiffs have no regard for the considerable time and resources expended by the courts and parties in the state actions they seek to enjoin, including those filed months before this MDL. *See* Ex. 2. Some of these state actions are in more advanced procedural and appellate postures than the MDL. For example:

- One court has entered judgment in favor of the policyholder on discrete grounds (but found no coverage under the Business Income provision) and certified a class of all Illinois restaurants, taverns, and bars that were insured as of March 20, 2020 under the relevant Society policy form and were required to shut down or suspend business operations. Society's petition for leave to appeal is pending before the appellate court. *See* Ex. 5 (*Alley 64* docket).

- In another instance, The Honorable Moshe Jacobius, Presiding Judge of the Chancery Division (Cook County) recently granted Society's motion for judgment on the pleadings in *Parson's Chicken*, and that decision is now appealable by the policyholder. Ex. 6.[8]

- And, as Plaintiffs themselves highlight, dispositive motions in each of the Wisconsin state court class actions are on appeal, meaning each of those state litigations is in a more advanced appellate posture than this Court.

---

[7] Plaintiffs cannot block the possibility of there ever being "an intervening change in controlling law" (or a clarification or confirmation of controlling law) by preemptively enjoining all state class actions, including litigants' appeals to each state's highest court. *Ball v. Kotter*, No. 08-CV-1613, 2012 WL 987223, at *5 (N.D. Ill. Mar. 22, 2012), *aff'd*, 723 F.3d 813 (7th Cir. 2013) (A motion for reconsideration or a renewed motion for summary judgment "is particularly appropriate" when there is "an intervening change in controlling law," which includes state appellate court decisions.).

[8] Judge Jacobius also dismissed the other sixteen cases pending against Society before him under Illinois law, including claims premised on the business income, extra expense, civil authority, contamination, and spoilage provisions of the policies and 215 ILCS 5/155. *See, e.g.*, Ex. 7. In addition, the plaintiffs in *Sweetberry v. Society Insurance* have sought review from the Illinois Appellate Court of a decision finding no coverage for claims premised on business income and civil authority, and that case is presently being briefed. Plaintiffs' desperation to halt the progress of state court proceedings is perhaps understandable, as state courts are increasingly determining that the Society policies do not cover these claims as a matter of state law. That desire, however, does not justify injunctive relief.

It is Plaintiffs that are "forum shopping for appellate relief" (D.E. 233 at 1-2) by trying to block these state court actions, which are advancing in multiple state appellate courts, from proceeding. The Anti-Injunction and All Writs Acts do not permit an injunction under these circumstances. *See Adkins*, 779 F.3d at 484-85 (noting that no Supreme Court decision "suggests that the court presiding over the case likely to reach judgment second can jump the queue by enjoining the suit that is likely to reach decision first.").

Courts have determined that, even if "significant resources" have been expended in one litigation, "there is simply no support for the proposition that a court may enjoin parties from participating in or reaching a bona fide settlement . . . when there is no pending settlement in the enjoining court . . . ." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 331 (3d Cir. 2007) (vacating an injunction that prohibited an MDL settlement from releasing class claims at issue in the enjoining court).

*Sixth*, Plaintiffs' purported concern about state lawsuits jeopardizing a "complex federal settlement" is another red herring. The authorities Plaintiffs cite, none of which are from this circuit, involve efforts to protect actual or imminent settlements in the federal litigations, including, in one case, a mandatory, non-opt out class settlement reached several years before the later, enjoined state lawsuit. D.E. 233 at 13-14. These circumstances are simply not present here. The parties to this MDL have no settlement agreement (or even the imminent prospect of one), and Plaintiffs cannot preemptively foreclose settlement discussions in all other actions. That is the case even if state court judgments or settlements would affect federal plaintiffs' ability to recover (a prospect for which there is no support ). *Cf. In re Glenn W. Turner*, 521 F.2d at 780 ("The alleged inability of the various defendants to pay any judgment resulting from the federal

class action if the Kentucky Attorney General is allowed to execute upon his judgment is not cause to create an exception" to the Anti-Injunction Act).

*Finally*, the injunction Plaintiffs seek is nonsensical. Plaintiffs want to enjoin state court class actions from proceeding, but then seek to prohibit settlement or compromise discussions in all state court actions (D.E. 233 at 1 n.1). If granted, that would force Society into the untenable position of continuing to litigate non-class action state court lawsuits (which would not be enjoined), but with no ability to consider settlement or resolution of those disputes short of trial. None of the authority Plaintiffs cite even arguably supports granting such unprecedented and inherently prejudicial relief.

\*\*\*

Plaintiffs' motion should be denied. The injunction sought is unprecedented, unsupported by any legal authority (including the All Writs Act), and prohibited by the Anti-Injunction Act. As the Seventh Circuit recognized, "[p]arallel state and federal litigation is common" and "the potential effect of one suit on the other does not justify an injunction" because it is not "necessary in aid of" the district court's jurisdiction. *Adkins*, 779 F.3d at 484. No injunction can issue even if a state court action might reduce the scope of a federal class action, or state judgments or settlements might affect a federal litigant's ability to recover. *See id.* (the first court to reach a decision "can affect the other . . . through effects such as reducing the scope of a class from 50 to 49 states" but that does not justify an injunction); *In re Glenn W. Turner*, 521 F.2d at 780 ("The alleged inability of the various defendants to pay any judgment resulting from the federal class action if the Kentucky Attorney General is allowed to execute upon his judgment is not cause to create an exception" to the Anti-Injunction Act).

Society respectfully submits this motion does not even present a close call, but if it did, the Supreme Court cautions that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast R.R.*, 398 U.S. at 297. *See also Zurich Am.*, 326 F.3d at 824 (district court must decide if the injunction, even if permitted, is "an appropriate exercise of its authority . . . recognizing the respect due the courts of a sovereign state.") (internal citation omitted).

## IV. PLAINTIFFS FAIL TO ADDRESS FED. R. CIV. P. 65 PREREQUISITES TO INJUNCTIVE RELIEF.

The motion should also be denied for failure to establish the prerequisites for injunctive relief in Fed. R. Civ. 65. Plaintiffs dismiss that rule in a single sentence, citing solely to a 1985 Second Circuit decision for the erroneous proposition that they "need not satisfy the requirements" of Rule 65. D.E. 233 at 5. That is not the prevailing law in the Seventh Circuit, including as set forth in a decision Plaintiffs cite in their own motion. The Seventh Circuit recently admonished that a plaintiff was "mistaken" in arguing that "Rule 65 and the traditional injunction factors do not apply to injunctions issued under the All Writs Act." *In re Jimmy John's*, 877 F.3d at 769-70. The Court clearly stated that "a district court that uses the All Writs Act to enjoin proceedings in another court, whether federal or state, must analyze the traditional injunction factors and comply with Rule 65." *Id.* at 770-71. *See also Adkins*, 779 F.3d at 483 ("[A]n injunction that halts state litigation is permissible only if it satisfies [the Anti-Injunction Act] in addition to the traditional factors" for a preliminary injunction).

Plaintiffs do not even attempt to establish the traditional injunction factors or compliance with Rule 65. Any effort to do so in their reply brief would be futile because a plaintiff "must establish that he is likely to succeed on the merits, there is no adequate remedy at law, he is likely

to suffer irreparable harm absent such relief, the balance of equities tips in his favor, and an injunction is in the public interest." *In re Jimmy John's*, 877 F.3d at 769. An injunction is not in the public interest in this case because it ignores the deliberate choices made by state court litigants before this MDL was even established. It is also well-established that "the costs of ongoing litigation … are not irreparable injury." *Adkins*, 779 F.3d at 483 (reversing order enjoining state litigations despite pending settlement of nationwide class action in district court). Nor is the prospect that state courts might reach different conclusions about state law than the district court, or that other actions might settle first. *Cf. Grider*, 500 F.3d at 331. Plaintiffs have an adequate remedy at law because if any MDL plaintiff believes its legitimate rights are harmed by a state court's decision, it presumably can present such arguments to the state court. *See id.* at 332 (stating if a party can raise its claims in the proceeding sought to be enjoined, then that proceeding "is deemed to provide an adequate remedy at law") (citations and quotation marks omitted).

For this additional, and independent reason, Plaintiffs' motion should be denied.

## CONCLUSION

The Court should deny the Motion.

Dated: August 27, 2021

Respectfully submitted,

By: */s/Laura A. Foggan*

Laura A. Foggan (admitted *pro hac vice*)
April N. Ross (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 (telephone)
lfoggan@crowell.com
aross@crowell.com

15

Michael S. Sanders
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
(312) 427-3944 (facsimile)
msanders@pw-law.com

***Counsel for Defendant Society Insurance***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/Laura A. Foggan*<u>          </u>
       Laura A. Foggan